Breck E. Milde  (Cal. State Bar No. 122437)
bmilde@terra-law.com
Mark W. Good (Cal. State Bar No. 218809)
mgood@terra-law.com
Terra Law LLP
177 Park Avenue, Third Floor
San Jose, CA 95113
Tel: (408) 299-1200
Fax: (408) 998-4895

R. Prescott Jaunich (Cal. State Bar No. 164390)
sjaunich@drm.com
Downs Rachlin Martin PLLC
199 Main Street, P.O. Box 190
Burlington, VT  05402
Tel: 802-863-2375
Fax: 802-862-7512

Counsel for Defendant microDATA GIS, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUBB SYSTEMS, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>MICRODATA GIS, INC.,<br><br>                    Defendant. | Case No. C07-02677 BZ<br><br>**DEFENDANT MICRODATA GIS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:   August 1, 2007<br>Time:   10:00 a.m.<br>Courtroom:  G<br>Magistrate Judge Bernard Zimmerman |

DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.    STATEMENT OF ISSUES TO BE DECIDED ........................................................1

II.   STATEMENT OF FACTS................................................................................1

III.  ARGUMENT...............................................................................................4

      A.   The First-To-File Rule..........................................................................4

      B.   The First-To-File Rule Clearly Applies In This Case................................5

      C.   None Of The "Exceptions" To The First-To-File Rule Apply In This Case ....6

           1.   microDATA Has Not Acted In Bad Faith ...........................................6

           2.   microDATA Has Not Engaged In Forum Shopping By Filing
                An Anticipatory Lawsuit.................................................................7

      D.   This Court Lacks Personal Jurisdiction Over microDATA ..........................13

           1.   Standard For Finding Of Personal Jurisdiction...................................13

           2.   microDATA Has No Contacts With California......................................13

IV.   CONCLUSION ............................................................................................15

DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

<u>Cases</u>

800-Flowers, Inc. v. Intercontinental Florist, Inc.,
    860 F. Supp. 128  (S.D.N.Y. 1994) ...................................................................5

Alltrade, Inc. v. Uniweld Prods., Inc.,
    946 F.2d 622 (9th Cir. 1991) ...............................................................4, 5, 6

Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,
    223 F.3d 1082 (9th Cir. 2000) .................................................................14

Bobrick Corporation v. American Dispenser Co.,
    377 F.2d 334 (9th Cir. 1967) ...................................................................14

Cascade Corp. v. Hiab-Foco AB,
    619 F.2d 36 (9th Cir. 1980) .....................................................................14

Chem Lab Products Inc. v. Stepanek,
    554 F.2d 371 (9th Cir. 1977) ...................................................................14

Chesebrough-Pond's, Inc. v. Faberge, Inc.,
    666 F.2d 393 (9th Cir. 1982) .....................................................................5

Douglas Furn. Co. of California v. Wood Dimensions,
    963 F. Supp. 899 (C.D. Cal. 1997) ..........................................................14

Dunn Computer Corp. v. Loudcloud, Inc.,
    133 F. Supp.2d 823 (D. Va. 2001) ............................................................6

Google Inc. v. Am. Blind & Wallpaper Factory, Inc.,
    2004 U.S. Dist. LEXIS 27601, *9 (N.D. Cal. Apr. 8, 2004) ...............4, 5, 8, 9

Internet Transaction Solutions, Inc. v. Intel Corp.,
    2006 U.S. Dist. LEXIS 29532, *20 (S.D. Ohio May 8, 2006) .......................6

J. Lyons & Co. Ltd. v. Republic of Tea, Inc.,
    892 F. Supp. 486 (S.D.N.Y. 1995) .....................................................11, 12

Kmart Corp. v. Key Indus., Inc.,
    877 F. Supp. 1048 (E.D. Mich. 1994) .....................................................11

Kransco Mfg., Inc. v. Bernhard Markwitz,
    656 F.2d 1376 (9th Cir. 1981) .................................................................14

M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.,
    2003 U.S. Dist. LEXIS 27257, *7 (N.D. Cal. Oct. 27, 2003) .......5, 6, 7, 9, 10

Northwest Airlines, Inc. v. American Airlines, Inc.,
    989 F.2d 1002 (8th Cir. 1993) ...................................................................4

Pacesetter Sys., Inc. v. Medtronic, Inc.,
    678 F.2d 93 (9th Cir. 1982) .......................................................................4

1 | Paolino v. Argyll Equities, L.L.C.,
       401 F. Supp. 2d 712 (D. Tex. 2005)................................................................13
2

3 | Plough, Inc. v. Allergan, Inc.,
       741 F. Supp. 144 (W.D. Tenn. 1990)................................................................8

4 | Plymouth Press, Inc. v. Klutz, Inc.,
       1997 U.S. Dist. LEXIS 12185, *6 (E.D. Mich. Jun. 24, 1997)..........................6
5

6 | Royal Queentex Enters. Inc. v. Sara Lee Corp.,
       2000 U.S. Dist. LEXIS 10139, **12-13 (N.D. Cal. Mar. 1, 2000).....................8

7 | Schwarzenegger v. Fred Martin Motor Co.,
       374 F.3d 797 (9th Cir. 2004)............................................................................13
8

9 | Sony Computer Ent. Amer., Inc. v. Amer. Med. Response, Inc., 2007 U.S. Dist.
       LEXIS 24294, **4-5 (N.D. Cal. Mar. 13, 2007)...............................4, 5, 6, 7, 9, 10

