1   Breck E. Milde  (Cal. State Bar No. 122437)
    bmilde@terra-law.com
2   Mark W. Good (Cal. State Bar No. 218809)
    mgood@terra-law.com
3   Terra Law, LLP
    177 Park Avenue, Third Floor
4   San Jose, CA 95113
    Tel: (408) 299-1200
5   Fax: (408) 998-4895

6   R. Prescott Jaunich (Cal. State Bar No. 164390)
    sjaunich@drm.com
7   Downs Rachlin Martin PLLC
    199 Main Street, P.O. Box 190
8   Burlington, VT  05402
    Tel: 802-863-2375
9   Fax: 802-862-7512

10  Counsel for Defendant microDATA GIS, Inc.

11                  UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14
    HUBB SYSTEMS, LLC,                  Case No. C07-02677 BZ
15
                        Plaintiff,      **DECLARATION OF BRUCE HEINRICH
16                                      IN SUPPORT OF MOTION TO DISMISS**
            vs.
17                                      Date:   August 1, 2007
    MICRODATA GIS, INC.,                Time:  10:00 a.m.
18                                      Courtroom:  G
                        Defendant.      Magistrate Judge Bernard Zimmerman
19

20      I, Bruce Heinrich declare:

21      1.      I reside at 110 Nature Drive, Franconia, NH.  I have personal knowledge of all

22  facts set forth herein and if called upon to testify I could and would testify competently thereto.

23      2.      I am Vice President of microDATA GIS, Inc. ("microDATA").  I founded

24  microDATA.  In addition to my current specific responsibility for directly overseeing the

25  Geographical information services (GIS) Depart at microDATA, I am intimately familiar with

26  the general operation, management and business of the company. I make this affidavit in

27  support of microDATA's Motion to Dismiss ("Motion").

28      3.      microDATA is a Vermont corporation with a principal place of business at 1016

    1149377                            1
    **DECLARATION OF BRUCE HEINRICH -- C07-02677 BZ**

1  U.S. Route 5, St. Johnsbury, Vermont 05819.  microDATA's business is described in the

2  Motion.

3        4.      microDATA sells its products and related services under the marks

4  MICRODATA, MICRODATA 911, and MICRO911DATA and design.  microDATA has been

5  selling products and services under the MICRODATA mark since at least 1990 and under the

6  MICRODATA 911 and MICRO911DATA and design mark, or slight variations of such design

7  mark, since at least 1998.

8        5.      On January 3, 2007, Hubb Systems, LLC ("Hubb"), through its attorneys, sent

9  microDATA a letter claiming that microDATA was infringing Hubb's trade name and trademark

10 rights by its use of the mark MICRODATA 911 and the Internet domain name

11 "microdata911.com."  A true and accurate copy of Hubb's January 3, 2007 letter is attached

12 hereto as Exhibit A.  Hubb demanded in the letter that microDATA immediately cease all use of

13 the trade name, trademark and domain name.  Hubb further stated that, if microDATA did not

14 comply, Hubb would "pursue legal action as needed to protect its rights."

15       6.      On January 18, 2007, microDATA, through its Vice President for Business

16 Affairs and General Counsel, sent a letter, via Federal Express, to Hubb's attorneys responding

17 to Hubb's January 3 letter.  microDATA denied Hubb's allegations of infringement and

18 explained its reasoning in detail in a four-page letter.  A true and accurate copy of microDATA's

19 January 18, 2007 letter is attached hereto as Exhibit B.  microDATA explained that it did not

20 intend to comply with Hubb's demands that microDATA cease and desist all use of the trade

21 name, trademark, and domain name.

22       7.      microDATA heard nothing from Hubb until after April 27, 2007, more than three

23 months later.

24       8.      On April 27, 2007, Hubb, again through its attorneys, sent microDATA a letter

25 responding to microDATA's January 18, 2007 letter.  The letter addressed the points raised by

26 microDATA's January 18 letter and urged microDATA to reconsider its position.  A true and

27 accurate copy of Hubb's April 27, 2007 letter is attached hereto as Exhibit C.  Hubb again

28 informed microDATA of its intent to "pursue ... legal action" if microDATA did not state its

1149377                                    2
**DECLARATION OF BRUCE HEINRICH -- C07-02677 BZ**

1    agreement to comply with Hubb's demands, by May 10, 2007.

2         9.    At this time, microDATA reasonably believed that it would be sued by Hubb, but

3    it did not know exactly when, or where.

4         10.    On May 10, 2007, microDATA filed a Complaint in the United States District

5    Court for the District of Vermont seeking a declaration that its use of the disputed name and

6    trademark and domain name do not infringe Hubb's rights.  A true and accurate copy of

7    microDATA's May 10, 2007 Complaint is attached hereto as Exhibit D.

8         11.    On that same day, May 10, microDATA's attorney, Lawrence H. Meier, sent

9    Hubb's attorneys, by e-mail and Federal Express, a four-page letter again refuting Hubb's

10   assertions of trademark infringement, and enclosing a copy of the Complaint that had been filed

11   by microDATA that day.  A true and accurate copy of Mr. Meier's May 10, 2007 letter is

12   attached hereto as Exhibit E.  Mr. Meier's letter expressed microDATA's hope and belief that

13   the parties' dispute could be "resolved through a mutually satisfactory coexistence agreement"

14   and without continuing litigation.

15        12.    microDATA heard nothing from Hubb until May 22, 2007, twelve days later,

16   when it was served with suit papers that Hubb had filed in this Court in California on May 21.

17   To the best of my knowledge, Hubb's later-filed suit in California involves the exact same facts

18   and issues as the suit that microDATA filed in Vermont on May 10.

19        13.    microDATA's only offices are in the States of Vermont, Rhode Island and

20   Washington.  microDATA also has a salesperson who is based out of his home in the

21   Commonwealth of Kentucky.

22        14.    microDATA has no offices, facilities, or agents in California.  It is not registered

23   to do business in California, and does not hold any license, charter, or permit there.

24        15.    microDATA has no bank accounts or trust accounts in California.

25        16.    microDATA has no mailing address, answering service, directory listing, or

26   telephone number in California.

27        17.    Although microDATA has an Internet website, it is a "passive" site that merely

28   makes information about its business available to potential purchasers.  The website is not

1149377                                3

**DECLARATION OF BRUCE HEINRICH -- C07-02677 BZ**

1    targeted at individuals or enterprises in California, and it has never been used to enter into

2    contracts or otherwise conduct any business in California.

3         18.    Upon information and belief, microDATA has not sold any goods or services

4    into California.

