Michael M.K. Sebree #142649
William E. Adams #153330
Dawn Newton #209002
FITZGERALD ABBOTT & BEARDSLEY LLP
1221 Broadway, 21st Floor
Oakland, California 94612
Telephone: (510) 451-3300
Facsimile: (510) 451-1527
Emails: wadams@fablaw.com;dnewton@fablaw.com

Attorneys for Plaintiff
HUBB SYSTEMS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

| | |
|---|---|
| HUBB SYSTEMS, LLC, | Case No.: C07-02677 BZ |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| MICRODATA GIS, INC., | |
| Defendant. | Date: August 1, 2007 |
| | Time: 10:00 am |
| | Courtroom G |
| | Magistrate Judge Bernard Zimmerman |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION    CASE NO.: C07-02677 BZ
6/22/07 (24601) #273763.1

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   BACKGROUND FACTS ....................................................................... 2

III.  LEGAL ARGUMENT ........................................................................... 4

    A.    A Preliminary Injunction Should Issue Prohibiting Defendant From Using Plaintiff's Federally Registered Trademark "DATA911" ................................... 4

        1.    Defendant's Use Of Plaintiff's "Data911" Creates A Likelihood Of Confusion ............................................................................. 5

            (a)    Strength of the Mark ............................................... 6

            (b)    Proximity of Goods ................................................. 7

            (c)    Similarity of Marks ................................................. 9

            (d)    Marketing Channels Used .......................................... 9

            (e)    Defendant's Intent .................................................. 10

            (f)    Likelihood of Expansion of Product Lines .......................... 11

        2.    Defendant's Trademark Infringement, By its Very Nature, Results in the Requisite Harm for a Preliminary Injunction. ......................... 12

IV.   CONCLUSION ................................................................................. 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ
6/22/07 (24601) #273763.1

# TABLE OF AUTHORITIES

**Page**

## Cases

American Circuit Breaker Corp. v. Oregon Breakers Inc.
406 F.3d 577 (9th Cir. 2005)....................................................................................8

AMF Inc. v. Sleekcraft Boats
599 F.2d 341 (9th Cir. 1979)............................................................................passim

Cadence Design Sys., Inc. v. Avant! Corp.
125 F.3d 824 (9th Cir. 1997)..................................................................................15

Dr. Seuss Enterprises, L.P. v. Penguin Books
109 F.3d 1394 (9th Cir. 1997)..................................................................................8

E-Systems, Inc. v. Monitek, Inc.
720 F.2d 604 (9th Cir. 1983)....................................................................................7

Goto.com, Inc. v. The Walt Disney Co.
202 F.3d 1199 (9th Cir. 2000)................................................................................15

North Carolina Dairy Foundation, Inc. v. Foremost-McKesson, Inc.
92 Cal.App.3d 98 (1979).........................................................................................7

Nutri-System, Inc. v. Con-Stan Indus., Inc.
809 F.2d 601 (9th Cir. 1987)...............................................................................9, 12

Official Airline Guides, Inc. v. Goss
6 F.3d 1385 (9th Cir. 1993)..............................................................................passim

Order of Job's Daughters v. Lindeburg & Co.
633 F.2d 912 (9th Cir. 1980).....................................................................................7

Owner-Operator Independent Drivers Ass'n, Inc. v. Swift Transportation Co., Inc.
367 F.3d 1108, 1111 (9th Cir. 2004)........................................................................8

Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.
469 U.S. 189 (1985)................................................................................................10

Paul Sachs Originals Co. v. John Sacs and Leo Hirsch
217 F. Supp. 407, 411 (1963 C.D. Ca.)....................................................................7

Pepsico, Inc. v. Tones
1993 U.S. Dist. LEXIS 17588 *9 1993 WESTLAW 455222 (C.D.CA. 1993)...............15

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ
6/22/07 (24601) #273763.1

Thane Intern., Inc. v. Trek Bicycle Corp.
  305 F.3d 894 (9th Cir. 2002)..................................................................................9

United Council of YMCAs of the United States of America v. The Columbia YMCA
  1988 U.S. Dist. LEXIS 16535 *9, 1988 WESTLAW 144985 (D.S.C. 1988) ...............15

Vision Sports, Inc. v. Melville Corp.
  888 F.2d 609 (9th Cir. 1989)..................................................................................15

