1  MICHAEL M.K. SEBREE #142649
   WILLIAM E. ADAMS #153330
2  DAWN NEWTON #209002
   FITZGERALD ABBOTT & BEARDSLEY LLP
3  1221 Broadway, 21st Floor
   Oakland, California 94612
4  Telephone: (510) 451-3300
   Facsimile: (510) 451-1527
5  Emails: wadams@fablaw.com/dnewton@fablaw.com

6  Attorneys for Plaintiff
   HUBB SYSTEMS, LLC
7

8              UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

10 | HUBB SYSTEMS, LLC,           | Case No.: C07-02677 BZ
11 |        Plaintiff,            | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**
12 |        vs.                   |
13 | MICRODATA GIS, INC.,         | Date: August 1, 2007
   |                              | Time: 10:00 am
14 |        Defendant.            | Courtroom G
   |                              | Magistrate Judge Bernard Zimmerman

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND .............................................................2

III. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE ACTION ............4

    A. Anticipatory Litigation Is Not Entitled To Priority ...........................................................4

    B. Microdata's Vermont Action Is Not Entitled To Priority Because It Was Filed In Anticipation Of Litigation ..................................................................................8

    C. The Court Should Not Dismiss This Action Because California Is The Appropriate Venue For This Infringement Action .........................................................10

    D. The First-To-File Rule Does Not Control In The Context Of A Declaratory Relief Action .................................................................................................11

IV. MICRODATA IS SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA BECAUSE IT HAS SUFFICIENT CONTACTS WITH CALIFORNIA TO REASONABLY ANTICIPATE BEING HAILED INTO COURT IN THIS STATE .............................................................................................................12

V. CONCLUSION .......................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

### Cases

Alltrade, Inc. v. Uniweld Products, Inc.
    946 F.2d 622, 625 (9th Cir. 1991) .................................................................. 5

Barapind v. Reno
    72 F. Supp. 2d 1132, 1145 (E.D. Cal. 1999) .................................................. 4

Best Western Int'l. v. Mahroom
    No. CV-07-827, 2007 U.S. Dist. WL 1302749 (D. Ariz. May 3, 2007) .......... 5

Bobrick Corp. v. American Dispenser Co.
    377 F.2d 334 (9th Cir. 1967) ........................................................................ 14

British Telecommunications v. McDonnell Douglas Corp.
    No. C-93-0677, 1993 U.S. Dist. WL 149860, at *3 (N.D. Cal. May 3, 1993) .... 5

CGI Solutions, LLC v. SailTime
    No. 05-CV-4120, 2005 U.S. Dist. WL 3097533 (S.D.N.Y. Nov. 17, 2005) ......... 7, 12

Core-Vent Corp. v. Nobel Indus. AB
    11 F.3d 1482, 1486 (9th Cir. 1993) .............................................................. 13

Holder Corp. v. The Main Street Distributing, Inc.
    No. 86-1285, 1987 U.S. Dist. WL 14339, at *2 (D. Ariz. January 21, 1987) .... 10

Idaho Potato Comm'n v. Washington Potato Comm'n
    410 F.Supp. 171, 176 (D.C. Idaho 1976) ...................................................... 10

In re Burley
    738 F.2d 981, 988 (9th Cir. 1984) .................................................................. 5

Koch Engineering Co., Inc. v. Monsanto Co.
    621 F. Supp. 1204 (E.D. Mo. 1985) .............................................................. 12

Kransco Mfg, Inc. v. Markwitz
    656 F.2d 1376, (9th Cir. 1981) ..................................................................... 14

Nissan Motor Co., Ltd. v. Nissan Computer Corp.
    89 F.Supp.2d 1154 (C.D.Cal. 2000) ............................................................. 13

Orchid Beosciences, Inc. v. St. Louis University
    198 F.R.D. 670, 673 (S. D. Cal. 2001) ......................................................... 15

Pacesetters Systems, Inc. v. Medtronic, Inc.
  678 F.2d 93, 95 (9th Cir. 1982) .................................................................................. 4, 5

Panavision Int'l L.P. v. Toeppen
  141 F.3d 1316, 1322 (9th Cir. 1998) ............................................................................ 14

Portrait Displays, Inc. v. Speece
  2004 WL 1964506 at *6 (N.D. Cal. September 3, 2004) ............................................. 14

Schmitt v. JD Edwards World Solutions Co.
  2001 WL 590039 (N.D. Cal. May 18, 2001) ................................................................ 12

