Breck E. Milde (Cal. State Bar No. 122437)
bmilde@terra-law.com
Mark W. Good (Cal. State Bar No. 218809)
mgood@terra-law.com
Terra Law LLP
177 Park Avenue, Third Floor
San Jose, CA 95113
Tel: (408) 299-1200
Fax: (408) 998-4895

R. Prescott Jaunich (Cal. State Bar No. 164390)
sjaunich@drm.com
Downs Rachlin Martin PLLC
199 Main Street, P.O. Box 190
Burlington, VT 05402
Tel: 802-863-2375
Fax: 802-862-7512

Counsel for Defendant microDATA GIS, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUBB SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICRODATA GIS, INC.,<br><br>Defendant. | Case No. C07-02677 BZ<br><br>**DEFENDANT MICRODATA GIS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date: August 1, 2007<br>Time: 10:00 a.m.<br>Courtroom: G<br>Magistrate Judge Bernard Zimmerman |

Defendant microDATA GIS, Inc. ("microDATA") submits the following Reply in support of its Motion to Dismiss ("Motion") and in response to Plaintiff Hubb Systems, LLC's ("Hubb's") Opposition ("Opposition") to the Motion (Docket Entry 28). microDATA's Motion should be granted pursuant to the first-to-file rule, and because there is no personal jurisdiction over microDATA in California.

After a hearing on the first to file rule issue on July 9, 2007, the District Court in Vermont did not grant either microDATA's motion to enjoin or Hubb's motion to dismiss, but elected to defer to this Court on whether the case should proceed here or in Vermont. Accordingly, the court

**DEFENDANT MICRODATA GIS, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

1  stayed the action pending the outcome of microDATA's Motion here.  See Request for Judicial
2  Notice, Order, July 9, 2007, microDATA GIS, Inc. v. Hubb Systems, LLC, United States District
3  Court, District of Vermont, C.A. No. 2:07-cv-108 (Docket Entry 18-19).  There is precedent for
4  the first-filing court to defer to the judgment of the second-filing court on the issue of which action
5  should proceed.  In Ward v. Follett Corp., 158 F.R.D. 645, 647-48 (N.D. Cal. 1994), the first-filing
6  court (Illinois) declined to take any action in the case pending the outcome of the motion to
7  dismiss that the plaintiff in the first-filed action had filed in the second action (California).  The
8  second-filing court (this District) granted the first-filer's motion to dismiss and the case returned to
9  the first court.  microDATA respectfully submits that this Court should likewise rule that the
10 action should proceed in the first court.

**A.   This Case Does Not Fall Within The So-Called "Anticipatory Filing" Exception To The First-To-File Rule And The Well-Settled First-To-File Rule Should Be Respected.**

The essential facts of this dispute are:  (1) on January 3, 2007 Hubb sent microDATA a letter accusing it of trademark infringement and threatening to "pursue legal action," but without saying when or where it would institute such action; (2) on January 18 microDATA wrote to Hubb disputing the trademark infringement claims; (3) on April 27, Hubb sent a letter rejecting microDATA's arguments and again threatening to "pursue legal action" – again without saying when or where – if it did not have microDATA's agreement to "cease and desist" by May 10; (4) on May 10 microDATA filed for declaratory judgment in Vermont and immediately sent Hubb a copy of its filing; and (5) on May 21, without further ado, Hubb filed this duplicative action, without informing this Court of the pending Vermont action.[1]  Hubb now challenges microDATA's right to proceed with the Vermont action.  Leaving aside the fact that the so-called "anticipatory filing" exception to the first to file rule has been criticized as a doctrine by courts and commentators, including in several decisions from this very District, it does not apply to this case in any event.

---

[1]  Each party promptly served the other party with its respective suit papers, so there is no issue of service.

