Breck E. Milde  (Cal. State Bar No. 122437)
bmilde@terra-law.com
Mark W. Good (Cal. State Bar No. 218809)
mgood@terra-law.com
Terra Law LLP
177 Park Avenue, Third Floor
San Jose, CA 95113
Tel: (408) 299-1200
Fax: (408) 998-4895

R. Prescott Jaunich (Cal. State Bar No. 164390)
sjaunich@drm.com
Downs Rachlin Martin PLLC
199 Main Street, P.O. Box 190
Burlington, VT  05402
Tel: 802-863-2375
Fax: 802-862-7512

Counsel for Defendant microDATA GIS, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUBB SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>microDATA GIS, INC.,<br><br>Defendant. | Case No. C07-02677 BZ<br><br>**DECLARATION OF MARK GOOD IN SUPPORT OF DEFENDANT microDATA GIS, INC.'S OPPOSITION TO PLAINTIFF'S EX PARTE MOTION TO RESCHEDULE PRELIMINARY INJUNCTION HEARING DATE**<br><br>Date:   August 1, 2007<br>Time:   10:00 a.m.<br>Courtroom:  G<br>Magistrate Judge Bernard Zimmerman |

I, Mark Good, declare as follows:

1.    I am an associate of Terra Law LLP, attorneys for defendant microDATA GIS, Inc. ("microDATA") in the above captioned matter.  I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently testify thereto.

2.    Plaintiff Hubb Systems, LLC knew of defendant microDATA GIS, Inc.'s use of the mark "microDATA 911" at least as early as January 3, 2007, based on the fact that counsel for

1149832                                                                                        C07-02677 BZ

DECLARATION OF MARK GOOD IN SUPPORT OF OPPOSITION TO PLAINTIFF'S EX PARTE MOTION TO
RESCHEDULE PRELIMINARY INJUNCTION HEARING DATE

1  plaintiff sent defendant microDATA a "cease and desist" letter on that date regarding

2  microDATA's use of the mark.  A true and accurate copy of that letter is attached hereto as

3  Exhibit A.  (See also Plaintiff's Memorandum of Points and Authorities in Support of Motion for

4  Preliminary Injunction, p. 3, line 25.)

5       3.     On July 9, 2006, I set the greeting for my voice mail with the following message:

6            "Hi this is Mark Good, I am currently out of the office in trial out of
             County and will be out of the office until about July 23rd.  If you
7            need immediate assistance during my absence please contact my
             secretary Eileen Torrez at Terra Law's San Jose office at (408) 299-
8            1200."

9       4.     On July 9, 2007, I then left for what was expected to be a two week trial in Contra

10  Costa County.

11       5.     The case set for trial settled, and when I returned to my office on July 12, 2007, I

12  was surprised to hear a message from William Adams requesting a stipulation to reschedule the

13  hearing date for Hubb's Motion for Preliminary Injunction, considering the fact that my outgoing

14  message stated that I would be gone until July 23rd.  I also found out that on July 11, 2007, Hubb

15  had filed the instant motion to reschedule.

16       6.     On July 12, 2007, I re-checked my voice mail message by calling my office line

17  from a different phone, and confirmed that the outgoing message was the same as recited above.

18       7.     I spoke with both my secretary Eileen Torrez and Breck Milde regarding Mr.

19  Adams call.  Both Ms. Torrez and Mr. Milde advised me that Mr. Adams had not contacted them,

20  nor had he left any messages for them.

21       8.     A true and accurate copy of microDATA GIS, Inc.'s Reply in Support of Its Motion

22  to Dismiss is attached hereto as Exhibit B.

23       I declare under penalty of perjury under the laws of the State of California and the United

24  States of America that the foregoing is true and correct and that this declaration is executed on July

25  12, 2007 at San Jose, California.