10 | Starter Corp. v. Converse, Inc.,
        84 F.3d 592 (2d Cir. 1996).................................................................................5
11

12 | Supreme Int'l Corp. v. Anheuser-Busch, Inc.,
        972 F. Supp. 604 (S.D. Fla. 1997)................................................................8, 11

13 | Tempco Elec. Heater Corp. v. Omega Eng'g,
        819 F.2d 746 (7th Cir. 1987)..............................................................................8
14

15 | Ward v. Follett Corp.,
        158 F.R.D. 645 (N.D. Cal. 1994).....................................................................6, 7

16 | World-Wide Volkswagen Corp. v. Woodson,
        444 U.S. 286 (1980).........................................................................................13
17

18 | Zide Sport Shop of Ohio, Inc., v. Ed Tobergte Associates, Inc.,
        16 Fed. Appx. 433 (6th Cir. 2001)....................................................................6

19 | Statutes

20 | 28 U.S.C. § 1404(a).............................................................................................6

21 | Fed. R. Civ. P. 12(b)(1)........................................................................................1

22 | Fed. R. Civ. P. 12(b)( 2........................................................................................1
23

24 | Rules

25 | Civil L.R. 7-1.......................................................................................................1

26 | Civil L.R. 7-2.......................................................................................................1

27 | Civil L.R. 7-2(c)..................................................................................................15

28 | Civil L. R. 3-13....................................................................................................7

DEFENDANT'S MOTION TO DISMISS

1

2  <u>Treatises</u>

3  <u>McCarthy on Trademarks</u>, § 32:50, at 32-118 – 32-119 ..................................................................8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S MOTION TO DISMISS**

1   TO PLAINTIFF HUBB SYSTEMS, LLC AND ITS ATTORNEYS OF RECORD HEREIN:

2          PLEASE TAKE NOTICE that on August 1, 2007, at 10:00 a.m. or as soon thereafter as the

3   matter may be heard in Department G of the above-entitled Court located on the 15th Floor, 450

4   Golden Gate Avenue, San Francisco, California, defendant microDATA GIS, Inc. ("microDATA")

5   will move the Court to dismiss the action filed on behalf of Hubb Systems, LLC ("Hubb")

6   pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2), and Civil L.R. 7-1 and 7-2, on the grounds that

7   (1) this Court lacks subject matter jurisdiction under the first-to-file rule, and (2) this Court lacks

8   personal jurisdiction over microDATA.

9          This motion will be based on this Notice of Motion and Motion, the following

10  Memorandum of Points and Authorities, the Declaration of Bruce Heinrich, and the pleadings and

11  papers filed herein.

12                  **MEMORANDUM OF POINTS AND AUTHORITIES**

13  **I.       STATEMENT OF ISSUES TO BE DECIDED**

14         A.  Whether this Court lacks subject matter jurisdiction under the first-to-file rule.

15         B.  Whether this Court lacks personal jurisdiction over microDATA.

16  **II.      STATEMENT OF FACTS**

17         microDATA is a Vermont corporation with a principal place of business at 1016 U.S.

18  Route 5, St. Johnsbury, Vermont 05819.  microDATA is in the business of providing 9-1-1

19  mapping software and Internet Protocol (IP)-based data technologies and related services to public

20  safety organizations.  microDATA's products integrate mapping and call-handling functionalities

21  for public service answering points (PSAPs).  In addition, microDATA provides Geographical

22  Information Systems (GIS) and Automatic Location Information (ALI) systems for PSAPs and

23  other public safety organizations.  microDATA's products and services provide for the efficient

24  management and routing of emergency calls, the efficient management and updating of emergency

25  response information, and the efficient locating and routing of emergency response vehicles to the

26  sites of emergency calls.  microDATA does not provide computer-aided dispatch (CAD) products

27  or services, although certain of its products do interface with CAD products.  microDATA sells its

28  products and related services under the marks MICRODATA, MICRODATA 911, and

**DEFENDANT'S MOTION TO DISMISS**

1   MICRO911DATA and design.  microDATA has been selling products and services under the

2   MICRODATA mark since at least 1990 and under the MICRODATA 911 and MICRO911DATA

3   and design mark, or slight variations of such design mark, since at least 1998.

4       Hubb is a California limited liability company with a principal place of business at 2021

5   Challenger Drive, #101, Alameda, California 94501.  Hubb is a ruggedized hardware and/or CAD

6   company engaged in designing, manufacturing, and selling mobile PC hardware, software, and

7   related services in the public safety market (e.g., for emergency vehicles).  Hubb sells its products

8   under the mark DATA911, for which it holds Federal Registration No. 2,546,009 (dated March 12,

9   2002), for "computer software, namely for use in providing public and personal information in the

10  field of public safety, and instruction manuals sold as a unit therewith."