5         I declare under penalty of perjury under the laws of the State of California that the

6    foregoing is true and correct and that this declaration is executed on the date shown below, in

7    St. Johnsbury, Vermont.

8         Signed this 11ᵗʰ day of June, 2007.

9                                                    Bruce Heinrich

10                                                   Title:  Vice President

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF BRUCE HEINRICH -- C07-02677 BZ**

# EXHIBIT A

## JANUARY 3, 2007 LETTER
## FROM HUBB SYSTEMS, LLC
## TO MICRODATA GIS, INC.



**FITZGERALD ABBOTT & BEARDSLEY** LLP
ATTORNEYS AT LAW

1221 Broadway, 21st Floor  Oakland, CA 94612
reply to: P.O. Box 12867 Oakland, CA 94604-2867

tel 510.451.3300
fax 510.451.1527
www.fablaw.com

Mary Beth Trice
mtrice@fablaw.com

January 3, 2007

**VIA FEDERAL EXPRESS**

President
microData GIS, Inc.
1016 US Route 5
St. Johnsbury, VT  05819

     Re:     Trade Name and Trademark Infringement

Dear Sir or Madam:

     We represent Hubb Systems, LLC ("Hubb") of Alameda, California.  For over twenty years, Hubb has been in the business of providing mobile computing solutions for public safety agencies and has used the trade name and trademark "DATA911" in connection with this business and the goods it sells since at least 1989.  Hubb owns a federal trademark registration for "DATA911" in Class 9 on the Principal Register of the United States Patent and Trademark Office, Registration Number 2,546,009 (please see enclosed copy of U.S. Registration Certificate Number 2,546,009).

     Your company ("microData") recently changed its trade name and trademark from "microData GIS" to "microDATA 911" and is using this mark to identify computer goods and services very similar to those sold by Hubb under its federally registered trademark.  In connection with this re-branding, microData has also registered and is using "microdata911.com" as the URL for its Internet website.

     This conduct by microData infringes the prior rights of Hubb in its trade name and federally registered trademark.  Hubb strenuously objects to this infringement and demands that microData immediately discontinue any and all use of use of the name, trademark and URL "microDATA 911".  Additionally, Hubb demands that microData assign to Hubb any registrations it owns for the URL "microdata911" in the ".com" domain and any other domains.

     Please contact the undersigned as soon as possible to confirm that you will comply with these demands.  If you do not respond by January 20 or if you refuse to cooperate with Hubb by taking all steps needed to rectify this infringement, Hubb will pursue legal action as needed to protect its rights.

President                          Page 2                          January 3, 2007

    This letter is sent without prejudice to any rights, claims or remedies that Hubb may have, all of which are expressly reserved.

                Very truly yours,

                FITZGERALD ABBOTT & BEARDSLEY LLP

        By                  Mary Beth Trice

MBT:svr

Enclosure

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

**Reg. No. 2,546,009**

## United States Patent and Trademark Office

Registered Mar. 12, 2002

## TRADEMARK
### PRINCIPAL REGISTER

## DATA911

DATA911 (CALIFORNIA SOLE PROPRIETOR-
SHIP)
2021 CHALLENGER DRIVE
ALAMEDA, CA 94501

FOR: COMPUTER SOFTWARE, NAMELY FOR
USE IN PROVIDING PUBLIC AND PERSONAL
INFORMATION IN THE FIELD OF PUBLIC SAFE-
TY, AND INSTRUCTION MANUALS SOLD AS A
UNIT THEREWITH, IN CLASS 9 (U.S. CLS. 21, 23, 26,
36 AND 38).

FIRST USE 9-0-1989; IN COMMERCE 9-0-1989.

SEC. 2(F).

SER. NO. 75-943,232, FILED 3-13-2000.

TRICIA THOMPKINS, EXAMINING ATTORNEY

# EXHIBIT B

## JANUARY 18, 2007 LETTER
## FROM MICRODATA GIS, INC.
## TO HUBB SYSTEMS, LLC



January 18, 2007


**_BY FEDEX OVERNIGHT DELIVERY_**
(FedEx Tracking No. 8581 2083 4079)

Mary Beth Trice, Esq.
Fitzgerald Abbott & Beardsley LLP
1221 Broadway
21st Floor
Oakland, CA 94612

   Re:  _**Trade Name and Trademark Issues**_

Dear Ms. Trice:

   We are writing to respond to your letter of January 3, 2007, in which you, on behalf of Hubb Systems, LLC ("Hubb"), demanded that microDATA GIS, Inc. ("microDATA") discontinue any and all use of the name, trademark and URL "microDATA 911" (the "microDATA Mark"). Without waiving any right, defense or claim that microDATA may have, all of which are expressly reserved, and without anything in this letter being construed as an admission, microDATA denies that its use of the microDATA Mark infringes upon any rights Hubb may hold in the trade name or trademark, Data911 (the "Cited Mark"), whether by virtue of Trademark Reg. No. 2,546,009 or otherwise.

   As we are sure you are well aware, to find a violation of the Lanham Act, among other elements, you will be required to prove that use by microDATA of the microDATA Mark is likely to cause confusion as to the origin of its goods/services with Hubb. Without conceding the validity of your ability to prove any other necessary elements to support any claim of trademark infringement by Hubb, we simply fail to perceive that there is any likelihood of confusion among consumers between the goods/services provided by microDATA and the goods/services provided by Hubb.

   a.  _Marks dissimilar._

   The microDATA Mark and the Cited Mark are distinguishable in appearance and sound. While each such mark may use some form of the terms "data" and "911", the microDATA Mark emphasizes use of the prefix "<u>micro</u>". Such prefix is an integral component of the microDATA Mark which predominates and clearly distinguishes this mark from the Cited Mark. The

microDATA 911
1016 U.S. Route 5
St. Johnsbury, VT 05819
800.722.6663
802.748.5503
802.748.5447 fax
e911@microdata911.com
www.microdata911.com

Mary Beth Trice, Esq.
January 18, 2007
Page 2

microDATA Mark also incorporates use of the term "911" as a separate and distinct element. In contrast, the Cited Mark simply combines the separate terms "data" and "911" into a single merged term. The respective marks, therefore, differ on their face in overall appearance and sound and there is no similarity in appearance or sound between the other elements of the respective marks.