## **Statutes**

Lanham Act, 15 U.S.C.
  § 1051..........................................................................................................4, 7
  § 1058..............................................................................................................6
  § 1065..............................................................................................................6
  § 1115(b).........................................................................................................6
  § 1125(1)(1)(A)...............................................................................................8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ

6/22/07 (24601) #273763.1

1    TO DEFENDANT MICRODATA GIS, INC. AND ITS ATTORNEYS OF RECORD

2  HEREIN:

3    PLEASE TAKE NOTICE that on August 1, 2007, at 10:00 a.m. or as soon thereafter as

4  the matter may be heard in Courtroom G of the above entitled Court located on the 15th Floor,

5  450 Golden Gate Avenue, San Francisco, California, Plaintiff Hubb Systems, LLC's ("Hubb" or

6  "Plaintiff") will move the Court for a preliminary injunction preventing Defendant microDATA

7  GIS, Inc. from using Hubb's "DATA911" federally registered and incontestable trademark

8  pursuant to the Lanham Act (15 U.S.C. §1051, *et seq.*) and on the grounds that Hubb's

9  trademark infringement claim has probable success on the merits, and that Hubb will suffer the

10  possibility of irreparable harm if no injunction granted.

11    This motion is based on this Notice of Motion and Motion, the following Memorandum

12  of Points and Authorities, the Declarations of Scott Beisner and David C. Lee, and the pleadings

13  and papers filed herein.

14    **MEMORANDUM OF POINTS AND AUTHORITIES**

15  I.    **PRELIMINARY STATEMENT**

16    Defendant, a head to head competitor, infringed on Hubb's mark using a virtually

17  identical trademark to that of Hubb's well-known and federally registered mark "DATA911" --

18  a mark that is federally recognized as "incontestable" under 15 U.S.C. §§ 1058 & 1065.

19    Hubb has designed, manufactured, and continues to sell mobile hardware and software

20  systems for public safety under the federally registered trademark DATA911.  Hubb's products

21  are sold to a category of consumer most needing reliable and authentic products: public safety

22  agencies.  Hubb's full product line, sold under the mark DATA911, includes mobile computing

23  systems, digital video processing units, handheld devices, software programs including

24  computer aided dispatch ("CAD") and automatic vehicle location ("AVL"), and customized

25  systems.

26    Recently, Hubb learned that Defendant, microDATA GIS, Inc. ("Defendant"), has

27  changed its trademark and name of many years and commenced using a virtually identical mark

28

1   to that Plaintiff's DATA911 trademark in the identical industry (i.e., public safety), and began

2   selling software including CAD and AVL to the public safety community.  The public is likely

3   to be confused by Defendant's conduct.  While the likelihood of confusion over the source of

4   goods sold in commerce is, in and of itself, enough to warrant injunctive relief, such relief is

5   particularly needed where the goods at issue are sold to emergency response agencies, which

6   rely on them to save lives on a daily basis.

7          Judicial intervention is now urgently required to avoid imminent harm and to ensure that

8   the public does not continue to confuse Defendant's business for that of Plaintiff.  Pending the

9   determination of the requests for permanent relief set forth in the Complaint, Plaintiff seeks a

10  narrowly tailored preliminary injunction as follows:

11         (a)    prohibiting Defendant from using for any purpose the trademark "Data911"

12  which has been continuously used in commerce by Plaintiff and its predecessor in interest since

13  1989;

14         (b)    requiring Defendant to change its trademark and name so that the phrase

15  "Data911 " will not be included in such name;

16         (c)    requiring Defendant to turn over possession and control to Plaintiff of the

17  internet domain name "microdata911.com;"

18         (d)    requiring Defendant to deliver up to Plaintiff's counsel for destruction any

19  materials that contain imitations of the trade name or that contain marks that are confusingly

20  similar to the Plaintiff's trademark, logo, or advertising, including any that include the term

21  "Data911"; and

22         (e)    ordering expedited discovery to determine the extent and breadth of Defendant's

23  infringing activities.

24  **II.    BACKGROUND FACTS**

25         Plaintiff is a California limited liability company with its principal place of business in

26  Alameda, California.  Defendant is a Vermont corporation with its principal place of business in

27  St. Johnsbury, Vermont.

28
                                      2

1    Since no later than 1989, Plaintiff or its predecessors in interest, and their agents and

2  assigns, have designed, manufactured, and sold mobile hardware and software systems sold to

3  and used by emergency response agencies (police and fire departments) for public safety

4  application under the trade name and trademark "Data911." Plaintiff's products include mobile

5  computing systems, digital video processing units, hand held devices, software programs

6  including CAD and AVL, and customized systems. These products are used to prioritize and

7  maximize efficient responses to emergency situations.