Texas Instruments, Inc. v. Micron Semiconductor, Inc.
  815 F.Supp. 994 (E.D.Tex. 1993) .............................................................................. 5, 12

Utica Mutual Insurance Co. v. Computer Sciences Corp.
  No. 5:03-CV-0400, 2004 U.S. Dist. WL 180252 (N.D.N.Y. January 23, 2004) ............. 7

Wells Fargo & Co. v. Wells Fargo Express Co.
  556 F.2d 406 at 430, n.24 (9th Cir. 1977) .................................................................. 15

Xoxide, Inc. v. Ford Motor Co.
  448 F. Supp. 2d 1188 (C.D. Ca. 2006) .......................................................................... 6

**Statutes**

15 U.S.C.
  § 1058 ........................................................................................................................ 2, 3
  § 1065 ........................................................................................................................ 2, 3

28 U.S.C.
  § 1331 ............................................................................................................................ 4
  § 1338 ............................................................................................................................ 4
  § 1391(b) ................................................................................................................. 10, 11
  § 2201 .......................................................................................................................... 11

*Lanham Act*, 15 U.S.C.
  § 1115(b) ........................................................................................................................ 2

Moore's
  §57.42[2][b][i][C] ........................................................................................................ 11
  §57.42[3] ..................................................................................................................... 11
  §57.42[7] ....................................................................................................................... 9

## I. INTRODUCTION

This action arises out of the Defendant's infringement on Plaintiff Hubb Systems, LLC's ("Hubb") federally registered and incontestable trademark "DATA911" which Hubb has used since 1989. Defendant microDATA GIS, Inc. ("microDATA") has recently begun marketing its similar products to the same public safety consumers under the infringing trade name "microDATA 911." This action followed.

The Motion to Dismiss filed by microDATA is erroneously predicated on the "first to file" rule. microDATA's action was filed in anticipation of this litigation by Hubb and, therefore, the first to file rule is not applicable and the Motion to Dismiss should be denied. If microDATA truly wanted to preemptively resolve the legal issues between itself and Hubb--as it suggests in its memorandum--it was required to comply with federal venue requirements and bring its action in California.

This is an action for, <u>inter alia</u>, trademark infringement. But for the fact that microDATA is based in Vermont, there is no evidence that Vermont has any meaningful connection with the dispute between the parties. In contrast, the harm accruing from microDATA is centered in the Northern District of California, the center of Hubb's operation and customers.

microDATA's motion to dismiss for lack of personal jurisdiction should also be denied. In the Declaration of Bruce Heinrich, Vice President of microDATA, in support of the Motion to Dismiss, Mr. Heinrich, weakly asserts that "upon information and belief" microDATA has not sold any goods or services into California. Mr. Heinrich says nothing about whether microDATA in fact has attempted to penetrate the California market. He fails to mention that in the first half of 2007 alone, microDATA exhibited during at least three different tradeshows in California, the most recent one a five day conference in June, in San Diego, and sent two of its employees to another California conference. Declaration of Scott Beisner ("Beisner Decl."), ¶12, Docket Number 18, filed June 22, 2007; Declaration of Dawn Newton ("Newton Decl."), ¶¶4-5, Exhibits A, B. Hubb was present at two of these conferences and observed that

microDATA actively solicited clients in California at each. To the extent these contacts are not already sufficient, Hubb is entitled to conduct limited discovery with respect to microDATA's contacts with California.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Hubb designs, manufactures and sells mobile hardware and software systems for public safety under the federal trademark "DATA911."[1] It has done so since 1989. Hubb's products are sold to a category of consumer most needing reliable and authentic products: public safety agencies. Hubb's full product line, sold under the mark, DATA911, includes mobile computing systems, digital video processing units, hand held devices, software programs including computer aided dispatch ("CAD") and automatic vehicle location ("AVL"), and customized systems.

Plaintiff, or its predecessors in interest, has consistently and continuously used the "DATA911" mark in commerce since 1989. In order to protect the extensive goodwill engendered by the mark, on March 12, 2002, Hubb sought and obtained federal registration of its mark, number 2,546,009. On May 24, 2007, this registration became incontestable under 15 U.S.C. §§ 1058 and 1065. An incontestable status upon the Principal Register is <u>conclusive evidence</u> of the validity of the registered mark, of the registrant's <u>ownership</u> of the mark, and the registrant's <u>exclusive</u> right to use the registered mark. <u>See</u>, Lanham Act, 15 U.S.C. § 1115(b).