This District has consistently demonstrated reluctance to apply the "anticipatory filing" exception. See Google, Inc. v. Am. Blind & Wallpaper Factory, Inc., 2004 U.S. Dist. LEXIS 27601 (N.D. Cal. Apr. 8, 2004) ("Considerations of sound judicial administration discourage anticipatory actions so as to encourage owners of intellectual property to engage in settlement prior to filing suit, but such considerations do not require that a party in continuous apprehension of a lawsuit be precluded from seeking declaratory relief in light of repeated threats"); M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C., 2003 U.S. Dist LEXIS 27257 (N.D. Cal. Oct. 27, 2003) (if the "anticipatory filing" exception were applied broadly, "each time a party sought declaratory judgment in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail"); Royal Queentex Enters., Inc. v. Sara Lee Corp., 2000 U.S. Dist. LEXIS 10139 (N.D. Cal. Mar. 1, 2000) (rejecting the "anticipatory filing" doctrine stating, "Royal Queentex clearly had the right both to reject Sara Lee's offer to discuss settlement and to take an aggressive stance by immediately filing a declaratory judgment action upon receiving the cease and desist letter"); British Telecommunications v. McDonnell Douglas Corp., 1993 U.S. Dist. LEXIS 6345 (N.D. Cal. May 3, 1993) ("while the filing of the [first-filed, declaratory judgment] action one day before the deadline does present the appearance of an anticipatory suit, such a finding does not compel the district court to dispense with the first-to-file rule").

Hubb concedes that "the first to file rule is well settled in the Ninth Circuit." Opposition at 5. Hubb is entirely correct. Hubb then goes on, however, to try to shoehorn the straight-forward and unremarkable pre-suit facts of this case into the mold of the extraordinary circumstances that have been found, on rare occasion, to constitute an exception to the first-to-file rule: bad faith, anticipatory filing, or forum shopping.[2] None of these extraordinary circumstances apply. Hubb relies principally on three cases – Xoxide, Inc. v. Ford Motor Co., 448 F.Supp.2d 1188 (C.D. Cal. 2006); CGI Solutions, LLC v. SailTime, 2005 U.S. Dist. WL 3097533 (S.D.N.Y. Nov. 17, 2005); Utica Mut. Ins. Co. v. Computer Sciences Corp., 2004 U.S. Dist. WL 180252 (N.D.N.Y. Jan. 23,

---

[2] The latter two considerations are frequently considered the same. See M.D. Beauty, supra, at *8.

2004) – only one of which is from a court within the Ninth Circuit and none of which is from this District. Opposition at 6-8. Each of these cases is factually very different from the case at bar.

In the <u>Xoxide</u> case, Ford Motor Company accused Xoxide of trademark infringement. Over the course of three months, the parties exchanged several letters over Ford's accusations, Xoxide's denials, and possible settlement. After asking Ford for additional time to respond to Ford's last letter, Xoxide *secretly* filed suit. Four days after it filed suit, Xoxide wrote to Ford denying that its business name ("MustangTuning") and Internet domain name ("mustangtuning.com") infringed on Ford's trademarks. In its letter to Ford, Xoxide did not mention that it had already filed suit. When Ford found out about Xoxide's secret filing, it filed suit in Michigan and sought dismissal of Xoxide's suit in California. In granting Ford's motion to dismiss, the court found that Xoxide had acted in bad faith by surreptitiously filing suit while continuing to delay Ford from filing suit by pretending to engage in "settlement discussions." 448 F.Supp.2d at 1194.

The facts of the instant case are nothing like those of <u>Xoxide</u>. microDATA did not attempt to hide its filing while continuing to negotiate with Hubb. On the contrary. Given the time that had elapsed between microDATA's January 18 response to Hubb's first cease and desist letter, and Hubb's next communication (April 27), by May 10 microDATA had a legitimate concern about Hubb possibly again taking a long time to respond to microDATA's decision, as stated in microDATA's May 10 cover letter, not to acquiesce to Hubb's cease and desist demand. Rather than being an anticipatory filing, therefore, microDATA's declaratory judgment action, about which it made no secret, was intended to push the matter forward toward resolution and to avoid having Hubb continue to hang the potential threat of litigation over microDATA for an indefinite time.

Notably, Hubb's discussion of <u>Xoxide</u> in its Opposition (p. 6) fails to point out that it was Xoxide's secretive and misleading behavior toward Ford that led the court to apply the "anticipatory filing" exception.