26                           /s/ Mark W. Good
                           Mark W. Good

27

28

1149832                                         C07-02677 BZ

DECLARATION OF MARK GOOD IN SUPPORT OF OPPOSITION TO PLAINTIFF'S EX PARTE MOTION TO
RESCHEDULE PRELIMINARY INJUNCTION HEARING DATE

# EXHIBIT   A



**FITZGERALD ABBOTT & BEARDSLEY** LLP
ATTORNEYS AT LAW

1221 Broadway, 21st Floor, Oakland, CA 94612
reply to: P.O. Box 12867 Oakland, CA 94604-2867

tel 510.451.3300
fax 510.451.1527
www.fablaw.com

Mary Beth Trice
mtrice@fablaw.com

January 3, 2007

<u>VIA FEDERAL EXPRESS</u>

President
microData GIS, Inc.
1016 US Route 5
St. Johnsbury, VT  05819

     Re:     Trade Name and Trademark Infringement

Dear Sir or Madam:

We represent Hubb Systems, LLC ("Hubb") of Alameda, California.  For over twenty years, Hubb has been in the business of providing mobile computing solutions for public safety agencies and has used the trade name and trademark "DATA911" in connection with this business and the goods it sells since at least 1989.  Hubb owns a federal trademark registration for "DATA911" in Class 9 on the Principal Register of the United States Patent and Trademark Office, Registration Number 2,546,009 (please see enclosed copy of U.S. Registration Certificate Number 2,546,009).

Your company ("microData") recently changed its trade name and trademark from "microData GIS" to "microDATA 911" and is using this mark to identify computer goods and services very similar to those sold by Hubb under its federally registered trademark.  In connection with this re-branding, microData has also registered and is using "microdata911.com" as the URL for its Internet website.

This conduct by microData infringes the prior rights of Hubb in its trade name and federally registered trademark.  Hubb strenuously objects to this infringement and demands that microData immediately discontinue any and all use of the name, trademark and URL "microDATA 911".  Additionally, Hubb demands that microData assign to Hubb any registrations it owns for the URL "microdata911" in the ".com" domain and any other domains.

Please contact the undersigned as soon as possible to confirm that you will comply with these demands.  If you do not respond by January 20 or if you refuse to cooperate with Hubb by taking all steps needed to rectify this infringement, Hubb will pursue legal action as needed to protect its rights.

President                          Page 2                          January 3, 2007

   This letter is sent without prejudice to any rights, claims or remedies that Hubb may have, all of which are expressly reserved.

                              Very truly yours,

                              FITZGERALD ABBOTT & BEARDSLEY LLP

                         By   *Mary Beth Trice*

                              Mary Beth Trice

MBT:svr

Enclosure

# EXHIBIT   B

1  Breck E. Milde  (Cal. State Bar No. 122437)
   bmilde@terra-law.com
2  Mark W. Good (Cal. State Bar No. 218809)
   mgood@terra-law.com
3  Terra Law LLP
   177 Park Avenue, Third Floor
4  San Jose, CA 95113
   Tel: (408) 299-1200
5  Fax: (408) 998-4895

6  R. Prescott Jaunich (Cal. State Bar No. 164390)
   sjaunich@drm.com
7  Downs Rachlin Martin PLLC
   199 Main Street, P.O. Box 190
8  Burlington, VT  05402
   Tel: 802-863-2375
9  Fax: 802-862-7512

10  Counsel for Defendant microDATA GIS, Inc.

11

12                    UNITED STATES DISTRICT COURT

13            FOR THE NORTHERN DISTRICT OF CALIFORNIA

14  HUBB SYSTEMS, LLC,                )  Case No. C07-02677 BZ
                                      )
15            Plaintiff,              )  **DEFENDANT MICRODATA GIS, INC.'S**
                                      )  **REPLY IN SUPPORT OF ITS MOTION TO**
16       v.                           )  **DISMISS**
                                      )
17  MICRODATA GIS, INC.,              )  Date:   August 1, 2007
                                      )  Time:   10:00 a.m.
18            Defendant.              )  Courtroom:  G
                                      )  Magistrate Judge Bernard Zimmerman
19  _____)

20

21       Defendant microDATA GIS, Inc. ("microDATA") submits the following Reply in support

22  of its Motion to Dismiss ("Motion") and in response to Plaintiff Hubb Systems, LLC's ("Hubb's")

23  Opposition ("Opposition") to the Motion (Docket Entry 28).  microDATA's Motion should be

24  granted pursuant to the first-to-file rule, and because there is no personal jurisdiction over

25  microDATA in California.