11      On January 3, 2007, Hubb, through its counsel, sent a letter to microDATA claiming that

12  microDATA was infringing Hubb's trade name and trademark rights by its use of the mark

13  "microDATA 911" and the domain name "microdata911.com."  (See Declaration of Bruce

14  Heinrich, June 8, 2007 ("Heinrich Decl.") at ¶ 5 and Exhibit A, Letter from Mary Beth Trice to

15  President, microData GIS, Inc., Jan. 3, 2007.)  Hubb demanded that microDATA "immediately

16  discontinue any and all use of the name, trademark and URL 'microDATA 911' . . . and assign to

17  Hubb any registrations it owns for the URL 'microdata911' in the '.com' domain and any other

18  domains."  (Id.)  The letter further stated that (1) if microDATA did not "confirm that [it] will

19  comply with these demands" by January 20, 2007, or (2) if microDATA "refuse[d] to cooperate

20  with Hubb by taking all steps needed to rectify this infringement," Hubb "will pursue legal action

21  as needed to protect its rights." [1]  (Id.)

22      In-house counsel for microDATA responded via letter dated January 18, 2007.  (Id., at ¶ 6

23  and Exhibit B, Letter from James D. Nohl to Mary Beth Trice, Jan. 18, 2007.)  In that letter,

24  microDATA denied all infringement of Hubb's rights and explained in detail how there was no

25  likelihood of confusion given that (a) the parties' marks are dissimilar in appearance, sound, and

26  connotation; (b) the goods and services provided by the parties are different; (c) the consumers of

27

28  [1] The letter did not identify any particular venue in which Hubb might pursue legal action.

DEFENDANT'S MOTION TO DISMISS

1   the parties' respective goods and services are highly sophisticated and attentive to their purchases;

2   (d) the goods and services at issue are relatively expensive, and therefore the relevant consumers

3   tend to be more careful and discriminating in their purchases; and (e) Hubb's mark is relatively

4   weak given its descriptive or generic nature and the fact that it is comprised of terms that are

5   widely and commonly used in the relevant fields.  (Id.)  In short, the letter made it abundantly clear

6   that microDATA did not intend to comply with Hubb's demands or cease any use of the

7   "microDATA 911" mark.

8          Despite the threats in its January 3 letter, Hubb did not pursue legal action against

9   microDATA.  Rather, *more than three months after its initial letter*, on April 27, 2007, Hubb sent

10  a follow-up letter to microDATA addressing several of the likelihood-of-confusion factors raised

11  months earlier by microDATA.  (Id. at ¶¶ 7-8 and Exhibit C, Letter from Mary Beth Trice to James

12  Nohl, Apr. 27, 2007.)  This letter "urge[d] [microDATA] to reconsider [its] position" and stated

13  that Hubb was "quite serious about this matter."  (Id.)  As with its prior letter, Hubb again

14  informed microDATA of its intent to "pursue . . . legal action" if microDATA did not comply with

15  its demands, this time by May 10, 2007. [2]  (Id.)

16         Based on Hubb's threats of litigation, coupled with its discovery of the fact that Hubb had

17  recently taken action in the U.S. Patent and Trademark Office to bolster its trademark rights,

18  microDATA developed a reasonable apprehension of legal action by Hubb that, in microDATA's

19  belief, was sufficient to create a justifiable case or controversy.  As such, microDATA

20  appropriately sought to obtain a definitive determination of the parties' rights by filing a

21  declaratory judgment action in the U.S. District Court for the District of Vermont on May 10,

22  2007.  (Id., at ¶¶ 9-10 and Exhibit D, Complaint For Declaratory Judgment, May 10, 2007.)  That

23  action seeks a declaration that microDATA is not infringing Hubb's trademark and related rights,

24  and also that microDATA has superior rights to use its mark.  (Id., at ¶ 1.)

25         That same day, microDATA sent a letter to Hubb enclosing a courtesy copy of its

26  Complaint.  (Id., at ¶ 11 and Exhibit E, Letter from Lawrence H. Meier to Mary Beth Trice, May

27

28  _____
    [2]  Once again, the letter did not identify any particular venue in which Hubb might pursue legal action.

**DEFENDANT'S MOTION TO DISMISS**

1   10, 2007.)  Despite having filed the suit, however, microDATA expressed its belief to Hubb that

2   the parties' dispute could be "resolved through a mutually satisfactory coexistence agreement."

3   (Id.)  Nevertheless, given the tone and message of Hubb's prior letters (i.e., the *only* acceptable

4   solution to the dispute was for microDATA to cease all use of its mark), microDATA expressed its

5   concern that "Hubb may not approach this matter with a spirit of compromise."  (Id.)

6        Almost two weeks later, and without any further communication to microDATA, on May

7   21, 2007, Hubb filed the present action before this Court.  (Id., at ¶ 12.)  Hubb's Complaint alleges

8   trademark infringement by microDATA due to its use of the "microDATA 911" mark (First

9   Count), as well as related allegations of false designation of origin (Second Count), cybersquatting

10   (Third Count), and unfair competition (Fourth Count).[3]  For the reasons discussed below, Hubb's

11   Complaint should be dismissed under the first-to-file rule and for lack of personal jurisdiction over

12   microDATA.

13   **III.    ARGUMENT**

14       **A.    The First-To-File Rule**

15        As courts in this judicial district have observed, the "first-to-file" rule is "a generally

16   recognized doctrine of federal comity which permits a district court to decline jurisdiction over an

17   action when a complaint involving the same parties and issues has already been filed in another

18   district."  Sony Computer Ent. Amer., Inc. v. Amer. Med. Response, Inc., 2007 U.S. Dist. LEXIS

19   24294, **4-5 (N.D. Cal. Mar. 13, 2007) (quoting Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d

20   93, 94-95 (9th Cir. 1982)).  This rule "gives priority, for purposes of choosing among possible

21   venues when parallel litigation has been instituted in separate courts, to the party who first

22   establishes jurisdiction."  Id. at *5 (quoting Northwest Airlines, Inc. v. American Airlines, Inc.,

23   989 F.2d 1002, 1006 (8th Cir. 1993).  The first-to-file rule serves the important purpose of

24   promoting judicial efficiency and "should not be disregarded lightly."  See Alltrade, Inc. v.