In addition, the microDATA Mark and the Cited Mark differ in connotative meaning. The reference to the prefix "<u>micro</u>" in the microDATA Mark connotes to consumers that, among other things, the goods/services associated with such mark relate to small details and/or are provided with careful attention to minute details. The use of the prefix "<u>micro</u>", therefore, adds an entirely new dimension to the composite mark when it is coupled with the terms "data" and "911". In contrast, the Cited Mark implies no similar connotative meaning to consumers. The fact that the connotative meaning of the respective marks can be differentiated, combined with the overall difference in the sound and appearance of the marks, precludes the likelihood of confusion by consumers between the marks. There is an overall difference in commercial impression between the marks when they are viewed in their entirety.

Moreover, even if the respective marks are deemed to be somewhat phonetically similar by virtue of common usage of the terms "data" and "911", other elements of difference may lead to a final finding of no likelihood of confusion. <u>Standard Brands, Inc. v. Eastern Shore Canning Co.</u>, 172 F.2d 144, 80 U.S.P.Q. 318 (4th Cir. 1949), cert. denied, 337 U.S. 925 (1949) (no likelihood of confusion between V-8 vegetable juice and VA tomato juice where defendant did not manufacture the V-8 vegetable juice product). As is discussed more fully below, the goods/services to which the microDATA Mark relates are of a different nature than the goods/services to which the Cited Mark relates and, in any event, are targeted to a sophisticated consumer group with a relatively high price. Further, because of generic or otherwise widely used components of the Cited Mark, the Cited Mark has only a limited capacity to serve as a source indicator of the goods/services to which it is applied by Hubb. Accordingly, the possibility of confusion by consumers between microDATA's and Hubb's respective marks is highly unlikely.

     *b.*    <u>*Nature and type of goods/services dissimilar*</u>.

The specific nature of the goods/services provided by microDATA and the goods/services provided by Hubb are different. In general terms, microDATA is engaged in the business of providing 9-1-1 mapping software and Internet Protocol (IP)-based data technologies and related services to public safety organizations. More specifically, these technologies involve integrating mapping and call-handling functionalities for public service answering points (PSAPs) to improve and facilitate emergency response capabilities. In addition, microDATA provides Geographical Information System (GIS) and Automatic Location Information (ALI) database management systems and services for PSAPs and other public safety organizations.



Mary Beth Trice, Esq.
January 18, 2007
Page 3

In contrast, Hubb generally appears to be a Computer Aided Dispatch (CAD) company engaged in designing and manufacturing mobile PC hardware and related systems for emergency vehicles. While some of microDATA's solutions can be integrated to work with CAD products, microDATA itself does not provide CAD products or services. There, therefore, is a distinct difference in the nature or type of the respective goods/services provided by microDATA and Hubb.

       *c.*     *Highly sophisticated purchasers.*

Furthermore, the target audience of the goods/services microDATA provides will tend to be highly sophisticated consumers. The decision on the part of any public safety agency to use microDATA's goods/services undoubtedly involves significant research into the options available for such goods/services – typically also including a public bidding or request for proposals (RFP) process on the part of such agency. Public safety agencies making the decision to engage microDATA to provide public safety goods/services use the utmost care in making such decisions and do not do so on impulse. Tremendous thought and attention is devoted to the decision to engage such goods/services, which leads such consumers to examine the goods/services more carefully and learn more about the providers of such goods/services. See Black & Decker, Inc. v. North American Philips Corp., 632 F.Supp. 185, 228 U.S.P.Q. 659, 664 (D. Conn. 1985). Thus, providers of any such goods/services, including microDATA, make detailed information available to their potential customers for purposes of enabling such potential customers to make informed decisions about purchasing such goods/services. As such, extensive information relating to the source of the respective goods/services will be available to all potential customers of microDATA, and such persons will pay careful attention to such information.

       *d.*     *Cost of goods/services.*

The cost of the goods/services provided by microDATA, coupled with the level of sophistication of the customers for such goods/services, also precludes the possibility that there will be confusion among such customers regarding the marks used by microDATA and Hubb. Because the goods/services provided by microDATA are relatively expensive, and the use of such goods/services may be coordinated with the implementation and coordination of other public safety system components and products, customers of the goods/services provided by microDATA will exercise more discriminating care in engaging such goods/services than the purchaser of an inexpensive or routinely purchased product or service. See Black & Decker, Inc., 632 F.Supp. at 193.

       *e.*     *Crowded field.*

Finally, it is well settled that terms that are subject to common third party usage in the relevant product/service field have only a limited capacity to distinguish source, and are entitled to a narrow scope of protection accordingly. See General Mills, Inc. v. Health Valley Foods, 24 U.S.P.Q.2d 1270 (TTAB 1992). In the circumstances at hand, the term "911" could be considered generic when used in the field of public safety – in which case, Hubb has no right to preclude microDATA or any other party from using this term in this field. Even if not generic, at a minimum use of the term "911" is highly descriptive and is subject to a significant degree of third



Mary Beth Trice, Esq.
January 18, 2007
Page 4

party use and/or registration in connection with public safety goods/services. In fact, Hubb's mark is merely one of many "911" formative marks that consumers may encounter in this field. The Cited Mark, therefore, has only a marginal capacity to function as a source indicator as applied to goods/services in the public safety field. As such, consumers of microDATA's and Hubb's respective goods/services are very unlikely to be confused as to the source of such respective goods/services by virtue of the genericness and/or general dilution of the term "911" in the field of public safety.

Overall, given all of the factors discussed above, confusion between the goods/services provided by microDATA and the goods/services provided by Hubb by the respective potential customers of each of microDATA and Hubb is, at best, extremely unlikely. Accordingly, microDATA wholeheartedly denies that it has infringed upon any right Hubb may hold by virtue of Trademark Reg. No. 2,546,009 or otherwise and microDATA is fully prepared to defend this position and to protect its rights.

We trust that based on all of the above your client will agree not to pursue this matter further. If you or your client have additional comments or questions, please contact us so that any unnecessary legal proceedings hopefully can be avoided.

Sincerely,

microDATA GIS, Inc.

*James D. Nohl*

James D. Nohl
VP Business Affairs / General Counsel

**micro⊚DATA**

# EXHIBIT C

## APRIL 27, 2007 LETTER
## FROM HUBB SYSTEMS, LLC
## TO MICRODATA GIS, INC.



**FITZGERALD ABBOTT & BEARDSLEY LLP**
ATTORNEYS AT LAW

1221 Broadway, 21st Floor Oakland, CA 94612
reply to: P.O. Box 12867 Oakland, CA 94604-2867

tel 510.451.3300
fax 510.451.1527
www.fablaw.com

Mary Beth Trice
mtrice@fablaw.com

April 27, 2007

<u>VIA FEDERAL EXPRESS</u>

James A. Nohl
VP Business Affairs/General Counsel
microData GIS, Inc.
1016 US Route 5
St. Johnsbury, VT  05819

Re:    Trade Name and Trademark Infringement

Dear Mr. Nohl:

Thank you for your letter of January 18 responding to mine of January 3 concerning the use by your company ("microData") of the trade name and trademark "microData 911" ("your mark").  However, Hubb Systems, LLC ("Hubb") completely rejects your assertion that there is no likelihood of confusion or trademark injury present in this case.  Hubb is confident that it can establish that your mark as used by microData infringes its registered mark DATA911.