8    Plaintiff has marketed its products and services throughout the United States and

9  routinely attends numerous public safety trade shows attended by numerous law enforcement

10  other public safety agencies. As a result of Plaintiff's substantial advertising and promotional

11  efforts for its goods and services, as well as its dedication to providing high quality goods and

12  services, Plaintiff's "Data911" trademark is widely and favorably recognized and relied upon by

13  the relevant trade and consuming public as indicating high quality goods and services

14  originating exclusively from Plaintiff. Due to these extensive marketing efforts, Plaintiff's mark

15  has engendered valuable goodwill.

16    Plaintiff has consistently and continuously used the "Data911" mark in commerce since

17  1989. In order to protect the extensive goodwill of Plaintiff's mark, Plaintiff sought and

18  obtained a federal registration for its mark, "DATA911," for computer software in the field of

19  public safety on the Principal Register of the United States Patent and Trademark Office

20  Registration Number 2,546,009, with a registration dated March 12, 2002. On May 24, 2007,

21  this registration became incontestable under 15 U.S.C. §§ 1058 & 1065. An incontestable status

22  upon the Principal Register is conclusive evidence of the validity of the registered mark, of the

23  registrant's ownership of the mark, and the registrant's exclusive right to use the registered mark.

24  Lanham Act, 15 U.S.C. § 1115(b).

25    In or about January, 2007, Plaintiff first became aware that Defendant -- who also

26  designs, manufactures and sells software including mapping, CAD and AVL features to the

27  public safety community -- had changed its trade name from "microDATA GIS" to

28

_____3_____

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION    CASE NO.: C07-02677 BZ

6/22/07 (24601) #273763.1

1  "microDATA 911" and was using this mark to advertise competing products in the public safety

2  sector.  Defendant uses its new trademark and name to market its products to public safety

3  agencies.  Plaintiff's investigation has revealed that in 2006, despite Plaintiff's registered

4  trademark, Defendant poached the "DATA911" mark for use in a second URL,

5  "microDATA911.com."  That website, in actuality, is a portal site that routes internet users

6  searching for "DATA911" to Defendant's primary website ("microdatagis.com").  See,

7  Declaration of David C. Lee ("Lee Decl.") at ¶ 3.

8  **III.    LEGAL ARGUMENT**

9         The Lanham Act (15 U.S.C. § 1051, *et seq.*) constitutes the sole source of federal law

10  governing the infringement of trade and registered marks.  The objectives of trademark law are:

11  "(1) to protect consumers from being misled as to the source of the products, (2) to prevent

12  impairment of the trademark's value to its owner, and (3) to achieve both of the preceding two

13  objectives consistent with free competition."  E-Systems, Inc. v. Monitek, Inc., 720 F.2d 604,

14  607 (9th Cir. 1983).

15        A registered trademark is recognized as a form of business property that vests an owner

16  with a property right to prevent consumer confusion as to who produced certain goods, and to

17  facilitate the distinction of that owner's goods.  Order of Job's Daughters v. Lindeburg & Co.

18  (9th Cir. 1980) 633 F.2d 912, 919.

19        **A.     A Preliminary Injunction Should Issue Prohibiting Defendant From
           Using Plaintiff's Federally Registered Trademark "DATA911"**

20

21        It is indisputable that Plaintiff (or its predecessor) has continuously used the trademark

22  "DATA911" since 1989, and therefore Plaintiff established a common law right to that

23  trademark and name.  See, Declaration of Scott Beisner ("Beisner Decl.") at ¶ 2.  A party who

24  uses a trademark on an unregistered basis has a common law right to that mark.  North Carolina

25  Dairy Foundation, Inc. v. Foremost-McKesson, Inc. (1979) 92 Cal.App.3d 98, 106.  In other

26  words, trademark rights are acquired through use of a trademark, and not simply through

27  registration.  Paul Sachs Originals Co. v. John Sacs and Leo Hirsch, 217 F. Supp. 407, 411

28

1   (1963 C.D. Ca.).  In addition to using this mark for 18 years, Plaintiff <u>federally</u> <u>registered</u> the

2   "DATA911" trademark specifically relating to computer software in the field of public safety on

3   the Principal Register of the United States Patent and Trademark Office Registration Number

4   2,546,009, on March 12, 2002.  Plaintiff's trademark became "incontestable" and exclusive to

5   Plaintiff on May 24, 2007.  Lanham Act, 15 U.S.C. § 1115(b).  Beisner Decl. at ¶ 7.

6   Accordingly, Plaintiff seeks to enjoin Defendant's open and infringing use of "DATA911" in its

7   new trademark and name "microDATA911."