Upon information and belief, microDATA has been in the business of selling mapping software and Internet Protocol (IP)-based data technologies and related services since 1983. In 1993, microDATA began focusing exclusively on the public safety sector. Until recently, microDATA had marketed its products under the mark "microDATA GIS." As of October 2006, however, microDATA began to incorporate 911 into its marks, using "MICRODATA 911" and "MICRO911DATA." microDATA has not obtained federal registration for any of these marks.

---

[1] Hubb is a California limited liability company with its principal place of business in Alameda, California. microDATA is a Vermont corporation with its principal place of business in St. Johnsbury, Vermont.

2
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS CASE NO.: C07-02677 BZ

7/6/07 (24601) #274906.1

In January 2007, Hubb learned that microDATA had changed its trade name and trademark from "microDATA GIS" to "MICRODATA 911" and was using this trade name and mark to identify its products and services. Hubb also discovered that microDATA had registered the domain name "microdata911.com." This domain name is in fact a portal site that attracts web traffic searching for "DATA911" and reroutes those users to microDATA's primary website, microdatagis.com.

Upon learning this information, Hubb immediately sent a letter, by and through its counsel, to microDATA demanding that microDATA discontinue any and all use of the name, trademark, and URL "microdata911." Hubb also demanded that microDATA assign to Hubb any registration it owned for the URL "microdata911" in the ".com" domain and any other domains. See, Declaration of Bruce Heinrich ("Heinrich Decl."), Docket Number 6, filed June 11, 2007, Letter from Trice to Nohl, Exhibit A.

By letter dated January 18, 2007, microDATA rejected Hubb's demand asserting that it did not believe any similarities between the companies' respective marks were sufficient to trigger a violation of the Lanham Act, among others. See, Heinrich Decl., Letter from Nohl to Trice, Exhibit B. In response to microDATA's refusal to cease using the mark, on April 19, 2007, Hubb filed Combined Declaration of Use and Incontestability Under Sections 8 and 15 (15 U.S.C. §§ 1058 and 1065) for its trademark registration number 2,546,009. On May 24, 2007, the Combined Declaration was accepted by the United State's Patent and Trademark Office. See, Beisner Decl., ¶7.

By letter dated April 27, 2007, Hubb once again demanded that microDATA cease and desist using its "MICRODATA 911" and "MICRO911DATA" marks. See, Heinrich Decl., Letter from Trice to Nohl, Exhibit C. The letter concluded with the following:

> I urge you to reconsider your position in light of these points and advise microDATA to discontinue using "microDATA911" immediately. Hubb is quite serious about this matter and intends to pursue it through legal action if we do not receive your company's agreement to discontinue use of the "microDATA911" mark or any confusingly similar mark (e.g., one including "data" and "911") no later than May 10.

3
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS CASE NO.: C07-02677 BZ

7/6/07 (24601) #274906.1

1  Id. at p. 2.

2  On May 10, 2007, microDATA filed this anticipatory, declaratory judgment action
3  pursuant to the Federal Declaratory Judgment Act. It then responded to Hubb, noting that it had
4  filed suit in Vermont but that it was declining to serve the complaint and would instead seek to
5  discuss settlement.

6  On May 21, 2007, Hubb filed the California action for, among other things, trademark
7  infringement. On June 22, 2007, Hubb filed a Motion for Preliminary Injunction in the
8  California action. Hubb now responds to microDATA's Motion to Dismiss on the basis of lack
9  of subject matter jurisdiction and lack of personal jurisdiction on the ground the California
10 action should be given primacy over the Vermont action and that microDATA has sufficient
11 contact with California that this Court has personal jurisdiction over the Defendant.

## III. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE ACTION

### A. Anticipatory Litigation Is Not Entitled to Priority

mircroDATA cannot avail itself of the first to file rule because its action in Vermont was clearly filed in anticipation of Hubb's action in this Court.[2] Hubb's April 27, 2007, letter allowed microDATA only two alternatives: either agree to cease infringing on Hubb's mark by May 10 or face litigation. On the last day allowed by Hubb's ultimatum, May 10, 2007, microDATA hastily filed an action in its home state in a transparent attempt to localize the dispute in a forum of its choosing and with the greatest convenience to it. The first to file rule does not countenance this kind of forum shopping.