In <u>CGI Solutions</u>, there was also bad faith conduct by the first-filer, CGI. During negotiations with SailTime Licensing Group over a possible deal whereby CGI would become a

SailTime licensee, CGI had signed an agreement providing, inter alia, that any litigation between the parties would be brought in Texas. When negotiations over the deal broke down, and it appeared to SailTime that CGI had started its own business using SailTime's trade secrets, CGI jumped the gun by abruptly filing a declaratory judgment action in New York. SailTime then filed an action in Texas and sought dismissal of CGI's first-filed action. In granting SailTime's motion, the court was strongly influenced by the fact that CGI had signed a document agreeing to a Texas forum for all litigation. 2005 WL 3097533 at *8. Again, the facts of the instant case are nothing like those of CGI. And, again, Hubb's discussion of CGI in its Opposition (p. 7) fails to mention the consent-to-forum issue that played a critical role in the outcome of that case.

Finally, in Utica Mutual, the competing lawsuits arose out of the breakdown of a contractual relationship. Utica Mutual had licensed software from Computer Sciences Corp. (CSC). The license agreement contained a Texas choice-of-law provision. After using CSC's software for a couple of years, Utica Mutual became dissatisfied with it, complained to CSC, and discontinued making license payments to CSC. In a subsequent exchange of letters, CSC threatened to sue but also offered a settlement proposal. Before the deadline given by CSC to accept its settlement offer, Utica Mutual filed suit in New York. CSC later filed suit in Texas and moved to dismiss the New York action. Important to the court's decision to grant CSC's motion was the fact that Utica Mutual had agreed to be governed by Texas law, and this factor is mentioned and discussed three times in the decision. 2004 WL 180252 at *2, *4 (n.2), *5. Also important was the fact that Utica Mutual had "raced" to the courthouse immediately upon receiving CSC's threat letter. Again, the facts of the instant case are nothing like those of Utica Mutual. In the instant case there is no choice-of-law provision, and microDATA did not run to the courthouse upon receiving Hubb's first "cease-and-desist" letter (Jan. 3) even though that letter did contain a threat to sue microDATA. And, again, Hubb's discussion of Utica Mutual in its Opposition (pp. 7-8) fails to mention that the choice-of-law agreement played a critical role in the outcome of that case.

By contrast, this Court's decisions in Google, 2004 U.S. Dist. LEXIS 27601 (N.D. Cal. Apr. 8, 2004), M.D. Beauty, 2003 U.S. Dist. LEXIS 27257 (N.D. Cal. Oct. 27, 2003), and Ward v.

Follett Corp., 158 F.R.D. 645 (N.D. Cal. 1994), all applying the first-to-file rule, are directly on point. Even under the remarkable facts of Sony Computer Ent. Amer., Inc. v. Amer. Med. Response, Inc., 2007 U.S. Dist. LEXIS 24294 (N.D. Cal. March 13, 2007), this Court did not find that the first-filer's declaratory judgment action was "anticipatory." In that case, before the competing lawsuits had been filed, the trademark owner, American Medical Response ("American"), had gone so far as to send the alleged infringer, Sony, a copy of a draft trademark infringement complaint that it intended to file if negotiations were not fruitful. In response, Sony promptly filed a declaratory judgment action in this Court. American then filed its own action in Texas and sought to dismiss Sony's action here under an exception to the first to file rule. This Court found that the facts did not justify a departure from the first to file rule and denied American's motion to dismiss, *even where American had drafted a complaint, sent a copy of it to Sony during negotiations, and threatened to file it, before Sony filed its declaratory judgment action*. Clearly, Sony knew that it was imminently about to be sued and raced to the courthouse to file a preemptive action. Yet this Court did not dismiss Sony's action. If the Sony scenario does not warrant a departure from the first to file rule, then certainly the more run of the mill facts of this case, in which Hubb expressed to microDATA a threat to file suit but no specific and concrete indication of when and where it might file, do not warrant a departure.[3]

Hubb's failure to inform this Court, when filing this action, of the already-pending action in Vermont, as it was required to do by Civil Local Rule 3-13, and its failure to inform the Court, in discussing the Xoxide, CGI, and Utica cases, of the critical factual specifics that led to the exceptional outcomes in those cases, suggest that it is Hubb, rather than microDATA, that is not playing fairly here.

In short, Hubb is trying to eat its cake and have it, too. Hubb wants the ability to persistently threaten microDATA with suit (as it did), but not actually sue, and yet retain the

---

[3] Hubb's argument, on p. 11 of its Opposition, that the first-to-file rule does not apply when the first-filed action is a declaratory judgment action, is patently false. This Court's decisions in Sony, Google, M.D. Beauty, Royal Queentex, Ward, and British Telecommunications, *all* involved declaratory judgment actions.