26       After a hearing on the first to file rule issue on July 9, 2007, the District Court in Vermont

27  did not grant either microDATA's motion to enjoin or Hubb's motion to dismiss, but elected to

28  defer to this Court on whether the case should proceed here or in Vermont.  Accordingly, the court

**DEFENDANT MICRODATA GIS, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

1  stayed the action pending the outcome of microDATA's Motion here.  See Request for Judicial

2  Notice, Order, July 9, 2007, microDATA GIS, Inc. v. Hubb Systems, LLC, United States District

3  Court, District of Vermont, C.A. No. 2:07-cv-108 (Docket Entry 18-19).  There is precedent for

4  the first-filing court to defer to the judgment of the second-filing court on the issue of which action

5  should proceed.  In Ward v. Follett Corp., 158 F.R.D. 645, 647-48 (N.D. Cal. 1994), the first-filing

6  court (Illinois) declined to take any action in the case pending the outcome of the motion to

7  dismiss that the plaintiff in the first-filed action had filed in the second action (California).  The

8  second-filing court (this District) granted the first-filer's motion to dismiss and the case returned to

9  the first court.  microDATA respectfully submits that this Court should likewise rule that the

10  action should proceed in the first court.

11  **A.    This Case Does Not Fall Within The So-Called "Anticipatory Filing"
         Exception To The First-To-File Rule And The Well-Settled First-To-File Rule**

12  **Should Be Respected.**

13          The essential facts of this dispute are:  (1) on January 3, 2007 Hubb sent microDATA a

14  letter accusing it of trademark infringement and threatening to "pursue legal action," but without

15  saying when or where it would institute such action; (2) on January 18 microDATA wrote to Hubb

16  disputing the trademark infringement claims; (3) on April 27, Hubb sent a letter rejecting

17  microDATA's arguments and again threatening to "pursue legal action" – again without saying

18  when or where – if it did not have microDATA's agreement to "cease and desist" by May 10; (4)

19  on May 10 microDATA filed for declaratory judgment in Vermont and immediately sent Hubb a

20  copy of its filing; and (5) on May 21, without further ado, Hubb filed this duplicative action,

21  without informing this Court of the pending Vermont action.[1]  Hubb now challenges

22  microDATA's right to proceed with the Vermont action.  Leaving aside the fact that the so-called

23  "anticipatory filing" exception to the first to file rule has been criticized as a doctrine by courts and

24  commentators, including in several decisions from this very District, it does not apply to this case

25  in any event.

26

27  _____

        [1]    Each party promptly served the other party with its respective suit papers, so there is no

28  issue of service.

**DEFENDANT MICRODATA GIS, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

1  This District has consistently demonstrated reluctance to apply the "anticipatory filing"

2  exception.  See Google, Inc. v. Am. Blind & Wallpaper Factory, Inc., 2004 U.S. Dist. LEXIS

3  27601 (N.D. Cal. Apr. 8, 2004) ("Considerations of sound judicial administration discourage

4  anticipatory actions so as to encourage owners of intellectual property to engage in settlement prior

5  to filing suit, but such considerations do not require that a party in continuous apprehension of a

6  lawsuit be precluded from seeking declaratory relief in light of repeated threats"); M.D. Beauty,

7  Inc. v. Dennis F. Gross, M.D., P.C., 2003 U.S. Dist LEXIS 27257 (N.D. Cal. Oct. 27, 2003) (if the

8  "anticipatory filing" exception were applied broadly, "each time a party sought declaratory

9  judgment in one forum, a defendant filing a second suit in a forum more favorable to defendant

10  could always prevail"); Royal Queentex Enters., Inc. v. Sara Lee Corp., 2000 U.S. Dist. LEXIS

11  10139 (N.D. Cal. Mar. 1, 2000) (rejecting the "anticipatory filing" doctrine stating, "Royal

12  Queentex clearly had the right both to reject Sara Lee's offer to discuss settlement and to take an

13  aggressive stance by immediately filing a declaratory judgment action upon receiving the cease and

14  desist letter"); British Telecommunications v. McDonnell Douglas Corp., 1993 U.S. Dist. LEXIS

15  6345 (N.D. Cal. May 3, 1993) ("while the filing of the [first-filed, declaratory judgment] action

16  one day before the deadline does present the appearance of an anticipatory suit, such a finding does

17  not compel the district court to dispense with the first-to-file rule").

18  Hubb concedes that "the first to file rule is well settled in the Ninth Circuit."  Opposition at

19  5.  Hubb is entirely correct.  Hubb then goes on, however, to try to shoehorn the straight-forward

20  and unremarkable pre-suit facts of this case into the mold of the extraordinary circumstances that

21  have been found, on rare occasion, to constitute an exception to the first-to-file rule:  bad faith,

22  anticipatory filing, or forum shopping.[2]  None of these extraordinary circumstances apply.  Hubb

23  relies principally on three cases – Xoxide, Inc. v. Ford Motor Co., 448 F.Supp.2d 1188 (C.D. Cal.