25   Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991); Sony Computer, 2007 U.S. Dist. LEXIS

26   24294 at *5; Google Inc. v. Am. Blind & Wallpaper Factory, Inc., 2004 U.S. Dist. LEXIS 27601,

27

28   [3] This count appears to be mistakenly labeled as "THIRD COUNT" in the Complaint.

1  *9 (N.D. Cal. Apr. 8, 2004); <u>M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.</u>, 2003 U.S. Dist.

2  LEXIS 27257, *7 (N.D. Cal. Oct. 27, 2003). Finally, where the first-to-file rule applies, "the court

3  that received the latter filing has discretion to stay, transfer, or dismiss the second action, and the

4  first action filed generally should proceed to judgment." <u>Google</u>, 2004 U.S. Dist. LEXIS 27601 at

5  **8-9 (citing <u>Alltrade</u> and <u>Pacesetter</u>); <u>see also</u> <u>800-Flowers, Inc. v. Intercontinental Florist, Inc.</u>,

6  860 F. Supp. 128, 131 (S.D.N.Y. 1994) ("Generally, there is a strong presumption in favor of the

7  forum of the first-filed suit.").

8  **B.    The First-To-File Rule Clearly Applies In This Case**

9          To determine whether the first-to-file rule applies, the Court must address three factors:  (1)

10  the chronology of the two actions (i.e., whether one action predated the other), (2) the similarity of

11  the parties to those actions, and (3) the similarity of the issues in those actions. <u>See</u> <u>Alltrade</u>, 946

12  F.2d at 625; <u>Sony Computer</u>, 2007 U.S. Dist. LEXIS 24294 at *5; <u>Google</u>, 2004 U.S. Dist. LEXIS

13  27601 at *11. Each of these three factors is clearly met to support the application of the first-to-

14  file rule in this case, and therefore this Court should exercise its discretion to dismiss the case.

15          First, it is beyond dispute that microDATA was the first to file.  microDATA filed its

16  action in Vermont on May 10, 2007, based on a "real and reasonable apprehension" of legal action

17  by Hubb. <u>See</u> <u>Starter Corp. v. Converse, Inc.</u>, 84 F.3d 592, 595 (2d Cir. 1996); <u>Chesebrough-</u>

18  <u>Pond's, Inc. v. Faberge, Inc.</u>, 666 F.2d 393, 396-97 (9th Cir. 1982). Hubb did not file the present

19  action in California until nearly two weeks later, on May 21, 2007.

20          Second, both the Vermont action and the later-filed California action involve the same two

21  parties – microDATA and Hubb.  No other parties are named in either of the lawsuits.

22          Third, the issues in the Vermont and California actions are similar, if not identical.  The

23  declaratory judgment action filed by microDATA in Vermont centers on whether microDATA is

24  infringing Hubb's trademark and other rights by its use of (1) the marks MICRODATA 911 and

25  MICRO911DATA and design and (2) the domain name "www.microdata911.com".  (Heinrich

26  Decl., Exhibit D.)  This same conduct by microDATA forms the entire basis for each of the four

27  counts set forth in Hubb's later-filed action in California.  (See Hubb's Complaint at ¶¶ 12, 17, 20,

28  24-25.)  As such, a ruling by the Vermont Court on the issues raised in the Vermont action will

**DEFENDANT'S MOTION TO DISMISS**

1    dispose of all issues raised in the California action.

2        **C.    None Of The "Exceptions" To The First-To-File Rule Apply In This Case**

3        Even in cases where the three elements of the first-to-file rule are clearly met, courts in the

4    Ninth Circuit have recognized several "exceptions" to the application of the rule:  bad faith,

5    anticipatory lawsuits, and forum shopping.[4]  See Alltrade, 946 F.2d at 628.  In some cases, courts

6    also have considered whether the "balance of convenience" favors the later-filed action.[5]  See Sony

7    Computer, 2007 U.S. Dist. LEXIS 24294 at *6 (citing Ward v. Follett Corp., 158 F.R.D. 645, 648

8    (N.D. Cal. 1994)).  None of the aforementioned exceptions apply in the present case, and therefore

9    this Court should apply the first-to-file rule and dismiss Hubb's Complaint.

10        **1.    microDATA Has Not Acted In Bad Faith**

11        The "bad faith" exception to the first-to-file rule generally applies where the party filing the

12    first lawsuit either (1) does so surreptitiously and misleads the other party into believing that it still

13    intends to negotiate a resolution, or (2) does so quickly after receiving an initial cease-and-desist

14    letter, thereby "preemptively foreclosing any settlement opportunity."  See e.g. Zide Sport Shop of

15    Ohio, Inc., v. Ed Tobergte Associates, Inc., 16 Fed. Appx. 433, 438 (6th Cir. 2001); Internet

16    Transaction Solutions, Inc. v. Intel Corp., 2006 U.S. Dist. LEXIS 29532, *20 (S.D. Ohio May 8,

17    2006); Plymouth Press, Inc. v. Klutz, Inc., 1997 U.S. Dist. LEXIS 12185, *6 (E.D. Mich. Jun. 24,

18    1997); Dunn Computer Corp. v. Loudcloud, Inc., 133 F. Supp.2d 823 (D. Va. 2001); see also

19    Ward, 158 F.R.D. at 649.  None of these circumstances exist in the present case.

20

21

---

22    [4] The latter two of these exceptions are typically considered as a single exception.  See M.D. Beauty, 2003 U.S. Dist.