<u>Similarity of the Marks</u>

The marks are quite similar. The prefix "micro" is generic or at best descriptive in relation to computer products and merely connotes to consumers that the goods are computer components or have some relationship to computers.  One cannot avoid trademark infringement simply by adding a non-distinctive term to a senior user's mark.  The inclusion of "micro" does not differentiate the two marks enough to prevent confusion concerning the source of the goods identified by those marks.

The goods are not of a "different nature" but in fact are closely related as noted below. This similarity between the goods identified by the two marks reduces the degree of similarity between the marks required to establish a likelihood of confusion.

<u>Similarity of the Goods</u>

The goods sold by Hubb and microData are related and have overlapping functionality in several respects.  For example, Hubb's DATA911 system provides mapping solutions, including mobile mapping as part of automatic vehicle location ("AVL") software.  According to

R.M. FITZGERALD 1858 - 1934    CARL H. ABBOTT 1867 - 1933    CHARLES A. BEARDSLEY 1882 - 1963

James A. Nohl                          Page 2                          April 27, 2007

its website, microData's xAVL product also offers mobile mapping. Your letter explains that microData911 technologies integrate mapping and call-handling functions for PSAPs to improve and facilitate emergency response. Hubb's DATA911 software combines AVL and call-handling functionalities for PSAPs, facilitating emergency response. Your letter contends microData does not provide computer aided dispatch ("CAD") products, yet the xCAD provides interface to CAD systems and the xTrakker 9-1-1 product appears to handle 9-1-1 calls similar in some respects to how they would be handled by a CAD system. Hubb's DATA911 AVL software can also be utilized for GIS and ALI purposes.

The goods need not be identical or directly competitive in order to establish a case for infringement. The goods identified by your mark and DATA911 are sufficiently related to support a verdict of likelihood of confusion.

Initial Interest Confusion

The DATA911 mark has been used continuously for over 20 years in relation to emergency response technologies and is well-known in the field of public safety and emergency response. Regardless of the sophistication of the purchasers of the subject goods or their cost, your mark is highly likely to create initial interest confusion among those familiar with Hubb and its DATA911 products and registered mark. As you are surely aware, infringement can be based on confusion that creates initial customer interest even though no sale results. Even a sophisticated buyer of an expensive product can be initially mistaken or misled into considering a junior user's product when the mark used is confusingly similar to the senior user's mark. The fact that the consumer later discovers there is no connection or affiliation is irrelevant. By using a confusingly similar mark, microData911 is benefiting from and trading off of the goodwill and reputation associated with the DATA911 mark.

Crowded Field

Your argument that no infringement exists because of the common use of "911" is misplaced. Hubb's mark is DATA911 and it must be viewed as an integrated whole when considering whether consumers are likely to be confused by your mark. Although the use of "911" in this field may be common, the DATA911 mark is very well-known and any doubts about the likelihood of confusion due to the generic or descriptive nature of any single formative within the mark or any alleged descriptiveness of this mark are dispelled by the fact that the mark has acquired distinctiveness. Quite simply, after over 20 years of prominent and exclusive use by Hubb, consumers readily associate DATA911 with Hubb and its products.

I urge you to reconsider your position in light of these points and advise microData to discontinue using "microData911" immediately. Hubb is quite serious about this matter and intends to pursue it through legal action if we do not receive your company's agreement to discontinue use of the "microData911" mark or any confusingly similar mark (e.g., one including "data" and "911") no later than May 10.

James A. Nohl                    Page 3                    April 27, 2007

     This letter is sent without prejudice to any rights, claims or remedies that Hubb may have, all of which are expressly reserved.

                  Very truly yours,

                  FITZGERALD ABBOTT & BEARDSLEY LLP

         By               Mary Beth Trice

MBT:svr

# EXHIBIT D

## MAY 10, 2007 COMPLAINT

## AGAINST HUBB SYSTEMS, LLC

## FILED IN VERMONT FEDERAL COURT

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U. S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
BY 05/10/2007
DEPUTY CLERK

MICRODATA GIS, INC.,               )
                                   )
              Plaintiff,           )
                                   )
      v.                           )      Civil Action No. 2:07-cv-108
                                   )
HUBB SYSTEMS, LLC,                 )      JURY TRIAL DEMANDED
                                   )
              Defendant.           )
                                   )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff microDATA GIS, Inc. ("microDATA"), for its complaint against defendant Hubb

Systems, LLC ("Hubb"), alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for a declaratory judgment that microDATA does not infringe

Hubb's trademark. Hubb has alleged that microDATA's marks, MICRODATA 911 and

MICRO911DATA and design, as well as microDATA's Internet website address

(www.microdata911.com), infringe Hubb's DATA911 mark, and has threatened legal action

against microDATA. microDATA's MICRO911DATA and design mark, the logo form of its

mark, is depicted in Appendix A. microDATA asserts that its marks do not infringe and that, in

addition, it has senior common law user rights in its marks. In this action microDATA seeks a

declaration of the rights of the respective parties, and, in particular, a declaration that its use of

the marks MICRODATA 911 and MICRO911DATA and design is entirely lawful and does not

infringe Hubb's mark and that it has superior rights to use its mark. This action arises under the

Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the trademark laws of the United States,

15 U.S.C. § 1114, et seq., and applicable federal, Vermont, and other common law.

DOWNS
RACHLIN
MARTIN PLLC

<u>PARTIES</u>

2.      Plaintiff microDATA is a Vermont corporation with a principal place of business at 1016 U.S. Route 5, Saint Johnsbury, Vermont, 05819. microDATA is in the business of providing 9-1-1 mapping software and Internet Prototcol (IP)-based data technologies and related services to public safety organizations. microDATA's products integrate mapping and call-handling functionalities for public service answering points (PSAPs). In addition, microDATA provides Geographical Information Systems (GIS) and Automatic Location Information (ALI) systems for PSAPs and other public safety organizations. microDATA's products and services provide for the efficient management and routing of emergency calls, the efficient management and updating of emergency response information, and the efficient locating and routing of emergency response vehicles to the sites of emergency calls. microDATA does not provide computer-aided dispatch (CAD) products or services, although certain of its products do interface with CAD products. microDATA sells its products and related services under the marks MICRODATA, MICRODATA 911, and MICRO911DATA and design. microDATA has been selling products and services under the MICRODATA mark since at least 1990 and under the MICRODATA 911 and MICRO911DATA and design mark, or slight variations of such design mark, since at least 1998.