8         To enjoin an infringement on its federal trademark, the moving party must show either:

9   (1) a combination of probable success on the merits and the possibility of irreparable harm, or

10  (2) the existence of serious questions going to the merits and the balance of hardships tipping in

11  its favor.  <u>Owner-Operator Independent Drivers Ass'n, Inc. v. Swift Transportation Co., Inc.,</u>

12  367 F.3d 1108, 1111 (9th Cir. 2004).  Plaintiff can readily establish a combination of probable

13  success on the merits and the possibility of irreparable harm.

14          **1.**      **Defendant's Use Of Plaintiff's "Data911" Creates A**
        **Likelihood Of Confusion**

15

16        The test to determine likelihood of success in trademark infringement claims focuses on

17  the "likelihood of confusion" between the plaintiff's mark and the allegedly infringing mark.

18  <u>Dr. Seuss Enterprises, L.P. v. Penguin Books</u>, 109 F.3d 1394, 1396, n.2 (9th Cir. 1997).  <u>See</u>

19  <u>also</u>, 15 U.S.C. §1125(1)(1)(A) (defining infringement as a use which is "likely to cause

20  confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of

21  the user with the senior user).  "Likelihood of confusion" equates to the inquiry of whether "the

22  similarity of the marks is likely to confuse customers about the source of the products."

23  <u>American Circuit Breaker Corp. v. Oregon Breakers Inc.</u>, 406 F.3d 577, 584 (9th Cir. 2005).

24        The Ninth Circuit has adopted an eight-factor test to analyze the likelihood of confusion

25  in all trademark cases.  <u>Dr. Seuss Enterprises</u>, 109 F.3d at 1404.  The factors include:

26       • strength of the mark;

27       • proximity of the goods or services;

28

1    • similarity of the marks;

2    • evidence of actual confusion;

3    • marketing channels used;

4    • type of goods and the degree of care likely to be exercised by the purchaser;

5    • defendant's intent in selecting the mark; and

6    • likelihood of expansion of the product lines.

7    Dr. Seuss Enterprises, 109 F.3d at 1404, citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341

8    (9th Cir. 1979) (the "Sleekcraft factors"). The list is not exhaustive and other factors may be

9    considered depending on the particular factual circumstances. Id. "Some factors are much more

10   helpful than others, and the relative importance of each individual factor will be case

11   specific...[I]t is often possible to reach a conclusion with respect to likelihood of confusion after

12   considering only a subset of the factors." Thane Intern., Inc. v. Trek Bicycle Corp., 305 F.3d

13   894, 901 (9th Cir. 2002), (internal citation omitted). Applying the Sleekcraft factors to the

14   present facts, the likelihood of confusion between Plaintiff's "DATA911" mark and Defendant's

15   use of "microDATA911" is undeniable.

16                        **(a)    Strength of the Mark**

17        The "strength" of a mark refers to its uniqueness. Sleekcraft, at 349. The stronger (or

18   more unique) a mark, the more likely a consumer will think that a product comes from a

19   particular source. Nutri-System, Inc. v. Con-Stan Indus., Inc. 809 F.2d 601, 605 (9th Cir. 1987).

20   Certain marks are deemed "inherently distinctive" and therefore afforded the greatest amount of

21   protection against infringement. Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1390

22   (9th Cir. 1993). "Fanciful, arbitrary and suggestive marks are considered 'inherently

23   distinctive.'" Id. As aptly summarized by the Ninth Circuit Court in Official Airline Guides:

24              A fanciful mark is a coined word or phrase, such as Kodak,
                invented solely to function as a trademark. See, Eastman Kodak
25              Co. v. Rakow, 739 F.Supp. 116 (W.D.N.Y. 1989). An arbitrary
                mark consists of common words arranged in an arbitrary way that
26              is non-descriptive of any quality of the goods or services. See
                Stork Restaurant, Inc. v. Sahati, 166 F.2d 348, 355 (9th Cir. 1948)
27              ("[The Stork Club] is in no way descriptive of the appellant's night
                club, for in its primary significance it would denote a club for
28

                                    6

1    storks."). A suggestive mark, such as [the trademark] 360° for
2    sneakers, requires imagination to make a connection between the
      mark and an attribute of the product.