---

[2] Contrary to the suggestion by microDATA's in its Motion to Dismiss, the first to file rule does not implicate this court's subject matter jurisdiction. Clearly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. Rather, the first to file rule is a rule of comity between Federal District Courts to avoid placing an unnecessary burden on the federal judiciary and avoid the embarrassment of conflicting judgments between the various Federal District Courts. Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 96 (9th Cir. 1982); Barapind v. Reno, 72 F. Supp. 2d 1132, 1145 (E.D. Cal. 1999) (Federal comity and judicial economy give rise to rules which allow a District Court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another Federal Court.). Accordingly, Plaintiff's Motion to Dismiss does not implicate whether this Court has subject matter jurisdiction over this matter.

4
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS CASE NO.: C07-02677 BZ

7/6/07 (24601) #274906.1

While a first-filed action would ordinarily be given priority, case law is clear that priority will not be given to the first-filed action where a litigant files a preemptive, and possibly premature, cause of action after receiving notice of a threatened lawsuit. Allowing the suit to proceed in Vermont will encourage the premature filing of a litigation simply in order to obtain a more convenient forum.

The first to file rule is well settled in the Ninth Circuit. The rule provides that when identical suits are pending in two courts, the first action filed generally should proceed to judgment. In re Burley, 738 F.2d 981, 988 (9th Cir. 1984). The rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Pacesetters Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982).

The Ninth Circuit has identified three special circumstances in which a court may decline to apply the first to file rule; when the first-filed suit was filed in bad faith, was anticipatory, or was forum shopping. Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625 (9th Cir. 1991). "The exception for anticipatory suits is founded on a concern that the plaintiff should not be deprived of its traditional choice of forum because a defendant with notice of an impending suit first files a declaratory relief action over the same issue in another forum." British Telecommunications v. McDonnell Douglas Corp., No. C-93-0677, 1993 U.S. Dist. WL 149860, at *3 (N.D. Cal. May 3, 1993), citing Texas Instruments, Inc. v. Micron Semiconductor, Inc., 815 F.Supp. 994 (E.D.Tex. 1993). The court where the first-filed action is pending should be permitted to consider whether the rule will apply under the facts and circumstances of each case. Best Western Int'l. v. Mahroom, No. CV-07-827, 2007 U.S. Dist. WL 1302749 (D. Ariz. May 3, 2007).

microDATA's conduct clearly triggers the anticipatory litigation exception to the first-filed rule. As a preliminary matter, rules of comity governing first-filed controversies dictates that Vermont first pass on whether the exception applies and whether it should retain jurisdiction over microDATA's filing. Based on cases both in the Ninth and Second Circuit, the

facts of this case demonstrate that Hubb's after-filed action in this Court should be allowed to proceed. There is little doubt that microDATA's Vermont action was a preemptive strike against Hubb's threatened legal action.

Courts confronted by similar fact patterns have ruled in favor of permitting the after-filed action to proceed. For example, in Xoxide, Inc. v. Ford Motor Co., 448 F. Supp. 2d 1188 (C.D. Cal. 2006), the District Court permitted an after-filed infringement action to proceed holding that the first-file action had been filed in anticipation of pending litigation. In that case, On January 26, 2006, counsel for Ford Motor Company ("Ford") wrote to Xoxide, Inc. ("Xoxide") asserting that Xoxide was violating Ford's trademark. Id. at 1190. In the January 26, 2006 letter, Ford stated that resolution was possible through settlement by February 9, 2006, or through litigation. Id. Xoxide responded by letter dated February 8, 2006, rejecting Ford's claims but agreed to certain concessions. Id. Ford responded by letter dated March 9, 2006 and reasserted its trademark claims and again invoked the threat of litigation. Id. at 1191. By letter dated March 23, 2006, Xoxide again responded to Ford briefly reaffirming its position denying infringement and asked for two or three business days to consider Ford's position. Id. Thereafter, on April 3, 2006, Xoxide filed suit in California. Ford became of aware of Xoxide's suit on or about April 27, 2006, and on May 11, 2006 Ford sent its final letter informing Xoxide that it intended to file suit on May 11, 2006. On May 16, 2006, Ford filed suit in Michigan, and sought to dismiss the California action. Id. at 1192.

In granting Ford's motion to dismiss, the District Court stated that Xoxide was warned from the outset that failure to comply with Ford's demands would result in litigation. The Court observed that "[g]iven the record,...Ford provided Xoxide with "specific, concrete indications that a suit by Ford was imminent." Id. at 1193. The Court further observed that" Xoxide also fails to acknowledge that Ford is the registered holder of the trademarks at issue...and fails to mention the applicable case law that holds that where the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed even when filed later." Id. (internal punctuation omitted).