**DEFENDANT MICRODATA GIS, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

unilateral right to decide where any litigation between it and microDATA will be if suit is commenced by either party. Hubb threatened microDATA with legal action, but when such action was in fact commenced by microDATA more than four months after Hubb's initial threat letter, Hubb wants to have that action dismissed so that it can sue microDATA in its preferred forum. That is not fair. Hubb accuses microDATA of forum-shopping, but it is Hubb that is engaging in forum-shopping.

**B.  There Is No Personal Jurisdiction Over microDATA In California, Whereas There Is Personal Jurisdiction Over Both Parties In Vermont.**

microDATA's Motion explained at length its almost complete lack of contacts with California (no offices, no personnel, no registration to do business, no bank accounts, no phone numbers, etc.), and cited Ninth Circuit case law holding that incidental contacts with a state, such as attendance at occasional trade shows (primarily aimed at *national*, not California, audiences), do not confer personal jurisdiction. Motion at 13-14. microDATA has made no sales in California. See Supplemental Declaration of Bruce Heinrich, submitted herewith, at ¶ 3. Hubb's response is to argue that microDATA has attended several trade shows in California, Opposition at 12-13, although it does not contradict microDATA's assertion that it has made no sales in California. Cf. Advideo, Inc. v. Kimel Broadcast Group, Inc., 727 F. Supp. 1337 (N.D. Cal. 1989) (personal jurisdiction established in California over Vermont company; party's mere signing of contract with out-of-state company does not confer jurisdiction over out-of-state company in first party's home state, but contract provided for California governing law; therefore, out-of-state company implicitly submitted itself to jurisdiction in California).

By contrast, in its Opposition (p. 10) and in its motion to dismiss filed in the Vermont action, Hubb has admitted to having a customer in Vermont and doing business there.[4] microDATA believes that a very recent transaction between Hubb and the Barre City Police

---

[4]  See Request for Judicial Notice, Defendant Hubb Systems, LLC's July 2, 2007 Motion to Dismiss, microDATA GIS, Inc. v. Hubb Systems, LLC, United States District Court, District of Vermont, C.A. No. 2:07-cv-108 (Docket Entry 10). At page 15 of its motion, Hubb admits to having made at least one sale in Vermont.

**DEFENDANT MICRODATA GIS, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Department constitutes a second Hubb customer in Vermont. See Declaration of Nathan G. Wilcox, ¶ 2. Thus, even if there is a question about the *possibility* of personal jurisdiction over microDATA in California, *there is no real question about personal jurisdiction over Hubb in Vermont*. Ben & Jerry's Homemade, Inc. v. Comanor, C.A. No. 1:02-cv-150 (D. Vt. Sept. 26, 2002) (in declaratory judgment action brought in Vermont for declaration of non-infringement of defendant's trademark, there was jurisdiction over out-of-state defendant); Tom and Sally's Handmade Chocolates, Inc. v. Gasworks, Inc., 977 F. Supp 297 (D. Vt. 1997) (distribution of four catalogs into Vermont, combined with two customers in Vermont, sufficient to confer jurisdiction over out-of-state corporation); Dall v. Kaylor, 163 274 (1995) (single sale in Vermont was sufficient to confer jurisdiction over non-resident defendant that advertised nationally); Hedges v. Western Auto Supply Co., Inc., 161 Vt. 614, 614-615 (1994) (upholding exercise of personal jurisdiction where non-resident defendant "purposely availed" itself of Vermont market by selling its product to a well-known national distributor that does business in Vermont).

Personal jurisdiction over microDATA in California, based on attendance at a few trade shows, is not tenable. Hubb responds by requesting that it be allowed to do jurisdictional discovery. Opposition at 15. Rather than getting bogged down in a jurisdictional sideshow, i.e., collateral discovery to determine whether there is even jurisdiction over microDATA in California – only to have this case end up in Vermont where it was filed first – this Court should simply follow the first to file rule and allow the case to proceed in Vermont, where there is no real question concerning personal jurisdiction over Hubb. microDATA, therefore, firmly believes that this Court should dismiss this action because its minimal, incidental contacts with California do not confer personal jurisdiction over it by this Court.