24  2006); CGI Solutions, LLC v. SailTime, 2005 U.S. Dist. WL 3097533 (S.D.N.Y. Nov. 17, 2005);

25  Utica Mut. Ins. Co. v. Computer Sciences Corp., 2004 U.S. Dist. WL 180252 (N.D.N.Y. Jan. 23,

27  _____

[2]  The latter two considerations are frequently considered the same.  See M.D. Beauty, supra, at *8.

1   2004) – only one of which is from a court within the Ninth Circuit and none of which is from this

2   District.  Opposition at 6-8.  Each of these cases is factually very different from the case at bar.

3            In the <u>Xoxide</u> case, Ford Motor Company accused Xoxide of trademark infringement.

4   Over the course of three months, the parties exchanged several letters over Ford's accusations,

5   Xoxide's denials, and possible settlement.  After asking Ford for additional time to respond to

6   Ford's last letter, Xoxide *secretly* filed suit.  Four days after it filed suit, Xoxide wrote to Ford

7   denying that its business name ("MustangTuning") and Internet domain name

8   ("mustangtuning.com") infringed on Ford's trademarks.  In its letter to Ford, Xoxide did not

9   mention that it had already filed suit.  When Ford found out about Xoxide's secret filing, it filed

10  suit in Michigan and sought dismissal of Xoxide's suit in California.  In granting Ford's motion to

11  dismiss, the court found that Xoxide had acted in bad faith by surreptitiously filing suit while

12  continuing to delay Ford from filing suit by pretending to engage in "settlement discussions."  448

13  F.Supp.2d at 1194.

14           The facts of the instant case are nothing like those of <u>Xoxide</u>.  microDATA did not attempt

15  to hide its filing while continuing to negotiate with Hubb.  On the contrary.  Given the time that

16  had elapsed between microDATA's January 18 response to Hubb's first cease and desist letter, and

17  Hubb's next communication (April 27), by May 10 microDATA had a legitimate concern about

18  Hubb possibly again taking a long time to respond to microDATA's decision, as stated in

19  microDATA's May 10 cover letter, not to acquiesce to Hubb's cease and desist demand.  Rather

20  than being an anticipatory filing, therefore, microDATA's declaratory judgment action, about

21  which it made no secret, was intended to push the matter forward toward resolution and to avoid

22  having Hubb continue to hang the potential threat of litigation over microDATA for an indefinite

23  time.

24           Notably, Hubb's discussion of <u>Xoxide</u> in its Opposition (p. 6) fails to point out that it was

25  Xoxide's secretive and misleading behavior toward Ford that led the court to apply the

26  "anticipatory filing" exception.

27           In <u>CGI Solutions</u>, there was also bad faith conduct by the first-filer, CGI.  During

28  negotiations with SailTime Licensing Group over a possible deal whereby CGI would become a

**DEFENDANT MICRODATA GIS, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

1   SailTime licensee, CGI had signed an agreement providing, inter alia, that any litigation between

2   the parties would be brought in Texas.  When negotiations over the deal broke down, and it

3   appeared to SailTime that CGI had started its own business using SailTime's trade secrets, CGI

4   jumped the gun by abruptly filing a declaratory judgment action in New York.  SailTime then filed

5   an action in Texas and sought dismissal of CGI's first-filed action.  In granting SailTime's motion,

6   the court was strongly influenced by the fact that CGI had signed a document agreeing to a Texas

7   forum for all litigation.  2005 WL 3097533 at *8.  Again, the facts of the instant case are nothing

8   like those of CGI.  And, again, Hubb's discussion of CGI in its Opposition (p. 7) fails to mention

9   the consent-to-forum issue that played a critical role in the outcome of that case.

10          Finally, in Utica Mutual, the competing lawsuits arose out of the breakdown of a

11  contractual relationship.  Utica Mutual had licensed software from Computer Sciences Corp.