23    LEXIS 27257 at *8 (explaining that courts have "melded the anticipatory exception with the forum shopping exception"); see also Sony Computer, 2007 U.S. Dist. LEXIS 24294 at *6 ("anticipatory suits are disfavored because

24    they are examples of forum shopping").

25    [5] The "convenience" exception to the first-to-file rule is analogous to the "convenience of the parties and witnesses"

26    inquiry for a transfer of venue under 28 U.S.C. § 1404(a).  See Sony Computer, 2007 U.S. Dist. LEXIS 24294 at *6. As the Ninth Circuit has instructed, however, an argument concerning the respective convenience of two courts

27    "normally . . . should be addressed to the court in the first-filed action" – here, the Vermont Court.  Alltrade, 946 F.2d at 628 (citing Pacesetter, 678 F.2d at 96).  Even so, microDATA notes that, in the present case, there are no factors

28    dictating that California is a more appropriate or convenient venue than Vermont for resolution of the parties' disputes.

**DEFENDANT'S MOTION TO DISMISS**

First, this is not a case where microDATA filed its declaratory judgment action under cover of darkness, never told Hubb about it, and then continued to mislead Hubb as to its intentions to resolve the case. In fact, just the opposite is true. microDATA filed its lawsuit in Vermont on May 10, 2007 and promptly notified Hubb of the suit *that very same day*, via both e-mail and overnight courier. Nor did microDATA mislead Hubb of its intentions. Rather, in its May 10 letter to Hubb enclosing the Vermont Complaint, microDATA truthfully expressed its good faith intentions (and preference) to resolve the dispute amicably. That is still microDATA's intention today.

This is also not a case where microDATA quickly raced to the courthouse after Hubb sent its first cease-and-desist letter. Again, quite the opposite is true. microDATA did not file its Complaint in Vermont until more than four months had passed since Hubb's initial letter. Moreover, microDATA only did so after Hubb sent a second letter in which it effectively foreclosed a settlement opportunity by insisting, for the second time, that the *only* solution to the parties' dispute was all or nothing – in other words, microDATA had to stop all use of the MICRODATA 911 mark, period.

It is also curious to note that at the time Hubb filed its complaint against microDATA in this court, it specifically omitted the Notice of Pendency of Other Action required by Civil Local Rule 3-13, despite its actual notice of the lawsuit filed in the District of Vermont on the same issues and involving the same parties as this case, eleven days earlier.

## 2.    microDATA Has Not Engaged In Forum Shopping By Filing An Anticipatory Lawsuit

The prevailing rule in this district is that a first-filed lawsuit may generally be viewed as anticipatory if it was filed only upon receipt of "specific, concrete indications that a suit by the defendant was imminent." See Sony Computer, 2007 U.S. Dist. LEXIS 24294 at *6; M.D. Beauty, 2003 U.S. Dist. LEXIS 27257 at *10; Ward, 158 F.R.D. at 648. This standard is not clear cut, however, and applying it requires a court to "balance the competing interests of the anticipatory exception to the first-to-file rule with the reasonable apprehension prerequisite of the [Declaratory Judgment Act]." M.D. Beauty, 2003 U.S. Dist. LEXIS 27257 at *9. This conflict, in turn, has led

DEFENDANT'S MOTION TO DISMISS

1  the leading commentator on trademark law to sharply criticize the anticipatory lawsuit exception to

2  the first-to-file rule:

> In the author's opinion, the [exception] considerably detracts from the
> traditional ability of the declaratory judgment plaintiff to sue first and
> select a favorable forum. The [exception] permits the trademark owner
> to chill a competitor's marketplace activities without filing suit, and
> then, when the competitor files a declaratory judgment suit, to finally
> file an infringement suit and have all proceedings determined in that
> forum, which is the one most convenient to the trademark owner. This
> is not consistent with the theory and policy of declaratory judgment. If
> the trademark owner desires to litigate in a forum convenient to itself, it
> should file suit there, not just threaten to do so.

8
9  McCarthy on Trademarks, § 32:50, at 32-118 – 32-119 (discussing Tempco Elec. Heater Corp. v.

10 Omega Eng'g, 819 F.2d 746 (7th Cir. 1987), one of the first trademark cases to recognize the

11 anticipatory lawsuit exception). This sentiment was echoed by this Court in Google:

> Considerations of sound judicial administration discourage
> anticipatory actions so as to encourage owners of intellectual
> property to engage in settlement prior to filing suit, but such
> considerations do not require that a party in continuous apprehension
> of a lawsuit be precluded from seeking declaratory relief in light of
> repeated threats.