3.      Defendant Hubb is, upon information and belief, a California limited liability company, with its principal place of business at 2021 Challenger Drive, Alameda, California, 94501. Hubb is a ruggedized hardware and/or CAD company engaged in designing and selling mobile PC hardware and related services for emergency vehicles. Hubb sells its products under the mark DATA911. Hubb also has a federal registration for its DATA911 mark, Registration

No. 2,546,009, for "computer software, namely for use in providing public and personal

information in the field of public safety, and instruction manuals sold as a unit therewith."

      4.     microDATA is located in this state, and the subject of this action, microDATA's

ownership of and rights to use the marks  MICRODATA, MICRODATA 911 and

MICRO911DATA and design, is located in this state.

JURISDICTION AND VENUE

      5.     This Court has subject matter jurisdiction over this action pursuant to:  28 U.S.C.

§§ 2201 (declaratory judgment), 1331 (federal question), 1338 (trademarks), and 15 U.S.C.

§ 1121 (trademarks), as well as 28 U.S.C. § 1332 (diversity of citizenship).  The claim arises

under the trademark laws of the United States, and the parties are citizens of different states and

the amount in controversy is greater than $75,000.

      6.     Upon information and belief Hubb has sufficient contacts with this jurisdiction

generally and, in particular, with the events herein alleged, that it is subject to the exercise of

jurisdiction by this Court.

      7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because a

substantial part of the events or omissions giving rise to this claim occurred, or a substantial part

of property that is the subject of the action is situated here.

FACTS

      8.     microDATA has been in business since at least 1983 in St. Johnsbury, Vermont.

      9.     microDATA has been using the mark MICRODATA in Vermont and elsewhere

since at least 1990 and has been using the marks MICRODATA 911 and/or MICRO911DATA

and design, or slight variations of such design mark, in Vermont and elsewhere since at least

1998.

DOWNS
RACHLIN
MARTIN PLLC

- 3 -

10.    microDATA uses its mark in connection with software products and related services as described above.

11.    microDATA does not design, manufacture, or sell hardware products identified by the Microdata marks.

12.    Hubb uses the mark DATA911 in connection with hardware and certain software products designed to be used with that hardware.

13.    microDATA's marks and Hubb's mark are distinct in both visual appearance and in sound when read aloud.

14.    The marks are also distinct in connotative meaning.

15.    The goods and services sold by microDATA and Hubb, on which their respective marks are used, are distinct.

16.    The goods and services sold by microDATA and Hubb are not retail consumer goods, but are relatively expensive, specialized goods and services purchased by highly sophisticated, discriminating purchasers (governmental organizations, municipalities, and both public and private public safety organizations such as police departments, fire departments, and ambulance and EMT services). The purchases are likely to be made only after considerable thought, review, and deliberation, and often as the result of bidding processes. Purchasers will examine the goods and services carefully; may test them before making the purchase; and will understand the differences between the two sources identified by the two marks. There is no likelihood of confusion given the category of potential purchasers of microDATA's and Hubb's respective goods and services.

17.    In addition, Hubb's mark, DATA911 is a combination of two commonly-used terms. The two elements of Hubb's mark are, both separately and in combination, merely

DOWNS
RACHLIN
MARTIN PLLC
                                            - 4 -

descriptive, if not generic.

18.    Hubb's mark is merely one of many marks using "data" that consumers may

encounter in the field of computer hardware and software and related services, and one of many

using "911" that consumers may encounter in the field of public safety-related goods and

services.

19.    Hubb's mark is therefore weak and has a limited capacity to serve as a source-

identifier.  The mark is therefore entitled to limited if any protection under the trademark laws.

20.    There is no likelihood of confusion between the two marks.

21.    microDATA's use of its MICRODATA 911 and/or MICRO911DATA and design

marks, or slight variations of such design mark, pre-dates both Hubb's first use of DATA911 in

certain geographic regions and its registration of its mark (2002), and therefore microDATA has

superior common law rights to use its marks.

22.    Hubb has threatened microDATA with legal action based on a claim of trademark

infringement.

23.    On January 3, 2007, Hubb, through legal counsel, sent microDATA a letter

alleging trademark infringement and concluding with the assertion that "Hubb will pursue legal

action as needed to protect its rights."

24.    On January 18, 2007, microDATA responded by sending a letter to Hubb's

counsel addressing in detail and refuting Hubb's allegations of trademark infringement.

25.    On April 27, 2007, Hubb, again, through legal counsel, sent microDATA a letter

asserting claims of trademark infringement and concluding with the assertion that Hubb intended

to pursue legal action.

26.    Quite possibly in anticipation of commencing litigation against microDATA,

DOWNS
RACHLIN
MARTIN PLLC                                    - 5 -

Hubb recently took action at the U.S. Patent and Trademark Office to improve its trademark position relative to microDATA and others. On April 19, 2007, Hubb filed a "Section 15" declaration with the U.S. Patent and Trademark Office in an effort to achieve incontestable status for its DATA911 registration. On April 24, 2007, Hubb filed a trademark application, Serial No. 77/160,091 for DATA911 for various computer products used in the field of public safety.

27.    microDATA has a reasonable and legitimate fear of being sued for trademark infringement by Hubb.

COUNT I

REQUEST FOR DECLARATORY JUDGMENT

28.    microDATA incorporates by reference paragraphs 1 through 27, above, as if fully set forth herein.

29.    An actual controversy exists in this matter given that: (a) Defendant Hubb has alleged that microDATA has engaged in trademark infringement; (b) microDATA has denied the allegations and explained its reasoning; (c) Hubb has rejected microDATA's response and repeated its allegations of infringement; and (d) Hubb has explicitly and recently threatened imminent legal action against microDATA.

30.    Based on the foregoing allegations, there exists between the parties a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.

31.    The claims made by Hubb, coupled with the imminent threat of litigation against microDATA in an undetermined venue, have caused and continue to cause harm to microDATA, which now seeks a just and speedy resolution of this matter in an impartial forum.

32.    microDATA seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and F.R.C.P. 57.