3    <u>Official Airline Guides</u>, 6 F.3d at 1390-91.

4    In contrast, weak marks that simply describe the attributes or quality of a good or service

5    are deemed "descriptive," and therefore warrant less protection from infringement (<u>e.g.</u>, "Park

6    'N Fly" was deemed descriptive as applied to airport parking and shuttle bus service, <u>see</u> <u>Park 'N</u>

7    <u>Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U.S. 189,194 (1985)). Nevertheless, even descriptive

8    marks warrant protection if a "secondary meaning" is established.[1]

9    Here, "DATA911" is a coined term as described by the Ninth Circuit because the term

10   has no independent literal meaning standing alone. Put another way, "DATA911" in normal

11   parlance has no immediately recognizable meaning or context (<u>i.e.</u>, is not "descriptive" of the

12   goods sold by Plaintiff"), and therefore is distinctive in nature. While "DATA" and "911" each

13   have independent meanings standing alone, they have been combined by Plaintiff as a

14   trademark; and through this <u>new</u> <u>combination</u> of words Plaintiff has created a unique term that

15   connotes the source of the goods and services it offers. In the context of trademark law, the

16   "validity and distinctiveness of a composite trademark is determined by viewing the trademark

17   as a whole, as it appears in the marketplace" and not by analyzing its component parts or words.

18   <u>Official Airline Guides</u>, 6 F.3d at 1392. At the very minimum, the mark is "suggestive" in that

19   it requires some imagination on the part of a consumer to make a connection between the mark

20   and the attributes of the software products sold by Plaintiff.

21   By this measure, Plaintiff's "DATA911" mark is inherently distinctive and therefore

22   warrants the legal protection against infringement.

23   **(b)    <u>Proximity of Goods</u>**

24   Where the goods of Plaintiff and Defendant appear related, "the danger presented is that

25   the public will mistakenly assume there is an association between the producers of the related

26   _____

27   [1] A mark acquires secondary meaning if customers associate the mark with a particular source.
     <u>Official Airline Guides, Inc. v. Goss</u>, 6 F.3d 1385, 1391 (9th Cir. 1993).

28
                                    7

1  goods, though no such association exists." <u>Sleekcraft</u>, at 350.  Thus, related goods "are more

2  likely than non-related goods to confuse the public as to the producers of the goods." <u>Official</u>

3  <u>Airline Guides</u>, at 1392.

4         Plaintiff develops and markets very sophisticated and comprehensive software that

5  integrates emergency call-handling functions of a dispatcher with mapping technology.

6  Defendant also markets products that are very similar in function to Plaintiff's: products

7  including middleware computer aided dispatch (CAD) software, automatic vehicle location

8  (AVL), and mapping software.  Specifically, Defendant's "xTrakker 9-1-1," "xAVL," and

9  "xCAD" software products essentially mirror the functionality of Hubb's AVL and CAD

10 products.  Both products permit emergency response dispatchers (<u>e.g.</u>, 911 operators), using

11 mapping software, to visually monitor the simultaneous locations of the caller, the scene of the

12 reported incident, and the available field resources (<u>i.e.</u>, police, fire, and medical) in direct

13 proximity to the incident.  <u>See</u>, Beisner Decl. at ¶ 10.  These products therefore assist

14 dispatchers in facilitating and coordinating emergency responses to any given incident.  Both

15 products also permit the computer mapping display to be transmitted to onboard computers in

16 the emergency response vehicles of various field resources allowing the driver to effectively see

17 the same display as the dispatcher.  The commonality between these specific products is

18 therefore undeniable.

19        Moreover, Defendant's target market -- the public safety community (<u>i.e.</u>, law

20 enforcement and health and safety agencies) -- is identical to that of Plaintiff.  While it is clear

21 that each company also markets other types of goods (such as PC hardware or GIS systems),

22 this fact does not diminish the reality that both companies also market competing mapping and

23 call-handling products used for emergency response services.