Similarly, in CGI Solutions, LLC v. SailTime, No. 05-CV-4120, 2005 U.S. Dist. WL 3097533 (S.D.N.Y. Nov. 17, 2005), the Southern District of New York ruled that Plaintiff's Declaratory Judgment Action was an anticipatory lawsuit and gave priority to the after-filed action in the Western District of Texas. In that case, SailTime sent a letter, dated April 5, 2005, to CGI Solutions demanding that it cease and desist as to certain conduct and threatened that it would pursue "all civil remedies" if CGI Solutions did not cease its actions. Id. at *5. On April 26, 2005, CGI Solutions filed a declaratory judgment action against SailTime in New York. Thereafter, on May 3, 2005, SailTime filed suit against CGI Solutions in Texas. SailTime moved to dismiss the declaratory judgment action, and CGI Solutions moved to enjoin SailTime from pursuing the Texas action. Id. at *8.

In dismissing the declaratory judgment action, the district court observed that SailTime's letter put CGI Solutions on notice of its intent to sue:

> [w]hile SailTime's letter did not outright announce that it would be filing suit by a particular date, it bore greater resemblance to the notice-of-suit letter in *Factors, Etc.* than to the letter in *Employees Insurance*. In *Factors Etc.*, the Second Circuit deemed sufficient a notice-of-suit letter that stated that the opposing party would be 'subject to a lawsuit for injunctive relief, damages and an accounting' unless they discontinued sales of the infringing product ... whereas in *Employers Insurance*, the district court found that a letter asserting merely that the party 'hoped to avoid litigation' did not warn the opposing party of the specter of litigation. . . .

Id. at *3. In considering other circumstances warranting dismissal, the district court observed that the filing of a complaint rather than an order to show cause or preliminary injunction suggested that SailTime was forum shopping rather than seriously seeking to adjudicate its rights. Id. at *4.

In another case, Utica Mutual Insurance Co. v. Computer Sciences Corp., No. 5:03-CV-0400, 2004 U.S. Dist. WL 180252 (N.D.N.Y. January 23, 2004), the district court also ruled that a first-filed declaratory judgment action should be dismissed. In that case, on February 20, 2003, Computer Sciences Corp. ("CSC") sent Utica Mutual a letter demanding payment of an outstanding balance on an account and threatening to pursue all available options, including, but not limited to, possible legal action against Utica to recover the amount. Id. at *2 n.1. Utica

Mutual did not respond to the letters, but instead filed a declaratory judgment action on March 4, 2003, in the Northern District of New York. Id. at *2. On May 6, 2003, two months after the New York action was commenced, CSC commenced suit against Utica in the Western District of Texas. CSC thereafter moved to dismiss the New York action.

In granting the motion to dismiss, the district court considered the anticipatory suit exception to the first-to-file rule. The Court observed that "CSC's letter is a clear indication that it had a firm intention to commence an action against Utica Mutual if it did not pay. As Utica Mutual filed their action against CSC less than two weeks after receiving the letter, without engaging in any further correspondence, it raced to the courthouse first, in anticipation of CSC's threatened lawsuit." Id. at *3.

### B. MicroDATA's Vermont Action Is Not Entitled To Priority Because It Was Filed In Anticipation Of Litigation

In this case, Hubb sent a letter dated January 3, 2007 to microDATA stating its intention to sue. microDATA responded by letter dated January 18th stating that it did not believe its use of the mark caused confusion or was, in any way, a violation of federal or common law. Hubb responded to the January 18th letter in two ways. First, it bolstered the strength of its mark by initiating certain filings with the United States Patent Office. Second, it sent another letter dated April 27, 2007 to microDATA indicating that it rejected microDATA's explanation and reiterating that it "intended to follow through with legal action if it did not receive an agreement from microDATA to discontinue use of the "microDATA911" mark or any confusingly similar mark . . . no later than May 10." Heinrich Decl., Exhibit C.

microDATA apparently took Hubb's threat of litigation seriously. In response to the letter it filed its declaratory judgment action on May 10th, just prior to the expiration of the deadline imposed by Hubb. Tellingly, microDATA displayed no intention of immediately prosecuting the action it had just filed. Instead, it sought to use the filing of the Vermont action as a bargaining chip to force a settlement with Hubb on terms that Hubb had previously rejected.