**C.   Venue Is Proper in Vermont, Where The First Action Was Filed. Therefore, Considerations Of Whether Venue May Lie In California Are Irrelevant. Furthermore, Venue Is Not Superior In California.**

Hubb argues that California is the appropriate venue for resolving this dispute. Opposition at 10. Notably, Hubb does not state that venue in California is *superior* to venue in Vermont, because it cannot. Indeed, venue may not lie in California at all. If, as microDATA contends, there is no personal jurisdiction over microDATA in California, then venue in California does not

1  exist.

2  But microDATA disputes Hubb's bald assertion that venue in California is "appropriate."
3  Assuming for the moment that there is personal jurisdiction over microDATA in California merely
4  because it attended national tradeshows here, microDATA concedes that venue *might* lie in
5  California. Hubb's argument for venue being appropriate in California is based on the assertion
6  that, since microDATA attended trade shows in California, the trademark infringement that it
7  complains of "happened" in California. This may or may not be true. But Hubb does not explain
8  why venue in California is *better* than venue in Vermont, the venue chosen by microDATA, the
9  first-filer.

10  microDATA, the alleged infringer, is located in Vermont (where Hubb admittedly does
11  business) and, to the extent that microDATA has allegedly infringed on Hubb's trademark, that
12  alleged infringement has clearly occurred in Vermont. Hubb could have sued microDATA in
13  Vermont, and there would be no dispute over venue. There can be no serious argument but that a
14  "substantial part of the events giving rise to the claim occurred" in Vermont. 28 U.S.C. § 1391(b).
15  Thus, while venue may exist in other locations, it clearly exists in Vermont. See Microbrightfield,
16  Inc. v. Boehringer, C. A. No. 1:05-cv-244 (Ruling on Defendant's Motion to Dismiss for Improper
17  Venue), 2006 U.S. Dist. LEXIS 17095 (D. Vt. Feb. 8, 2006) (denying defendant's request to
18  transfer venue); Advideo, Inc. v. Kimel Broadcast Group, Inc., 727 F. Supp. 1337 (N.D. Cal. 1989)
19  (denying request to transfer venue; at early stage, court cannot fully assess balance of conveniences
20  in alternative venues; "normally, however, plaintiff is entitled to choice of forum and defendant
21  bears the burden of justifying a transfer"). Because microDATA was the first plaintiff in these
22  competing lawsuits, its choice of forum (Vermont) should be honored.

23  Hubb's unsupported statement, that there is a "great danger of [the alleged passing off]
24  occurring in California" (Opposition at 10) is specious and legally meaningless, and it offers no
25  comparison to other locations where there may also be "danger." As noted above, in attending
26  trade shows in California, microDATA (and Hubb) are presenting to a national audience, not
27  specifically a California audience. The meaninglessness of Hubb's vague statement is especially
28  true since microDATA has made no sales in California and Hubb has produced no evidence of a

single instance of actual consumer confusion, in California or elsewhere, in the nine (9) years that microDATA has been using the allegedly infringing mark in one form or another. <u>See</u> Declaration (first) of Bruce Heinrich submitted with microDATA's Motion (June 11, 2007).

Once venue is properly established in one court, as it is in Vermont, venue can be shifted to another court only pursuant to an analysis of the several criteria of 28 U.S.C. § 1404 (location of the parties, location of witnesses, convenience, relative burdens, etc.). Hubb makes absolutely no attempt to apply these factors to the specific facts of this case and explain why venue in California is significantly more compelling than venue in Vermont, where microDATA is located and where an action is already pending. The fact that the Vermont action is a declaratory judgment action does not change the venue analysis. Venue is proper in Vermont, and was laid first. The fact that it *might* also lie in California does not justify maintaining this second-filed action in favor of the first-filed one.[5]

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in microDATA's Motion to Dismiss, microDATA respectfully requests that the Court dismiss this action, allowing the first-filed Vermont action to go forward.

Dated: July 12, 2007                                    TERRA LAW LLP


By: ____/s/ Breck E. Milde_____
Breck E. Milde (Cal. State Bar No. 122437)
Attorneys for microDATA GIS, Inc.

---

[5] In the event that the Court determines that this case is an exception to the first-filed rule, such that this action should not be dismissed but should proceed, microDATA respectfully reserves the right to more fully brief the personal jurisdiction issue and the issues of balance of convenience and whether venue is more properly laid in Vermont than California.