12  (CSC).  The license agreement contained a Texas choice-of-law provision.  After using CSC's

13  software for a couple of years, Utica Mutual became dissatisfied with it, complained to CSC, and

14  discontinued making license payments to CSC.  In a subsequent exchange of letters, CSC

15  threatened to sue but also offered a settlement proposal.  Before the deadline given by CSC to

16  accept its settlement offer, Utica Mutual filed suit in New York.  CSC later filed suit in Texas and

17  moved to dismiss the New York action.  Important to the court's decision to grant CSC's motion

18  was the fact that Utica Mutual had agreed to be governed by Texas law, and this factor is

19  mentioned and discussed three times in the decision.  2004 WL 180252 at *2, *4 (n.2), *5.  Also

20  important was the fact that Utica Mutual had "raced" to the courthouse immediately upon

21  receiving CSC's threat letter.  Again, the facts of the instant case are nothing like those of Utica

22  Mutual.  In the instant case there is no choice-of-law provision, and microDATA did not run to the

23  courthouse upon receiving Hubb's first "cease-and-desist" letter (Jan. 3) even though that letter did

24  contain a threat to sue microDATA.  And, again, Hubb's discussion of Utica Mutual in its

25  Opposition (pp. 7-8) fails to mention that the choice-of-law agreement played a critical role in the

26  outcome of that case.

27          By contrast, this Court's decisions in Google, 2004 U.S. Dist. LEXIS 27601 (N.D. Cal.

28  Apr. 8, 2004), M.D. Beauty, 2003 U.S. Dist. LEXIS 27257 (N.D. Cal. Oct. 27, 2003), and Ward v.

1   <u>Follett Corp.</u>, 158 F.R.D. 645 (N.D. Cal. 1994), all applying the first-to-file rule, are directly on

2   point. Even under the remarkable facts of <u>Sony Computer Ent. Amer., Inc. v. Amer. Med.</u>

3   <u>Response, Inc.</u>, 2007 U.S. Dist. LEXIS 24294 (N.D. Cal. March 13, 2007), this Court did not find

4   that the first-filer's declaratory judgment action was "anticipatory." In that case, before the

5   competing lawsuits had been filed, the trademark owner, American Medical Response

6   ("American"), had gone so far as to send the alleged infringer, Sony, a copy of a draft trademark

7   infringement complaint that it intended to file if negotiations were not fruitful. In response, Sony

8   promptly filed a declaratory judgment action in this Court. American then filed its own action in

9   Texas and sought to dismiss Sony's action here under an exception to the first to file rule. This

10  Court found that the facts did not justify a departure from the first to file rule and denied

11  American's motion to dismiss, *even where American had drafted a complaint, sent a copy of it to*

12  *Sony during negotiations, and threatened to file it, <u>before</u> Sony filed its declaratory judgment*

13  *action.* Clearly, Sony knew that it was imminently about to be sued and raced to the courthouse to

14  file a preemptive action. Yet this Court did not dismiss Sony's action. If the Sony scenario does

15  not warrant a departure from the first to file rule, then certainly the more run of the mill facts of

16  this case, in which Hubb expressed to microDATA a threat to file suit but no specific and concrete

17  indication of when and where it might file, do not warrant a departure.[3]

18          Hubb's failure to inform this Court, when filing this action, of the already-pending action

19  in Vermont, as it was required to do by Civil Local Rule 3-13, and its failure to inform the Court,

20  in discussing the <u>Xoxide</u>, <u>CGI</u>, and <u>Utica</u> cases, of the critical factual specifics that led to the

21  exceptional outcomes in those cases, suggest that it is Hubb, rather than microDATA, that is not

22  playing fairly here.

23          In short, Hubb is trying to eat its cake and have it, too. Hubb wants the ability to

24  persistently threaten microDATA with suit (as it did), but not actually sue, and yet retain the

25

26  ───────────────────
         [3]    Hubb's argument, on p. 11 of its Opposition, that the first-to-file rule does not apply
27  when the first-filed action is a declaratory judgment action, is patently false. This Court's
    decisions in <u>Sony</u>, <u>Google</u>, <u>M.D. Beauty</u>, <u>Royal Queentex</u>, <u>Ward</u>, and <u>British Telecommunications</u>,
28  *all* involved declaratory judgment actions.

**DEFENDANT MICRODATA GIS, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

1   unilateral right to decide where any litigation between it and microDATA will be if suit is

2   commenced by either party. Hubb threatened microDATA with legal action, but when such action

3   was in fact commenced by microDATA more than four months after Hubb's initial threat letter,

4   Hubb wants to have that action dismissed so that it can sue microDATA in its preferred forum.

5   That is not fair. Hubb accuses microDATA of forum-shopping, but it is Hubb that is engaging in

6   forum-shopping.