15 2004 U.S. Dist. LEXIS 27601 at *18; see also Royal Queentex Enters. Inc. v. Sara Lee Corp., 2000

16 U.S. Dist. LEXIS 10139, **12-13 (N.D. Cal. Mar. 1, 2000) (rejecting the argument that "where a

17 party mails a cease and desist letter, the opposing party may not steal away the choice of forum by

18 immediately filing a declaratory judgment action" and noting that "[p]revailing law . . . does not

19 support such a neat conclusion"); Supreme Int'l Corp. v. Anheuser-Busch, Inc., 972 F. Supp. 604,

20 607 (S.D. Fla. 1997) ("There is no requirement that a business threatened with an infringement

21 lawsuit sit back and wait to see if the other party is serious about suing."); Plough, Inc. v. Allergan,

22 Inc., 741 F. Supp. 144, 147 (W.D. Tenn. 1990) ("In this day and age, a party who threatens to file

23 suit in order to obtain a concession, but delays, acts at the risk that the threatened party will be the

24 first to file.").

25      In the present case, Hubb's cease-and-desist letters contained explicit threats of imminent

26 legal action[6] – specifically, that Hubb would "pursue legal action" if microDATA did not

27

---

28 [6] As alleged in microDATA's Complaint in Vermont, these threats were sufficient to create a reasonable apprehension
   of legal action that was sufficient to create a case or controversy under the Declaratory Judgment Act. (See Heinrich
   (Continued...)

DEFENDANT'S MOTION TO DISMISS

1   immediately cease all use of the MICODATA911 mark by a certain date.  As explained below,

2   however, all other indications from Hubb's conduct were that such legal action was not so

3   imminent as to trigger the anticipatory lawsuit exception to the first-to-file rule.[7]  See Google,

4   2004 U.S. Dist. LEXIS 27601 at *15 (declining to apply anticipatory lawsuit exception in view of

5   "totality of the circumstances").  In other words, these indications were not, in the terms of the

6   rule, specific and concrete.

7        Hubb's first threat came in its January 3, 2007 cease-and-desist letter, in which Hubb stated

8   that it would "pursue legal action" if microDATA did not comply with its demands by January 20,

9   2007.  However, microDATA did not so comply by the January 20 deadline, and instead

10  specifically informed Hubb two days earlier that it was not infringing Hubb's trademark (and thus

11  would not comply with Hubb's demands).  But rather than immediately carrying out its threat of

12  legal action, Hubb engaged in radio silence *for more than three months* until April 27, 2007, at

13  which time it still did not file a lawsuit, but instead sent microDATA another cease-and-desist

14  letter containing Hubb's second threat of legal action, with yet another deadline.  By this point,

15  although microDATA certainly had good reason to believe that it might be sued, Hubb's three-

16  month delay since its first threat meant that microDATA had no way of truly knowing whether

17  Hubb would take action the next day, the next week, or in another three months.  Thus, by its own

18  conduct, Hubb has removed the present case from the purview of the anticipatory lawsuit

19  exception.

20        microDATA's position on this point is supported by cases decided in this judicial district.

21  See e.g. Sony Computer, supra; M.D. Beauty, supra.  For example, in Sony Computer, the

22  trademark owner ("defendant") sent a letter to the declaratory judgment plaintiff ("plaintiff") on

23  April 21, 2006 demanding that it cease all use of the allegedly infringing marks by May 11, 2006

24

25  ─────────────────

    (...continued)
26  Decl. at ¶ 9.)

27  ─────────────────
    [7] Again, these indications were sufficient to trigger the "reasonable apprehension" requirement for a declaratory
28  judgment action.

DEFENDANT'S MOTION TO DISMISS

1  and warning that, if such action was not taken by that deadline, defendant would "take all steps

2  necessary to protect [its] goodwill." 2007 U.S. Dist. LEXIS 24294 at *2.  Plaintiff did not respond

3  to this letter, but the parties did engage in discussions from June to October 2006.  Id.  The matter

4  remaining unresolved, defendant sent another letter to plaintiff on October 11, 2006 enclosing a

5  draft complaint and stating that, if plaintiff did not cease all use of the infringing marks within 10

6  days, the enclosed complaint might be filed without further notice.  2007 U.S. Dist. LEXIS 24294

7  at **2-3.  Plaintiff did not comply within 10 days, and on the next business day after the October

8  21 deadline (October 24) filed a declaratory judgment action in the Northern District of California.

9  Id. at *3.  Defendant moved to dismiss or transfer plaintiff's first-filed action for declaratory relief,

10  arguing that the anticipatory filing exception applied.  Id. at **1, 7.  The court declined to apply

11  the exception, explaining that "because Defendant's deadline in the April letter passed with no

12  action by Defendant, Plaintiff could not be certain whether Defendant's threat of suit in the

13  October letter was idle, real, or a negotiating tactic." Id. at **7-8.  The court also found

14  significance in the fact that defendant had not filed suit as of October 24, after its October 21

15  deadline had passed, and observed that "[a]lthough Plaintiff filed the present action one business

16  day after Defendant's deadline passed, Defendant could have filed its action in the forum of its

17  choice before Plaintiff filed a suit, but did not do so." Id. at **7-9.  At the same time, the court

18  held that plaintiff's declaratory judgment action was entirely proper:

19  　　　　Here, Defendant accused Plaintiff of using Defendant's trademark.
　　　　Defendant threatened legal action against Plaintiff.  Plaintiff
20  　　　　perceived the possibility a future suit.  A suit against Plaintiff would
　　　　be a risk to future sales of Plaintiff's video game with the allegedly
21  　　　　infringing trademark.  Furthermore, Plaintiff is allegedly engaged in
　　　　the ongoing use of the allegedly infringing trademark.  Thus, the
22  　　　　dispute has sufficiently ripened in that Plaintiff had a real and
　　　　reasonable apprehension that it would be subject to liability.