DOWNS
RACHLIN
MARTIN PLLC                                    - 6 -

33.    A declaratory judgment from this Court will serve a useful purpose in clarifying and settling the legal relations at issue in this action, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

34.    microDATA requests that this Court hear the matter and declare that its use of the marks MICRODATA 911 and MICRO911DATA and design, as well as microDATA's Internet website address (www.microdata911.com) and any other such address using another top-level domain, do not infringe Hubb's mark DATA911; that microDATA is not liable to Hubb; and that microDATA can continue to use its marks on its goods and services and future goods and services.

## Request for Relief

WHEREFORE, Plaintiff requests the Court to provide the following relief:

A.    Award Plaintiff declaratory relief as set forth above;

B.    Award Plaintiff its attorneys fees and costs of this action; and

C.    Award Plaintiff such other and further relief as is just and equitable.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated at Burlington, Vermont the 10th day of May, 2007

MICRODATA GIS, INC.

By: _____
Walter E. Judge, Jr.
Lawrence H. Meier
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT 05402
(802) 863-2375

BTV.564498.01

DOWNS
RACHLIN
MARTIN PLLC

EXHIBIT A

# EXHIBIT E

## MAY 10, 2007 LETTER

## FROM MICRODATA GIS, INC.

## TO HUBB SYSTEMS, LLC



LAWRENCE H. MEIER
lmeier@drm.com

**VIA EMAIL AND FEDEX**

May 10, 2007

Mary Beth Trice, Esq.
Fitzgerald Abbott & Beardsley LLP
P.O. Box 12867
Oakland, CA 94604-2867

Re:    Trade Name and Trademark Infringement
       DRM File No.: 07142-00006

Dear Ms. Trice:

We are trademark counsel for microDATA GIS, Inc. ("microDATA"), and write in response to your letters of January 3, 2007 and April 27, 2007 regarding the objection your client, Hubb Systems, LLC ("Hubb"), has expressed to microDATA's use of the term "microDATA 911".

As discussed below, our analysis indicates there is no likelihood of confusion or initial interest confusion here. But we also believe there are opportunities for coexistence that the parties should explore further. This letter lays out microDATA's position relative to your claims of trademark infringement, and discusses the next steps microDATA has taken and will take.

<u>No Likelihood of Confusion</u>

Jay Nohl, in his letter to you of January 18, 2007, was correct – there is no likelihood of confusion as between the marks MICRODATA 911 and the logo mark, MICRO911DATA and design, (collectively, the "microDATA Marks") and the mark DATA911. We reach this conclusion for the reasons discussed below.

**Differences in the Marks**

Marks need to be considered in their entirety when conducting a likelihood of confusion analysis, as you correctly point out. This principle has, as its twin sister, however, the requirement to evaluate each element of a mark to assess which portions are dominant and which

Ms. Mary Beth Trice
May 2, 2007
Page 2

are subservient. *Mktg. Displays v. TrafFix Devices*, 200 F.3d 929, (6th Cir. 1999), *rev'd on other grounds, TrafFix Devices v. Mktg Displays*, 532 U.S. 23 (2001).

We conducted a search to identify federally registered trademarks, and marks that have been approved for federal registration, that include the term "911" and are directed to goods in International Class 9, the Class where the goods at issue are categorized. Over fifty marks were uncovered in the search. While certain of these marks are not used to identify software and hardware products used in the field of public safety, most are. Moreover, in many of the registrations that are most relevant, "911" was disclaimed apart from its use in the mark as a whole. Further, a number of the marks were registered on the Supplemental Register. These factors support microDATA's prior assertion that "911" is weak when used to identify products in the field of public safety.

Focusing directly on the goods at issue, the U.S. Patent and Trademark Office ("USPTO") has registered or approved for registration several marks for goods that are very similar to the goods recited in Hubb's DATA911 registration. All of these marks include "911" and another term. In particular, see GEOSNAP 9-1-1, Serial No. 78/742,319, 911 CARS, Reg. No. 2,902,575, and AGENT 911, Serial No. 78/840,957. It is clearly the portions of the marks other than "911" that allow these marks to coexist, as among each other and relative to the DATA911 mark. The upshot of this activity in the USPTO is that "911" has been demonstrated to have limited source distinguishing capability with respect to goods of the type sold by microDATA and Hubb.

The term "DATA" for software is at least as weak. Indeed, we observed that the USPTO determined the DATA911 mark was merely descriptive of the goods recited in your client's application, and only granted registration of the mark after amendment of the application under Section 2(f). Considering all of these factors together, a mark can be distinguished from DATA911 with only a very minor change.

microDATA has achieved that distinction with its addition of the prefix "MICRO." While "MICRO" may not be arbitrary or fanciful in the context of the goods at issue here, it is certainly more distinctive than "DATA" or "911." As such, it is the dominant portion of the MICRODATA 911 mark. Because "MICRO" is dominant, and is not present in the DATA911 mark, the use of this term creates a sufficiently different commercial impression to avoid a likelihood of confusion.

**Differences in the Channels of Trade**

By and large, microDATA and Hubb are in very different areas of the public safety field. microDATA is unaware of any instances of actual confusion. microDATA has never competed with Hubb for the sale of a product to a given customer. With perhaps one or two recent exceptions, microDATA has not seen Hubb at the trade shows it attends. These facts are consistent with microDATA's prior assertions that the CAD business is so different than the PSAP or GIS business that, together with the differences in the marks, there is no likelihood of confusion.



DOWNS RACHLIN MARTIN PLLC

Ms. Mary Beth Trice
May 2, 2007
Page 3

You have pointed to areas of potential overlap in the products of the microDATA and Hubb.
True, both microDATA and Hubb sell AVL products. That alone is not enough to create overlap
in channels of trade sufficient to create a likelihood of confusion. It would be the rare customer
who sets out to buy just an AVL product (microDATA has never had such a customer). Rather,
customers come to request AVL products after first coming in from the CAD side or the PSAP
side. In that context, there is minimal chance of confusion as to source as the customer will by
then know full well with whom it is dealing. Likelihood of confusion requires more than the
remote possibility of confusion – it requires a reasonable chance that confusion will occur.
Product differences, and the context in which microDATA and Hubb sell similar products, avoid
a *likelihood* of confusion.

**Other Factors**

Jay Nohl previously identified other factors that contribute to an absence of confusion. Without
these factors, no likelihood of confusion exists for the reasons discussed above. But these factors
do exist and are very real. And so these factors further diminish the likelihood of confusion.