24        Accordingly, there exists a strong likelihood that the public will be confused about the

25 source of Plaintiff's goods vis-à-vis those of Defendant.

26 ///

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ
6/22/07 (24601) #273763.1

1

          **(c)**    **Similarity of Marks**

2          Courts assess the similarity of marks in terms of "sight, sound, and meaning" in their

3   entirety, and as they appear in the marketplace. Official Airline Guides, at 1392. The similarity

4   of marks are weighed more heavily than any differences between them. Id.

5          There can be little dispute but that Defendant's mark "microDATA911" is virtually

6   identical to Plaintiff's mark "DATA911." The two marks incorporate the exact same term

7   originally coined by Plaintiff ("DATA911"), and therefore are strikingly similar in sound and

8   sight. Lest there be any room for random coincidence, Defendant's "microDATA911" mark

9   purposely capitalizes the letters in "DATA911" to emphasize the similarities to Plaintiff's

10  federal trademark. Lee Decl. at ¶ 4. Defendant's addition of the term "micro" (which obviously

11  is "descriptive" in the context of computers and software) does little, if anything, to distinguish

12  Defendant's mark from Plaintiff's.

13        The intended meaning of Defendant's infringing mark is also identical to the meaning of

14  Plaintiff's mark, "DATA911." Where the words in a mark are the same (as here), the meaning is

15  synonymous. Sleekcraft, at 352. Plaintiff's mark, cultivated through continuous and extensive

16  marketing efforts over the nearly two decades, has garnered a specific meaning within the public

17  safety agency marketplace: hardware and software products designed specifically for public

18  safety agencies. Defendant's infringing mark, on its face, seeks to capitalize on this meaning by

19  associating emergency-tasked public agencies with the compilation and mapping of information.

20        Based on the above, the sight, sound, and meaning of Defendant's mark as compared to

21  Plaintiff's, is without doubt, significantly similar, particularly as the similarities outweigh any

22  minor differences (to the extent any exist). Official Airline Guides, at 1392.

23

          **(d)**    **Marketing Channels Used**

24       "Convergent marketing channels increase the likelihood of confusion." Nutri-System,

25  809 F.2d, at 606. Therefore, where the marketing efforts of Plaintiff and Defendant to solicit

26  consumers are the same, confusion is inevitable.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ

6/22/07 (24601) #273763.1

1    In this case, the universe of potential consumers of Plaintiff and Defendant's goods is

2    extremely confined -- public safety agencies -- and both parties market their respective goods

3    and services to the same population of potential customers.  For years, Plaintiff has dedicated

4    the majority of its marketing efforts to participating in public safety tradeshows and conventions

5    as an exhibitor.  In particular, Plaintiff targets conventions/tradeshows organized by the

6    Association of Public Safety Communications Officials ("APCO") -- an entity that has multiple

7    conventions worldwide and attracts decision-makers involved in public safety communications;

8    the very audience targeted by both Plaintiff and Defendant.  In August 2007, Plaintiff intends to

9    participate in the APCO's International Conference and Exposition in Baltimore, Maryland --

10   one of the biggest public safety expos in the world, and a critical marketing channel for

11   Plaintiff.

12   Not surprisingly, Defendant targets and participates in the same tradeshows and

13   conventions as Plaintiff, including numerous APCO events.  Indeed, in 2007 alone, Defendant

14   and Plaintiff have already or will attend many of the same conventions.  Beisner Decl., at ¶ 12.

15   For instance, Defendant, like Plaintiff, intends to attend and showcase its public safety products

16   at the APCO Baltimore convention in August 2007 -- a fact confirmed on its internet website

17   ("www.microDATA911").  Beisner Decl. at ¶ 13 and Exhibit B.

18   Accordingly, any claim that Defendant is utilizing different marketing channels than

19   Plaintiff is without merit.  Not only is Defendant infringing on Plaintiff's "DATA911" mark, it is

20   marketing its improper trade name to the same population of consumers, in the same venues as

21   Plaintiff.

22   (e)    **Defendant's Intent**

23   This Sleekcraft factor evaluates whether the alleged infringer "knowingly adopts a mark

24   similar to another's."  Official Airline Guides, at 1394.  If so, courts will presume an intent to

25   deceive the public.  Id.