The same day the matter was filed, microDATA's counsel wrote to persuade Hubb to drop its claims and "coexist" in light of the filed complaint in Vermont:

> microDATA intends to pursue this litigation aggressively. It believes, as do we, that it has a winning case. At the same time, it is prepared to dismiss this case if a mutually satisfactory coexistence agreement can be reached. We will delay serving Hubb for forty-five (45) days from today, to give the parties a chance to try and resolve this dispute.
>
> **Conclusion**
>
> We can resolve this dispute in the courts or through a coexistence agreement. We hope Hubb's next action will be to propose terms of coexistence, but we are prepared to aggressively defend our client to the extent required if Hubb is not prepared to seek a reasonable compromise.

Heinrich Decl., Exhibit E at p. 4.

microDATA filed this declaratory judgment action in anticipation of a pending lawsuit by Hubb. In its May 10th letter to Hubb's counsel, it acknowledged that one of its motivations for filing suit was that, "we have observed that you recently have taken action on behalf of Hubb in the USPTO to shore up Hubb's trademark position, quite possibly in preparation for litigation." Heinrich Decl., Exhibit E at p.4.

Hubb's intention to file suit was clearly set forth in its April 27, 2007 letter, and it filed suit within 30 days after notice to microDATA without further communication. microDATA filed the Vermont action prior to the deadline imposed by Hubb in its April 27th letter, thus effectively jumping the gun by using Hubb's good faith attempts to resolve this matter without resort to litigation against it. "To penalize a litigant who has actively pursued settlement prior to filing by allowing the opposition to label time spent pursuing settlement as unreasonable delay would undermine the policy of promoting good faith settlement efforts." McLaughlin *et al.*, Moore's Federal Practice 3d (2006) (hereafter "Moore's"), Declaratory Judgments, §57.42[7] at 57-123.

Based on the timing of the filing, microDATA's Vermont action was filed so as to beat Hubb to the proverbial punch. microDATA's willingness to delay service for forty-five (45) days, coupled with the suspicious timing of the Vermont Complaint, rather than an order to

show cause or preliminary injunction action, demonstrate that the primary purpose for filing the action in Vermont was in anticipatory forum selection and to gain the upper hand in settlement negotiations, not adjudication of the issues between the parties. This is precisely the type of gamesmanship that the courts do not condone through a blanket application of the first to file rule.

Accordingly, consistent with the practice in the Ninth, Seventh and Second Circuits, this Court should dismiss the Vermont action because it was filed in anticipation of Hubb's litigation.

### C. The Court Should Not Dismiss This Action Because California Is The Appropriate Venue For This Infringement Action

California is the appropriate venue for resolving the infringement issues between the parties. Venue in trademark and unfair competition cases is governed by 28 U.S.C. § 1391(b). Under § 1391(b) venue is proper only in the following judicial districts: (1) where any defendant resides, if all defendants reside in the same state; (2) where a substantial part of the events . . . giving rise to the claim occurred; or (3) where any defendant may be found if the action may not be brought in any other district. 28 U.S.C. § 1391(b).

In trademark infringement cases, a determination of where the claim arises is "where the 'passing off' occurs, i.e., where the customer buys a product from one company in the mistaken belief the product was that of another company." Holder Corp. v. The Main Street Distributing, Inc., No. 86-1285, 1987 U.S. Dist. WL 14339, at *2 (D. Ariz. January 21, 1987); see also, e.g., Idaho Potato Comm'n v. Washington Potato Comm'n, 410 F.Supp. 171, 176 (D.C. Idaho 1976). There is great danger of that occurring in California, given Hubb's strong presence in California and microDATA's multiple visits to California in the past six months alone. There is less danger, and so far no evidence, of that occurring in Vermont, where there is no evidence of trade shows, Hubb has only ever had a single customer, and there are substantially fewer potential customers.

As a Defendant, Hubb is a California corporation with only one identified Vermont customer in its history. There is simply no evidence that a "substantial part of the events giving rise to the claim" occurred in Vermont. Conversely, Hubb has high visibility in Northern California where a substantial number of its clients are located and where the risk of deception and confusion to customers is quite high. Contrary to the Declaration filed in support of microDATA's motion to dismiss the California action, microDATA's own website demonstrates that it is currently targeting the California market where, within the last month, it attended a trade show in San Diego. Newton Decl, ¶5. If microDATA's true intention was to resolve its legal issues with microDATA, rather than forum shop, it would have filed this declaratory judgment action in the Northern District of California, where Hubb resides and where the risk of confusion is great. microDATA cannot seriously claim that Vermont has any substantive connection to the litigation at issue for purposes of venue under § 1391(b).