7   **B.    There Is No Personal Jurisdiction Over microDATA In California, Whereas
        There Is Personal Jurisdiction Over Both Parties In Vermont.**

8

9           microDATA's Motion explained at length its almost complete lack of contacts with

10  California (no offices, no personnel, no registration to do business, no bank accounts, no phone

11  numbers, etc.), and cited Ninth Circuit case law holding that incidental contacts with a state, such

12  as attendance at occasional trade shows (primarily aimed at *national*, not California, audiences), do

13  not confer personal jurisdiction. Motion at 13-14. microDATA has made no sales in California.

14  See Supplemental Declaration of Bruce Heinrich, submitted herewith, at ¶ 3. Hubb's response is

15  to argue that microDATA has attended several trade shows in California, Opposition at 12-13,

16  although it does not contradict microDATA's assertion that it has made no sales in California. Cf.

17  Advideo, Inc. v. Kimel Broadcast Group, Inc., 727 F. Supp. 1337 (N.D. Cal. 1989) (personal

18  jurisdiction established in California over Vermont company; party's mere signing of contract with

19  out-of-state company does not confer jurisdiction over out-of-state company in first party's home

20  state, but contract provided for California governing law; therefore, out-of-state company

21  implicitly submitted itself to jurisdiction in California).

22          By contrast, in its Opposition (p. 10) and in its motion to dismiss filed in the Vermont

23  action, Hubb has admitted to having a customer in Vermont and doing business there.[4]

24  microDATA believes that a very recent transaction between Hubb and the Barre City Police

25

26  ───────────────
        [4]   See Request for Judicial Notice, Defendant Hubb Systems, LLC's July 2, 2007 Motion
27  to Dismiss, microDATA GIS, Inc. v. Hubb Systems, LLC, United States District Court, District of
    Vermont, C.A. No. 2:07-cv-108 (Docket Entry 10). At page 15 of its motion, Hubb admits to
28  having made at least one sale in Vermont.

**DEFENDANT MICRODATA GIS, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

1  Department constitutes a second Hubb customer in Vermont.  See Declaration of Nathan G.

2  Wilcox, ¶ 2.  Thus, even if there is a question about the *possibility* of personal jurisdiction over

3  microDATA in California, *there is no real question about personal jurisdiction over Hubb in*

4  *Vermont*.  Ben & Jerry's Homemade, Inc. v. Comanor, C.A. No. 1:02-cv-150 (D. Vt. Sept. 26,

5  2002) (in declaratory judgment action brought in Vermont for declaration of non-infringement of

6  defendant's trademark, there was jurisdiction over out-of-state defendant); Tom and Sally's

7  Handmade Chocolates, Inc. v. Gasworks, Inc., 977 F. Supp 297 (D. Vt. 1997) (distribution of four

8  catalogs into Vermont, combined with two customers in Vermont, sufficient to confer jurisdiction

9  over out-of-state corporation); Dall v. Kaylor, 163 274 (1995) (single sale in Vermont was

10  sufficient to confer jurisdiction over non-resident defendant that advertised nationally); Hedges v.

11  Western Auto Supply Co., Inc., 161 Vt. 614, 614-615 (1994) (upholding exercise of personal

12  jurisdiction where non-resident defendant "purposely availed" itself of Vermont market by selling

13  its product to a well-known national distributor that does business in Vermont).

14      Personal jurisdiction over microDATA in California, based on attendance at a few trade

15  shows, is not tenable.  Hubb responds by requesting that it be allowed to do jurisdictional

16  discovery.  Opposition at 15.  Rather than getting bogged down in a jurisdictional sideshow, i.e.,

17  collateral discovery to determine whether there is even jurisdiction over microDATA in California

18  – only to have this case end up in Vermont where it was filed first – this Court should simply

19  follow the first to file rule and allow the case to proceed in Vermont, where there is no real

20  question concerning personal jurisdiction over Hubb.  microDATA, therefore, firmly believes that

21  this Court should dismiss this action because its minimal, incidental contacts with California do

22  not confer personal jurisdiction over it by this Court.

23  **C.    Venue Is Proper in Vermont, Where The First Action Was Filed.  Therefore,**
       **Considerations Of Whether Venue May Lie In California Are Irrelevant.**
24     **Furthermore, Venue Is Not Superior In California.**

25      Hubb argues that California is the appropriate venue for resolving this dispute.  Opposition

26  at 10.  Notably, Hubb does not state that venue in California is *superior* to venue in Vermont,

27  because it cannot.  Indeed, venue may not lie in California at all.  If, as microDATA contends,

28  there is no personal jurisdiction over microDATA in California, then venue in California does not

**DEFENDANT MICRODATA GIS, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

1   exist.