23

24  Id. at *14 (citing Chesebrough-Pond's, 666 F.2d at 396).

25  　　　　Similarly, in M.D. Beauty, the trademark owner ("defendant") sent a letter to the

26  declaratory judgment plaintiff ("plaintiff") on March 17, 2003 informing plaintiff that it was

27  infringing defendant's marks and warning that defendant had a number of legal remedies available

28  to it, including "injunctive relief, an award of profits earned, an award of damages . . . costs and

DEFENDANT'S MOTION TO DISMISS

1  attorney's fees." 2003 U.S. Dist. LEXIS 27257 at **3-4. The letter further requested that plaintiff

2  provide, within 14 days, written assurances that the infringement would stop. Id. at *4. Plaintiff

3  did not respond within 14 days, but eventually sent a letter on April 8 asking for clarification on

4  certain issues. Id. On April 24, 2003, defendant sent a letter repeating its demands that plaintiff

5  cease all use of the infringing marks – this time within seven days – and warning that if plaintiff

6  did not respond within that period, defendant would "pursue the alternatives available to it." Id. at

7  *5. Plaintiff did not respond to that letter, and instead filed a declaratory judgment action in New

8  York on May 1, 2007 (i.e., the seventh day after April 24). Id. Two months later, defendant filed

9  a trademark infringement lawsuit in California. Id. at *6. Applying the first-to-file rule, the court

10 dismissed defendant's later-filed California action, and in so doing declined to apply the

11 anticipatory lawsuit exception. Id. at **10-15. The court found that defendant's letters, while

12 strongly worded, did not create specific and concrete indications that litigation was imminent. Id.

13 at **12-13. As the court further explained:

14
> [T]he fact that [defendant] permitted (either expressly or impliedly)
> [plaintiff] to respond late to the first letter demonstrates that despite
15 > the express language of the second letter, [defendant] would not
> necessarily hold [plaintiff] to that deadline . . . .
16
> Based on the parties' correspondence and the timing of [plaintiff's]
17 > response to the first letter, it is not clear that [plaintiff] knew whether
> and when [defendant] would file suit. This is bolstered by the fact
> that [defendant] waited two full months. [Defendant's] own delay
18 > supports a finding that [plaintiff] did not file his suit as an
> anticipatory race to the courthouse.
19

20 Id. at **13-15.

21      Courts in other jurisdictions have also declined to apply the anticipatory lawsuit exception

22 to the first-to-file rule under circumstances not unlike those in the present case. See e.g. Supreme

23 Int'l Corp. v. Anheuser-Busch, Inc., 972 F. Supp. 604 (S.D. Fla. 1997); Kmart Corp. v. Key Indus.,

24 Inc., 877 F. Supp. 1048 (E.D. Mich. 1994); J. Lyons & Co. Ltd. v. Republic of Tea, Inc., 892 F.

25 Supp. 486 (S.D.N.Y. 1995). In Supreme, the court was persuaded by the fact that the declaratory

26 judgment plaintiff "did not run to the courthouse as soon as it was aware of a problem," but rather

27 filed its action more than a month after the trademark owner complained of infringement. 972 F.

28 Supp. at 607. Similarly, microDATA did not immediately file its declaratory judgment action, and

**DEFENDANT'S MOTION TO DISMISS**

1    instead refrained from doing so until more than four months after Hubb initially complained.

2         In <u>Kmart</u>, the court explained that the declaratory judgment plaintiff did not file its action

3    until it "justifiably believed that further negotiations were pointless" because, as the parties'

4    communications showed, the trademark owner "would accept nothing short of total capitulation."

5    877 F. Supp. at 1054.  Similarly, microDATA did not file its action until after Hubb's second

6    cease-and-desist letter made it clear that Hubb was totally unwilling to compromise, given that

7    Hubb continued to offer no solution other than complete submission by microDATA.

8         In <u>J. Lyons & Co.</u>, the court found that, despite its threats of legal action in various letters,

9    "[the trademark owner's] behavior did not indicate that it was about to file suit."  892 F. Supp. at

10   491.  As the court explained, "[e]ach [declaratory judgment plaintiff] responded to [the trademark

11   owner's] cease and desist letters by denying the alleged infringement.  When no understanding was

12   reached and [the trademark owner] continued its cease and desist letters, the [declaratory judgment

13   plaintiffs] had every right to seek a definitive resolution of the issues."  <u>Id.</u>  The same thing

14   happened in the present case.  microDATA unequivocally denied any infringement in its January

15   18, 2007 letter to Hubb.  However, rather than pursue legal action as threatened in its January 3

16   letter, Hubb sent yet another cease-and-desist letter and only did so after three more months had

17   passed.

18        Another indication that, despite Hubb's threats to the contrary, legal action by Hubb

19   actually was not imminent is the fact that Hubb did not file the present lawsuit until May 21, 2007

20   – eleven days after microDATA had filed its lawsuit in Vermont on May 10.  If legal action by

21   Hubb truly was imminent at the time of its cease-and-desist letters, why did it take Hubb eleven

22   days to file suit after microDATA did?  This only suggests that Hubb was not ready to commence

23   legal action at the time of its January 3 and April 27 letters, and rather that Hubb put the present

24   lawsuit together between May 10 and May 21.