<u>Initial Interest Confusion</u>

Trademark owners typically assert, particularly those in the 9th Circuit, that an alleged infringer's
use of its marks creates initial interest confusion which gives rise to trademark infringement.
This assertion is appealing for the plaintiff in a trademark infringement dispute, because it
bypasses the multi-factor tests used in every Circuit for determining likelihood of confusion. We
understand the motivation behind your argument.

Unfortunately, courts and commentators have not treated this doctrine favorably in recent years.
The decision in *Brookfield Communications, Inc v WestCoast Entertainment Corp* , 174 F3d
1036 (9th Cir. 1999) has been significantly criticized and eroded, including in the 9th Circuit.
See, *Playboy, Inc v Netscape Enterprises Communication Corp* , 354 F.3d 1020 (9th Cir. 2004).
Further, that fact pattern here doesn't fit the typical situation where initial interest confusion is
asserted. While success with initial interest confusion can be a short-cut to infringement, it is a
doctrine that is gasping for breath, one that is not applicable here, and one that we doubt a court
would support.

<u>Coexistence</u>

Even though microDATA firmly denies that there is any likelihood of confusion between Hubb's
use of the term "Data911" and microDATA's use of the term "microDATA 911", microDATA
nonetheless understands that your client is worried about the possibility of such confusion.
Accordingly, microDATA would not be adverse to settling this matter in an efficient and time-
sensitive manner, short of continuing with actual legal proceedings.



DOWNS RACHLIN MARTIN PLLC

Ms. Mary Beth Trice
May 2, 2007
Page 4

Your prior proposal for coexistence, namely that microDATA stop using its MICRODATA 911 mark and associated URLs, and transfer them to Hubb, is a non-starter. However, given the absence of actual confusion despite coexistence in the market place for nearly ten years, if not longer (microDATA started using the MICRODATA 911 mark in some form at least as early as 1998), and the differences in the markets each party serves, we believe there should be an opportunity for coexistence if each party is willing to be flexible to some extent.

microDATA certainly would prefer to resolve this dispute amicably, and so will carefully entertain any reasonable coexistence agreement you would care to propose. Accordingly, while your prior proposal is a non-starter, microDATA will welcome an alternative proposal.

## Declaratory Judgment Action

To repeat, microDATA believes this dispute can be resolved through a mutually satisfactory coexistence agreement. On the other hand, microDATA feels that there is some real possibility that Hubb may not approach this matter with a spirit of compromise. Your threats of litigation create this concern. Also, we have observed that you recently have taken action on behalf of Hubb in the USPTO to shore up Hubb's trademark position, quite possibly in preparation for litigation. In an effort to reach a final resolution of this dispute as quickly as possible, microDATA today filed a Declaratory Judgment action in U.S. District Court in the District of Vermont. A courtesy copy is attached to this letter.

microDATA intends to pursue this litigation aggressively. It believes, as do we, that it has a winning case. At the same time, it is prepared to dismiss the case if a mutually satisfactory coexistence agreement can be reached. We will delay serving Hubb for forty-five (45) days from today, to give the parties a chance to try and resolve this dispute.

## Conclusion

We can resolve this dispute in the courts or through a coexistence agreement. We hope Hubb's next action will be to propose terms of coexistence, but we are prepared to aggressively defend our client to the extent required if Hubb is not prepared to seek a reasonable compromise.

This letter is sent without prejudice to any of microDATA's rights, defenses and claims, all of which are expressly reserved. Furthermore, nothing in this letter should be construed as an admission on the part of microDATA.

Very truly yours,

DOWNS RACHLIN MARTIN PLLC

by: Lawrence H. Meier, Esq.

DOWNS RACHLIN MARTIN PLLC

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

RECEIVED

MA?  1 2 200?

U.S. DISTRICT COURT
BURLINGTON, VT

MICRODATA GIS, INC.,           )
                               )
            Plaintiff,         )
                               )
        v.                     )        Civil Action No. _____
                               )
HUBB SYSTEMS, LLC,             )        JURY TRIAL DEMANDED
                               )
            Defendant.         )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff microDATA GIS, Inc. ("microDATA"), for its complaint against defendant Hubb

Systems, LLC ("Hubb"), alleges as follows:

### NATURE OF THE ACTION

1       This is an action for a declaratory judgment that microDATA does not infringe

Hubb's trademark. Hubb has alleged that microDATA's marks, MICRODATA 911 and

MICRO911DATA and design, as well as microDATA's Internet website address

(www.microdata911.com), infringe Hubb's DATA911 mark, and has threatened legal action

against microDATA  microDATA's MICRO911DATA and design mark, the logo form of its

mark, is depicted in Appendix A  microDATA asserts that its marks do not infringe and that, in

addition, it has senior common law user rights in its marks  In this action microDATA seeks a

declaration of the rights of the respective parties, and, in particular, a declaration that its use of

the marks MICRODATA 911 and MICRO911DATA and design is entirely lawful and does not

infringe Hubb's mark and that it has superior rights to use its mark  This action arises under the

Federal Declaratory Judgment Act, 28 U S C. § 2201, the trademark laws of the United States,

15 U.S.C. § 1114, et seq., and applicable federal, Vermont, and other common law

DOWNS
RACHLIN
MARTIN PLLC

PARTIES

2.    Plaintiff microDATA is a Vermont corporation with a principal place of business at 1016 U.S. Route 5, Saint Johnsbury, Vermont, 05819  microDATA is in the business of providing 9-1-1 mapping software and Internet Protocol (IP)-based data technologies and related services to public safety organizations. microDATA's products integrate mapping and call-handling functionalities for public service answering points (PSAPs). In addition, microDATA provides Geographical Information Systems (GIS) and Automatic Location Information (ALI) systems for PSAPs and other public safety organizations  microDATA's products and services provide for the efficient management and routing of emergency calls, the efficient management and updating of emergency response information, and the efficient locating and routing of emergency response vehicles to the sites of emergency calls microDATA does not provide computer-aided dispatch (CAD) products or services, although certain of its products do interface with CAD products. microDATA sells its products and related services under the marks MICRODATA, MICRODATA 911, and MICRO911DATA and design  microDATA has been selling products and services under the MICRODATA mark since at least 1990 and under the MICRODATA 911 and MICRO911DATA and design mark, or slight variations of such design mark, since at least 1998

3.    Defendant Hubb is, upon information and belief, a California limited liability company, with its principal place of business at 2021 Challenger Drive, Alameda, California, 94501 Hubb is a ruggedized hardware and/or CAD company engaged in designing and selling mobile PC hardware and related services for emergency vehicles  Hubb sells its products under the mark DATA911  Hubb also has a federal registration for its DATA911 mark, Registration

No 2,546,009, for "computer software, namely for use in providing public and personal information in the field of public safety, and instruction manuals sold as a unit therewith."