26   Prior to its infringement of Plaintiff's mark, Defendant indisputably was aware of

27   Plaintiff's trademark and products.  Indeed, Defendant's website boasts that it is has been in

28

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ

6/22/07 (24601) #273763.1

1   business for over 15 years (almost exclusively using the trademark and name "microDATA

2   GIS" during that time prior to infringing on Plaintiff's "DATA911" mark). See Lee Decl., at

3   ¶ 6.  Plaintiff has occupied market share in that same industry for an even greater time.

4   Accordingly, any claim that Defendant was unaware of Plaintiff's mark is dubious, as Plaintiff

5   and Defendant have crossed paths numerous times at various tradeshows and conventions.

6   Beisner Decl., at ¶ 12.

7        Defendant's decision to knowingly infringe upon Plaintiff's mark and to incorporate it

8   into its own trademark and name therefore manifests its intent to deceive the public.

9                    **(f)    Likelihood of Expansion of Product Lines**

10       When there is "a strong possibility that either party may expand his business to compete

11  with the other" such a showing "will weigh in favor of finding that the present use is infringing."

12  Sleekcraft, at 354.  Therefore, "when goods are closely related, any expansion is likely to result

13  in direct competition." Id.

14       Defendant, for years, has developed and marketed Geographical Information System

15  ("GIS") products; a system capable of capturing, storing, analyzing, and displaying

16  geographically referenced information (i.e., data identified according to its location).

17  Defendant, however, has now expanded its product lines to include mapping and AVL software

18  that can be integrated with CAD programs to assist emergency-call dispatchers in managing,

19  prioritizing, and addressing emergency calls -- the very industry targeted by Plaintiff.

20  Accordingly, there is little question that Defendant's expansion of its mapping capabilities into

21  the public safety arena, as well as its development of AVL and CAD-based products will result

22  in competition with Plaintiff's own products.

23       To summarize: Defendant and Plaintiff compete: (1) in the same industry; (2) for the

24  same customers; and are (3) developing and marketing the same types of public safety software

25  products.  The two parties are competitors in the public safety marketplace.  Accordingly, the

26  likelihood that "that one or both parties will enter the other's submarket with a competing

27  model" is not only "strong" but a certainty -- it is occurring now.  Id.  Combined with the fact

28

                                        11

1    that Defendant has infringed on Plaintiff's trademark, "DATA911," it is reasonable to foresee

2    that the consuming public may consider "microDATA911" a subsidiary or division of Plaintiff,

3    or otherwise be confused about the source of the goods sold.

4              **2.**          **Defendant's Trademark Infringement, By its Very Nature,**

5                              **Results in the Requisite Harm for a Preliminary Injunction.**

6            Plaintiff can also readily establish its irreparable injury resulting from Defendant's

7    infringement activities. "Trademark infringement by its very nature results in irreparable injury

8    since the attendant loss of goodwill, reputation and business cannot adequately be quantified

9    and the trademark owner cannot adequately be compensated." Pepsico, Inc. v. Tones, 1993

10   U.S. Dist. LEXIS 17588 *9 1993 WESTLAW 455222 (C.D.CA. 1993).  Once a party shows a

11   likelihood of success on the merits of a Lanham Act claim, "irreparable injury may be

12   presumed…This presumption effectively conflates the dual inquiries of this prong into the

13   single question of whether the plaintiff has shown a likelihood of success on the merits."

14   Goto.com, Inc. v. The Walt Disney Co., 202 F.3d 1199, 1205, fn. 4 (9th Cir. 2000) (emphasis

15   added); accord, Cadence Design Sys., Inc. v. Avant! Corp., 125 F.3d 824, 826-27 (9th Cir. 1997)

16   ("a presumption of irreparable injury arises if the plaintiff is able to show a likelihood of success

17   on the merits of [a] copyright infringement claim").

18           Therefore, in the context of trademark disputes, "once a clear and deliberate

19   infringement of an incontestable mark is shown, the owner of the mark is entitled to injunctive

20   relief…" United Council of YMCAs of the United States of America v. The Columbia YMCA,

21   1988 U.S. Dist. LEXIS 16535 *9, 1988 WESTLAW 144985 (D.S.C. 1988) (emphasis supplied).

22   Moreover, "it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive

23   relief is not granted." Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 (9th Cir. 1989).