Accordingly, venue is more appropriate in the Northern District of California where Hubb resides here and where a substantial part of the infringing action is occurring.

### D. The First-to-File Rule Does Not Control In the Context of a Declaratory Relief Action

Finally, microDATA's reliance on the first-to-file rule is misplaced because of the nature of its own claims. Its Vermont action is filed as a Complaint For Declaratory Judgment and arises under the Federal Declaratory Relief Judgment Act, 28 U.S.C. §2201. The relief it seeks is solely in the nature of declaratory relief. Heinrich Decl., Exhibit D.

Numerous courts including this one agree that a declaratory judgment complaint need not be given preference over a subsequently filed suit that incorporates the same claims or is broader. "[A] federal court may defer to another federal court by declining to hear the declaratory judgment action even when the declaratory judgment action was filed first." Moore's, Declaratory Judgments, §57.42[2][b][i][C] at 57-107 to 57-108. Moreover, "[w]hen the case has limited connection to the declaratory relief forum, it is likely that the suit was filed as a preemptive measure." Moore's, Declaratory Judgments, §57.42[3] at 57-118.

11
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS CASE NO.: C07-02677 BZ

7/6/07 (24601) #274906.1

In <u>Schmitt v. JD Edwards World Solutions Co.</u>, 2001 WL 590039 (N.D. Cal. May 18, 2001), this Court cited this premise with approval and went on to reference the holding in <u>Koch Engineering Co., Inc. v. Monsanto Co.</u>, 621 F. Supp. 1204 (E.D. Mo. 1985) in which the court dismissed the first filed complaint for declaratory relief both on the grounds that the action was the product of forum shopping by Koch and that permitting the suit to stand did not meet the purposes of the Declaratory Judgment Act as it prevented the injured party from selecting the forum for the action. <u>Koch Engineering Co., Inc. v. Monsanto Co.</u>, 621 F.Supp. at 1207; <u>see also</u>, <u>Texas Instruments, Inc. v. Micron Semiconductor, Inc.</u>, *supra*, 815 F.Supp. at 998; <u>CGI Solutions, LLC v. SailTime</u>, *supra*, 2005 U.S. Dist. WL 3097533. The <u>Koch</u> court also observed that in the context of a declaratory relief action, where the other action contained more claims, the later filed action had the superior ability to provide "a comprehensive solution to the entire controversy." <u>Id.</u> at 1208. That is also true of the instant action. While the California action will determine microDATA's rights, if any, to continue marketing under "microDATA 911" or any variation thereof, the Vermont action, as it currently stands, will not resolve any of the trademark infringement claims belonging to Hubb.

### IV. MICRODATA IS SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA BECAUSE IT HAS SUFFICIENT CONTACTS WITH CALIFORNIA TO REASONABLY ANTICIPATE BEING HAILED INTO COURT IN THIS STATE

In the first half of 2007 alone, microDATA has already attended three trade shows in California. In addition to the CalNENA Conference (Garden Grove, CA), and APCO Western Regional Conference (Long Beach, CA), which Hubb also attended, microDATA's website advertises that it attended the ESRI International Conference in San Diego, California from June 18th to June 22nd. microDATA's website lists its trade shows and invites browsers to visit it at those trade shows, and its most recent press release advertises two connections with California. First, microDATA sent two employees, including its Vice President of Business Development, to a Palm Springs, California conference to accept an award as "microDATA 911." Second, microDATA promotes its upcoming San Diego conference booth. Newton Decl., ¶5. Between

the trade shows and the award, microDATA has visited California <u>at least four times in the last six months</u> to promote itself as "microDATA 911."

It is hardly coincidence that microDATA began rebranding itself using an infringing version of Hubb's "DATA911" at precisely the same time that it began visiting California, where Hubb's brand and mark are the strongest. Based on the foregoing, it is obvious that microDATA is making a concerted effort to break into the lucrative California market, piggybacking on the success, recognition and goodwill associated with Hubb's incontestable trademark.

Nothing submitted by microDATA contradicts these assertions. In his Declaration in support of microDATA's motion to dismiss, Bruce Heinrich states, rather weakly, that "<u>[U]pon information and belief</u>, microDATA has not sold any goods or services into California." Heinrich Decl., ¶18 (emphasis added). However, the Declaration fails to disavow that microDATA is reaching out to consumers in California in the form of advertising or other promotional endeavors. He does not and cannot deny that microDATA has engaged at least in the contacts Hubb has shown in 2007 alone. Tellingly, Mr. Heinrich's declaration fails to address microDATA's efforts to sell in California and its visits to California entirely.