2        But microDATA disputes Hubb's bald assertion that venue in California is "appropriate."

3   Assuming for the moment that there is personal jurisdiction over microDATA in California merely

4   because it attended national tradeshows here, microDATA concedes that venue *might* lie in

5   California. Hubb's argument for venue being appropriate in California is based on the assertion

6   that, since microDATA attended trade shows in California, the trademark infringement that it

7   complains of "happened" in California. This may or may not be true. But Hubb does not explain

8   why venue in California is *better* than venue in Vermont, the venue chosen by microDATA, the

9   first-filer.

10       microDATA, the alleged infringer, is located in Vermont (where Hubb admittedly does

11  business) and, to the extent that microDATA has allegedly infringed on Hubb's trademark, that

12  alleged infringement has clearly occurred in Vermont. Hubb could have sued microDATA in

13  Vermont, and there would be no dispute over venue. There can be no serious argument but that a

14  "substantial part of the events giving rise to the claim occurred" in Vermont. 28 U.S.C. § 1391(b).

15  Thus, while venue may exist in other locations, it clearly exists in Vermont. See Microbrightfield,

16  Inc. v. Boehringer, C. A. No. 1:05-cv-244 (Ruling on Defendant's Motion to Dismiss for Improper

17  Venue), 2006 U.S. Dist. LEXIS 17095 (D. Vt. Feb. 8, 2006) (denying defendant's request to

18  transfer venue); Advideo, Inc. v. Kimel Broadcast Group, Inc., 727 F. Supp. 1337 (N.D. Cal. 1989)

19  (denying request to transfer venue; at early stage, court cannot fully assess balance of conveniences

20  in alternative venues; "normally, however, plaintiff is entitled to choice of forum and defendant

21  bears the burden of justifying a transfer"). Because microDATA was the first plaintiff in these

22  competing lawsuits, its choice of forum (Vermont) should be honored.

23       Hubb's unsupported statement, that there is a "great danger of [the alleged passing off]

24  occurring in California" (Opposition at 10) is specious and legally meaningless, and it offers no

25  comparison to other locations where there may also be "danger." As noted above, in attending

26  trade shows in California, microDATA (and Hubb) are presenting to a national audience, not

27  specifically a California audience. The meaninglessness of Hubb's vague statement is especially

28  true since microDATA has made no sales in California and Hubb has produced no evidence of a

1    single instance of actual consumer confusion, in California or elsewhere, in the nine (9) years that

2    microDATA has been using the allegedly infringing mark in one form or another.  See Declaration

3    (first) of Bruce Heinrich submitted with microDATA's Motion (June 11, 2007).

4         Once venue is properly established in one court, as it is in Vermont, venue can be shifted to

5    another court only pursuant to an analysis of the several criteria of 28 U.S.C. § 1404 (location of

6    the parties, location of witnesses, convenience, relative burdens, etc.).  Hubb makes absolutely no

7    attempt to apply these factors to the specific facts of this case and explain why venue in California

8    is significantly more compelling than venue in Vermont, where microDATA is located and where

9    an action is already pending.  The fact that the Vermont action is a declaratory judgment action

10    does not change the venue analysis.  Venue is proper in Vermont, and was laid first.  The fact that

11    it *might* also lie in California does not justify maintaining this second-filed action in favor of the

12    first-filed one.[5]

13            **CONCLUSION**

14         For the foregoing reasons, and for the reasons set forth in microDATA's Motion to

15    Dismiss,  microDATA respectfully requests that the Court dismiss this action, allowing the first-

16    filed Vermont action to go forward.

18    Dated:  July 12, 2007         TERRA LAW LLP

21    By: _____/s/ Breck E. Milde_____

22        Breck E. Milde  (Cal. State Bar No. 122437)
         Attorneys for microDATA GIS, Inc.

[5]  In the event that the Court determines that this case is an exception to the first-filed rule, such that this action should not be dismissed but should proceed, microDATA respectfully reserves the right to more fully brief the personal jurisdiction issue and the issues of balance of convenience and whether venue is more properly laid in Vermont than California.

1149829    10    C07-02677 BZ
**DEFENDANT MICRODATA GIS, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**