25        Finally, Hubb can hardly accuse microDATA of forum shopping given the fact that Hubb's

26   letters never stated the venue in which it intended to pursue legal action.  <u>See</u> <u>e.g.</u> <u>J. Lyons & Co.</u>,

27   892 F. Supp. at 491 (finding no forum shopping by declaratory judgment plaintiff where trademark

28   owner's cease and desist letters warned of possible legal action but failed to specify a forum).  For

**DEFENDANT'S MOTION TO DISMISS**

1    all microDATA knew, Hubb might have sought legal recourse in Vermont, where personal

2    jurisdiction over microDATA would have been clear.

3        **D.    This Court Lacks Personal Jurisdiction Over microDATA**

4        microDATA submits that California lacks personal jurisdiction over it sufficient for it to

5    expected to be "haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S.

6    286, 297 (1980).  MicroDATA lacks the necessary minimum contacts for California courts to

7    fairly assert jurisdiction over it.

8        **1.    Standard For Finding Of Personal Jurisdiction**

9        Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

10   plaintiff bears the burden of demonstrating that jurisdiction is appropriate.  Where, as here, the

11   motion is based on written materials rather than an evidentiary hearing, the plaintiff need only

12   make a prima facie showing of jurisdictional facts.  In such cases, the Court needs only to inquire

13   into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal

14   jurisdiction.  Although the plaintiff cannot simply rest on the bare allegations of its complaint,

15   uncontroverted allegations in the complaint must be taken as true.  Schwarzenegger v. Fred Martin

16   Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  The prima facie case requirement however does not

17   require the court to credit conclusory allegations, even if uncontroverted.  Paolino v. Argyll

18   Equities, L.L.C., 401 F. Supp. 2d 712, 719 (D. Tex. 2005).  In its Complaint in this action, the only

19   activity by microDATA specifically alleged in Hubb's Complaint to have occurred in California is

20   a single trade show in January, 2007.  As will be shown below, that activity is insufficient by itself

21   to confer personal jurisdiction over defendant microDATA in California.

22       **2.    microDATA Has No Contacts With California**

23       As set forth in the Declaration of Bruce Heinrich submitted in support of this Motion,

24   ¶¶ 13-18, microDATA's only offices are in the states of Vermont, Rhode Island, and Washington.

25   MicroDATA has no offices, facilities, or agents in California.  It is not registered to do business in

26   California, and does not hold any license, charter, or permit there.  MicroDATA has no bank

27   accounts or trust accounts in California.  MicroDATA has no mailing address, answering service,

28   directory listing, or telephone number in California.  Although microDATA has an Internet

1    website, it is a "passive" site that merely makes information about its business available to

2    potential purchasers.  The website is not targeted at individuals or enterprises in California, and it

3    has never been used to enter into contracts or otherwise conduct any business in California.

4    Although microDATA has on occasion attended trade shows in California, upon information and

5    belief, it has not sold any goods or services into California.

6        Courts in the Ninth Circuit have repeatedly held that incidental contacts with a state, even

7    in the context of intellectual property infringement issues, do not furnish jurisdiction over a non-

8    resident defendant.  See Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082 (9th Cir.

9    2000); Cascade Corp. v. Hiab-Foco AB, 619 F.2d 36 (9th Cir. 1980) (non-resident patent owner's

10   activities in mailing letters into Oregon, advertising in national periodicals that circulated in

11   Oregon, and visiting Oregon on several occasions to explore new distributorships were not

12   sufficient to support an assertion of personal jurisdiction); Chem Lab Products Inc. v. Stepanek,

13   554 F.2d 371 (9th Cir. 1977) (in patent infringement dispute, no jurisdiction over defendant who

14   mailed a letter into California); Douglas Furn. Co. of California v. Wood Dimensions, 963 F.

15   Supp. 899 (C.D. Cal. 1997) (no jurisdiction where letters sent into California were only contact

16   with the forum, and non-resident defendant did not sell its products in California, advertise them,

17   or promote its business there).

18       Numerous district court and Ninth Circuit decisions, some originating in this Court, have

19   held that mere attendance at trade shows, without more, is not sufficient to confer personal

20   jurisdiction over a non-resident defendant.  See e.g. Kransco Mfg., Inc. v. Bernhard Markwitz, 656

21   F.2d 1376 (9th Cir. 1981) (no jurisdiction over non-resident defendant who attended one trade

22   show and sent a letter to the plaintiff charging patent infringement); Bobrick Corporation v.

23   American Dispenser Co., 377 F.2d 334 (9th Cir. 1967) (participation in a trade show under the

24   name of a subsidiary company without more does not establish minimum contacts necessary to

25   grant personal jurisdiction).

26       In its Complaint in this action, the only activity by microDATA specifically identified by

27   Hubb to have occurred in California is a single trade show in January, 2007.  (Hubb Complaint at

28   ¶ 3.)  As demonstrated above, this is insufficient to confer jurisdiction over microDATA.

DEFENDANT'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, microDATA respectfully requests this Court to GRANT its Motion To Dismiss.  Pursuant to Civil L.R. 7-2(c), microDATA has filed a Proposed Order in concert with this Motion.

Dated:  June 11, 2007                                    TERRA LAW LLP


By:    /s/  Breck E. Milde
       Breck E. Milde  (Cal. State Bar No. 122437)
       Attorneys for microDATA GIS, Inc.