    4. microDATA is located in this state, and the subject of this action, microDATA's ownership of and rights to use the marks MICRODATA, MICRODATA 911 and MICRO911DATA and design, is located in this state

## JURISDICTION AND VENUE

    5. This Court has subject matter jurisdiction over this action pursuant to: 28 U S C. §§ 2201 (declaratory judgment), 1331 (federal question), 1338 (trademarks), and 15 U.S C § 1121 (trademarks), as well as 28 U.S.C. § 1332 (diversity of citizenship) The claim arises under the trademark laws of the United States, and the parties are citizens of different states and the amount in controversy is greater than $75,000

    6. Upon information and belief Hubb has sufficient contacts with this jurisdiction generally and, in particular, with the events herein alleged, that it is subject to the exercise of jurisdiction by this Court.

    7. Venue is proper in this district pursuant to 28 U S C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to this claim occurred, or a substantial part of property that is the subject of the action is situated here

## FACTS

    8. microDATA has been in business since at least 1983 in St Johnsbury, Vermont

    9. microDATA has been using the mark MICRODATA in Vermont and elsewhere since at least 1990 and has been using the marks MICRODATA 911 and/or MICRO911DATA and design, or slight variations of such design mark, in Vermont and elsewhere since at least 1998

DOWNS
RACHLIN
MARTIN PLLC

-3-

10      microDATA uses its mark in connection with software products and related services as described above.

11.     microDATA does not design, manufacture, or sell hardware products identified by the Microdata marks.

12.     Hubb uses the mark DATA911 in connection with hardware and certain software products designed to be used with that hardware.

13      microDATA's marks and Hubb's mark are distinct in both visual appearance and in sound when read aloud.

14      The marks are also distinct in connotative meaning.

15      The goods and services sold by microDATA and Hubb, on which their respective marks are used, are distinct.

16      The goods and services sold by microDATA and Hubb are not retail consumer goods, but are relatively expensive, specialized goods and services purchased by highly sophisticated, discriminating purchasers (governmental organizations, municipalities, and both public and private public safety organizations such as police departments, fire departments, and ambulance and EMT services)  The purchases are likely to be made only after considerable thought, review, and deliberation, and often as the result of bidding processes.  Purchasers will examine the goods and services carefully; may test them before making the purchase; and will understand the differences between the two sources identified by the two marks  There is no likelihood of confusion given the category of potential purchasers of microDATA's and Hubb's respective goods and services

17.     In addition, Hubb's mark, DATA911 is a combination of two commonly-used terms  The two elements of Hubb's mark are, both separately and in combination, merely

descriptive, if not generic

18. Hubb's mark is merely one of many marks using "data" that consumers may encounter in the field of computer hardware and software and related services, and one of many using "911" that consumers may encounter in the field of public safety-related goods and services.

19. Hubb's mark is therefore weak and has a limited capacity to serve as a source-identifier. The mark is therefore entitled to limited if any protection under the trademark laws

20. There is no likelihood of confusion between the two marks.

21. microDATA's use of its MICRODATA 911 and/or MICRO911DATA and design marks, or slight variations of such design mark, pre-dates both Hubb's first use of DATA911 in certain geographic regions and its registration of its mark (2002), and therefore microDATA has superior common law rights to use its marks.

22. Hubb has threatened microDATA with legal action based on a claim of trademark infringement

23. On January 3, 2007, Hubb, through legal counsel, sent microDATA a letter alleging trademark infringement and concluding with the assertion that "Hubb will pursue legal action as needed to protect its rights."

24. On January 18, 2007, microDATA responded by sending a letter to Hubb's counsel addressing in detail and refuting Hubb's allegations of trademark infringement

25. On April 27, 2007, Hubb, again, through legal counsel, sent microDATA a letter asserting claims of trademark infringement and concluding with the assertion that Hubb intended to pursue legal action

26. Quite possibly in anticipation of commencing litigation against microDATA,

DOWNS
RACHLIN
MARTIN PLLC

- 5 -

Hubb recently took action at the U S Patent and Trademark Office to improve its trademark position relative to microDATA and others  On April 19, 2007, Hubb filed a "Section 15" declaration with the U.S Patent and Trademark Office in an effort to achieve incontestable status for its DATA911 registration. On April 24, 2007, Hubb filed a trademark application, Serial No. 77/160,091 for DATA911 for various computer products used in the field of public safety.

27    microDATA has a reasonable and legitimate fear of being sued for trademark infringement by Hubb.

COUNT I

REQUEST FOR DECLARATORY JUDGMENT

28    microDATA incorporates by reference paragraphs 1 through 27, above, as if fully set forth herein

29    An actual controversy exists in this matter given that:  (a) Defendant Hubb has alleged that microDATA has engaged in trademark infringement; (b) microDATA has denied the allegations and explained its reasoning; (c) Hubb has rejected microDATA's response and repeated its allegations of infringement; and (d) Hubb has explicitly and recently threatened imminent legal action against microDATA

30    Based on the foregoing allegations, there exists between the parties a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.

31    The claims made by Hubb, coupled with the imminent threat of litigation against microDATA in an undetermined venue, have caused and continue to cause harm to microDATA, which now seeks a just and speedy resolution of this matter in an impartial forum

32    microDATA seeks a declaratory judgment pursuant to 28 U S C § 2201 and F R C P 57.

DOWNS
RACHLIN
MARTIN PLLC

- 6 -

33    A declaratory judgment from this Court will serve a useful purpose in clarifying and settling the legal relations at issue in this action, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

34.    microDATA requests that this Court hear the matter and declare that its use of the marks MICRODATA 911 and MICRO911DATA and design, as well as microDATA's Internet website address (www.microdata911.com) and any other such address using another top-level domain, do not infringe Hubb's mark DATA911; that microDATA is not liable to Hubb; and that microDATA can continue to use its marks on its goods and services and future goods and services.

### Request for Relief

WHEREFORE, Plaintiff requests the Court to provide the following relief:

A    Award Plaintiff declaratory relief as set forth above;

B.    Award Plaintiff its attorneys fees and costs of this action; and

C    Award Plaintiff such other and further relief as is just and equitable

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Dated at Burlington, Vermont the 10th day of May, 2007

MICRODATA GIS, INC.

By: _____
Walter E. Judge, Jr
Lawrence H. Meier
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT 05402
(802) 863-2375

BTV 564498 01

DOWNS
RACHLIN
MARTIN PLLC

- 7 -

EXHIBIT A