24           Given Plaintiff's showing of the "likelihood of confusion" resulting from Defendant's

25   infringement, Plaintiff's irreparable harm is presumed, and therefore sufficient for purposes of

26   this motion.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ

6/22/07 (24601) #273763.1

IV.    **CONCLUSION**

Balancing the Sleekcraft factors, the likelihood of confusion resulting from Defendant's infringement of Plaintiff's "DATA911" is without question.  Defendant has taken Plaintiff's incontestable and federally registered mark for its own use in marketing its new trade name "microDATA911."  Any claim that the addition of the term "micro" to "DATA911" substantively changes its character or creates a new and inherently distinctive mark is without merit.  Plaintiff has dedicated almost 20 years to cultivating and marketing its products and services under the "DATA911" mark and has built name brand recognition.  Defendant's calculated infringement of the same mark for use in the same industry, for the purpose of marketing the same or similar goods to the same consumers is specifically intended to capitalize on that goodwill to sell its competing products.  The law holds that Plaintiff's irreparable harm is presumed under these circumstances.

For all of the foregoing reasons, Plaintiff respectfully requests this Court to enter an order (a) granting Plaintiff's motion for a preliminary injunction and granting to Plaintiff such other and further relief as the Court may deem just and proper.  Specifically, Plaintiff seeks a preliminary injunction as follows:

(1)    prohibiting Defendant from using for any purpose the trademark "Data911" which has been continuously used in commerce by Plaintiff and its predecessor in interest since 1989;

(2)    requiring Defendant to change its trade name so that the phrase "Data911" will not be included in such name;

(3)    requiring Defendant to turn over possession and control to Plaintiff of the internet domain name "microdata911.com;"

(4)    requiring Defendant to deliver up to Plaintiff's counsel for destruction any materials that contain imitations of the trade name or that contain marks that are confusingly similar to the Plaintiff's trademark, logo, or advertising, including any that include the term "Data911"; and

1        (5)     ordering expedited discovery to determine the extent and breadth of Defendant's

2  infringing activities.

3  Dated:  June 21, 2007              FITZGERALD ABBOTT & BEARDSLEY LLP

4

5                        By
William E. Adams
Attorneys for Plaintiff HUBB SYSTEMS, LLC

---

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ

1

## PROOF OF SERVICE - F.R.C.P. §5

2    I, the undersigned, declare: I am employed in the County of Alameda, State of

3    California. I am over the age of 18 and not a party to the within action. I am employed by

4    Fitzgerald Abbott & Beardsley, located at 1221 Broadway, 21st Floor, Oakland, CA 94612. I

5    am readily familiar with this firm's business practice of processing of documents for service.

6    I hereby certify that on **June 22, 2007**, a true and correct copy of the following

7    document(s) was filed electronically:

8    **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
     MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
9    FOR PRELIMINARY INJUNCTION**

10    Notice of this filing will be sent by operation of the United States District Court's

11    electronic filing system to all parties indicated on the electronic filing receipt. All other parties

12    listed below will be served by the method indicated:

13    **R. Prescot Jaunich
      DOWNS RACHLIN MARTIN PLLC
14    199 Main Street, P. O. Box 190
      Burlington, Vermont 05402
15    Telephone: 802-863-2375
      Facsimile: 802-862-7512
16    Email: sjaunich@drm.com**

17    **Counsel for Defendant microDATA GIS,
      Inc.**

18

| | |
|---|---|
| X | U.S. Mail - By placing a copy of said document(s) in a sealed envelope with postage thereon fully prepaid, and depositing said envelope with the U.S. Postal Service, following this firm's business practices. |
| | Federal Express - By placing a copy of said document(s) in a sealed pre-paid overnight envelope and deposited with Federal Express, following this firm's business practices. |
| | By Personal Service - I caused such envelope to be delivered by hand on the office(s) of the addressee(s). |

19

20

21

22

23

24    ///

25    ///

26    ///

27    ///

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ
6/22/07 (24601) #273763.1

| | Facsimile - By placing a true copy thereof into a facsimile machine to the fax number stated above, as evidenced by the attached transmission report. |
|---|---|

I declare under the penalty of perjury under laws of the State of California that the foregoing is true and correct. Executed on **June 22, 2007**, at Oakland, California.

Alleen N. Hodgkin

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION   CASE NO.: C07-02677 BZ

6/22/07 (24601) #273763.1