The contacts that have already been shown between microDATA and California are part of the conduct giving rise to this action. microDATA's sales efforts to the public safety sector in California and elsewhere constitute active infringement on Hubb's incontestable mark. In <u>Nissan Motor Co., Ltd. v. Nissan Computer Corp.</u>, 89 F.Supp.2d 1154 (C.D. Cal. 2000), the court discussed the "effects doctrine" for establishing personal jurisdiction. <u>Id.</u> at 1159. Under the effects doctrine, personal jurisdiction is established where there is a showing of "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered-and which the defendant knows is likely to be suffered-in the forum state." <u>Id.</u>, citing <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11 F.3d 1482, 1486 (9th Cir. 1993). In <u>Nissan Motor Co.</u>, the court found that the effects doctrine test was satisfied where there was evidence that a defendant benefited from exploiting consumer confusion through a confusing similar internet

website address. Id. at 1160. In a related case, personal jurisdiction was established where a defendant had intentionally registered an internet domain name in order to extort money and the effect was injury to plaintiff in the forum state. Panavision Int'l L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998).

Here, while Hubb does not contend that microDATA intended extortion, it does contend that microDATA intended to infringe on a federally registered mark. microDATA was aware of Hubb and its DATA911 mark, which has been used for over a decade in the public safety sector and is well respected, and it deliberately began a campaign of branding its company and goods as microDATA 911. The brunt of the harm from the infringement on a federally registered and incontestable mark will only be borne in California where Hubb is located, and microDATA cannot be ignorant of this.

The cases cited by Defendant regarding attendance at trade shows do nothing to dispel the conclusion that microDATA has established substantial contacts with the state of California and that this action has arisen, at least in part, out of those contacts. Unlike in Kransco Mfg, Inc. v. Markwitz, 656 F.2d 1376, (9th Cir. 1981), Hubb is not attempting to show personal jurisdiction over any individual at microDATA based on attendance at a trade show. Id. at 1379. In addition, Kransco is also distinguishable in that it is trade shows and other sales efforts which give rise to the trademark infringement claim and every trade show exacerbates the infringement in that it dilutes the mark and harms Hubb. Nor is Bobrick Corp. v. American Dispenser Co., 377 F.2d 334 (9th Cir. 1967) on point. There, employees of a manufacturer occupied a booth paid for by the company's its in-state distributor at a single trade show and sales that were made at the trade show for the manufacturer's products were made by and on behalf of the distributor. Id. at 337. This was insufficient to establish personal jurisdiction. Other cases have found that attendance at trade shows weighs in favor of a finding of personal jurisdiction in trademark infringement cases. See, Portrait Displays, Inc. v. Speece, 2004 WL 1964506 at *6 (N.D. Cal. September 3, 2004).

1    To the extent that this Court is unsatisfied with the showing that Hubb has made, Hubb respectfully requests that it be permitted to conduct jurisdictional discovery. Dismissal of this action as microDATA requests is premature. The Ninth Circuit does not require that a plaintiff make a prima facie showing of personal jurisdiction prior to a court allowing a party to conduct jurisdictional discovery. See Orchid Beosciences, Inc. v. St. Louis University, 198 F.R.D. 670, 673 (S. D. Cal. 2001); see also Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406 at 430, n.24 (9th Cir. 1977) [Discovery "'should be granted where pertinent facts bearing on the question of jurisdiction are controverted… or where a more satisfactory showing of the facts is necessary.' [citation omitted.]"].

Hubb has provided undisputed evidence that microDATA has reached out to California three times in its sales and marketing efforts in the last six months alone. Further, it believes that the Declaration submitted by microDATA does not foreclose the actuality that microDATA is actively seeking to market its products in California and therefore subject to personal jurisdiction in this State.

## V.    CONCLUSION

For all the foregoing reasons, Hubb asks this Court to deny microDATA's motion to dismiss pursuant to the first-filed rule and permit this infringement action to go forward. With respect to the exercise of personal jurisdiction over microDATA, to the extent that this Court concludes that Hubb has not met its burden of establishing personal jurisdiction, Hubb respectfully requests that the court permit Hubb to take limited jurisdictional discovery of microDATA with respect to its contacts in California.

Dated: July 6, 2007                                FITZGERALD ABBOTT & BEARDSLEY LLP

By _____
William E. Adams
Attorneys for Plaintiff HUBB SYSTEMS, LLC